```
1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND
2                      NORTHERN DIVISION

3   _____
                                        )
4   UNITED STATES OF AMERICA        )
                                        )
5                                       )
                                        )
6       v.                          ) Criminal Docket No. WDQ-07-0470
                                    ) Volume II
7   GARFIELD REDD,                  )
            Defendant               )
8   _____)
                                            Baltimore, Maryland
9                                           September 3, 2008
                                            12:32 PM to 5:03 PM
10
    The above-entitled matter continued on for jury trial
11      before The Honorable William D. Quarles, Jr.

12                  A P P E A R A N C E S

13  On behalf of the Government:

14          George Hazel, Assistant U.S. Attorney
            Steven Hale Levin, Assistant U.S. Attorney
15
    On behalf of the Defendant:
16
            Franklin W. Draper, Assistant Federal Public Defender
17          Malik Edwards, Assistant Federal Public Defender

18  Also present:

19          ATF Special Agent Bradley Crosby

20

21

22                  Reported by:

23          Martin J. Giordano, RMR, CRR, FOCR
            U.S. Courthouse, Room 5515
24          101 West Lombard Street
            Baltimore, Maryland 21201
25          410-962-4504
```

| | |
|---|---|
| 1 | **PROCEEDINGS OF SEPTEMBER 3, 2008** |
| 2 | **THE CLERK:** Please rise. The United States District |
| 3 | Court for the District of Maryland is now in session, The |
| 4 | Honorable William D. Quarles, Jr. presiding. |
| 5 | **THE COURT:** Good afternoon. Please be seated. Let |
| 6 | me know when Mr. Redd is ready. |
| 7 | **THE DEFENDANT:** I'm ready. |
| 8 | **MR. DRAPER:** We're ready, Your Honor. Thank you. |
| 9 | **THE COURT:** Thank you. Counsel, if you'll turn to |
| 10 | your most recent copy of the instructions, which you should |
| 11 | have just received from Ms. Wright. |
| 12 | Government, any objections to Court's Instruction |
| 13 | Number 1? |
| 14 | **MR. HAZEL:** No, Your Honor. |
| 15 | **THE COURT:** Defense, any objection to Court's |
| 16 | Instruction Number 1? |
| 17 | **MR. DRAPER:** No, Your Honor. |
| 18 | **THE COURT:** Defense, any objection to Court's |
| 19 | Instruction Number 2? |
| 20 | **MR. DRAPER:** No, Your Honor. |
| 21 | **THE COURT:** Government? |
| 22 | **MR. HAZEL:** No, Your Honor. |
| 23 | **THE COURT:** Defense, Court's Number 3? |
| 24 | **MR. DRAPER:** No, sir. |
| 25 | **THE COURT:** Government? |

1          **MR. HAZEL:**  No, Your Honor.

2          **THE COURT:**  Government, 4?

3          **MR. HAZEL:**  No, Your Honor.

4          **THE COURT:**  Defense, 4?

5          **MR. DRAPER:**  No.  No, Your Honor.

6          **THE COURT:**  Government, 5?

7          **MR. HAZEL:**  No, Your Honor.

8          **THE COURT:**  Defense, 5?

9          **MR. DRAPER:**  No, sir.

10         **THE COURT:**  Defense, 6?

11         **MR. DRAPER:**  No objection.

12         **THE COURT:**  Government, 6?

13         **MR. HAZEL:**  None from the Government.

14         **THE COURT:**  Government, 7?

15         **MR. HAZEL:**  None, Your Honor.

16         **THE COURT:**  Defense, 7?

17         **MR. DRAPER:**  No objection.

18         **THE COURT:**  Defense, 8?

19         **MR. DRAPER:**  No objection, Your Honor.

20         **THE COURT:**  Government?

21         **MR. HAZEL:**  No, Your Honor.

22         **THE COURT:**  Government, 9?

23         **MR. HAZEL:**  No, Your Honor.

24         **THE COURT:**  Defense?

25         **MR. DRAPER:**  No objection.

1         **THE COURT:**  Defense, 10?  You will inform me which

2   of these instructions will apply.  The one is the failure to

3   testify.  The other is if the Defendant does testify.

4         **MR. DRAPER:**  And, as I understand, this is one of

5   the instructions that was revised from the prior set that we

6   had.

7         **THE COURT:**  Yes.

8         **MR. DRAPER:**  Mr. Redd and I talked more this morning

9   about his testifying.  He was reserving his decision because

10  there was some unclearness of what he could be impeached with

11  of his prior record.

12        **THE COURT:**  Okay.

13        **MR. DRAPER:**  I think the Government may have found

14  another conviction that they may allege also.

15        **THE COURT:**  I'll let you reserve on this, then,

16  until we resolve the impeachment.

17        **MR. DRAPER:**  Thank you.

18        **THE COURT:**  Anyway, as I said, we'll come back to

19  that.  Number 11, Government?

20        **MR. HAZEL:**  No objection.

21        **THE COURT:**  Defense?

22        **MR. DRAPER:**  No objection, Your Honor.

23        **THE COURT:**  Number 12, Defense?

24        **MR. DRAPER:**  No objection.

25        **THE COURT:**  Government?

```
1                    MR. HAZEL:  None, Your Honor.

2                    THE COURT:  Number 13, Government?

3                    MR. HAZEL:  None, Your Honor.

4                    THE COURT:  Defense?

5                    MR. DRAPER:  No objection, Your Honor.

6                    THE COURT:  Fourteen, Defense?

7                    MR. DRAPER:  No objection.

8                    THE COURT:  Government?

9                    MR. HAZEL:  No, Your Honor.

10                   THE COURT:  Fifteen, Government?

11                   MR. HAZEL:  No, Your Honor.

12                   THE COURT:  Defense?

13                   MR. DRAPER:  No objection.

14                   THE COURT:  Sixteen, Defense?

15                   MR. DRAPER:  No objection.

16                   THE COURT:  Government?

17                   MR. HAZEL:  None from the Government.

18                   THE COURT:  Seventeen, Government?

19                   MR. HAZEL:  None from the Government.

20                   THE COURT:  Defense?

21                   MR. DRAPER:  Your Honor, the Defense does object to

22       the --

23                   THE COURT:  Congressional intent?

24                   MR. DRAPER:  Yes, Your Honor.

25                   THE COURT:  Okay.  You have your objection.
```

```
 1              Twenty -- let's see.  For some reason, my next
 2      number is 21.  Number 18, Defense?
 3              MR. DRAPER:  No objection.
 4              THE COURT:  Government?
 5              MR. HAZEL:  None, Your Honor.
 6              THE COURT:  Number 19, Government?
 7              MR. HAZEL:  None, Your Honor.
 8              THE COURT:  Defense?
 9              MR. DRAPER:  No objection.
10              THE COURT:  Number 20, Defense?
11              MR. DRAPER:  No objection, Your Honor.
12              THE COURT:  Government?
13              MR. HAZEL:  None, Your Honor.
14              THE COURT:  Twenty-one, Government?
15              MR. HAZEL:  None, Your Honor.
16              THE COURT:  Defense?
17              MR. DRAPER:  No objection.
18              THE COURT:  Twenty-two, Defense?
19              MR. DRAPER:  We do object to that instruction, and
20      would request the instruction submitted to the Court as to
21      punishment that was included, I believe, in our proposed
22      instructions.
23              THE COURT:  Okay.  Government, any objection to 22?
24              MR. HAZEL:  I have no objection to the Court's 22,
25      no.
```

1     **THE COURT:**  Defense objection is overruled.

2     Final instruction, Government?

3     **MR. HAZEL:**  No objection.

4     **THE COURT:**  Defense?

5     **MR. DRAPER:**  No objection, Your Honor.

6     **THE COURT:**  Okay.  Now, is there anything that

7  either the Government or the Defense asked for that I didn't

8  give that you can't live without?

9     **MR. DRAPER:**  As to the Defense, Your Honor, on the

10  punishment instruction, we would have requested instead

11  Defendant's requested Jury Instruction Number 6 on mandatory

12  minimum sentences.  As to other requested jury instructions

13  that have been filed electronically, we would additionally

14  request Instruction Number 9, which deals with the number --

15     **THE COURT:**  Is your client subject to a mandatory

16  minimum?

17     **MR. DRAPER:**  According to a pre plea report

18  generated by Probation, they have found him to be an armed

19  career criminal.  The requested Jury Instruction Number 9

20  deals with the number --

21     **THE COURT:**  Please read it to me.

22     **MR. DRAPER:**  Number 9 states, "The fact that one

23  party called more witnesses and introduced more evidence than

24  the other does not mean that you should necessarily find the

25  facts in favor of the side offering the most witnesses.  By

 1    the same token, you do not have to accept the testimony of any

 2    witness --"

 3            THE COURT:  Pass that up, if you would.

 4            MR. DRAPER:  Yes, Your Honor.

 5            THE COURT:  I usually include that.

 6            MR. DRAPER:  It's Number 9.

 7            MR. HAZEL:  Okay.  Yes.

 8            (Document tendered to the Court.)

 9            THE COURT:  Thank you.  I will include that, and I

10    will include that just before witness credibility, Number 9.

11            MR. DRAPER:  Thank you, Your Honor.

12            THE COURT:  Okay.  Anything else you want that was

13    not included?

14            MR. DRAPER:  The requested Jury Instruction

15    Number 11 is, for the record, a reasonable doubt instruction.

16    I'm quite familiar with case law on point, but, to preserve

17    the record, we made that request.

18            THE COURT:  You thought you'd tempt me into

19    reversible error just for the heck of it?

20            MR. DRAPER:  Then, additionally, the last requested

21    instruction would be Number 15.

22            THE COURT:  What is it?

23            MR. DRAPER:  Mere presence in general.

24            THE COURT:  Give me your mere presence instruction.

25    Pass it up.

1        (Document tendered to the Court.)

2        **THE COURT:**  Any objection to the mere presence

3    instruction from the Government?

4        **MR. HAZEL:**  No, Your Honor.

5        **THE COURT:**  I will include mere presence before

6    punishment, after 21, before punishment.

7        Anything further from the Defense?

8        **MR. DRAPER:**  Not on instructions, Your Honor.

9        **THE COURT:**  Government?

10       **MR. HAZEL:**  Nothing further on instructions, Your

11   Honor.

12       **THE COURT:**  Okay.  Any objection to the verdict

13   form, Defense?

14       **MR. DRAPER:**  Was that the Government's proposed

15   form?

16       **THE COURT:**  No.  Our proposed form.

17       **MR. HAZEL:**  I don't think I saw that, Your Honor.

18       **MR. DRAPER:**  I don't know that we've seen that.

19       **THE COURT:**  Okay.

20       (Document tendered to Mr. Hazel.)

21       **MR. HAZEL:**  Thank you.

22       (Document tendered to Mr. Draper.)

23       **MR. DRAPER:**  Thank you.  This is the form that goes

24   to the jury.  The Defense has no objection to the form.

25       **MR. HAZEL:**  No objection, Your Honor.

1        **THE COURT:**  Very good.  Okay.  Government, you have,

2    I understand, another impeachable, and also you were going to

3    give me some information about the release date for the March

4    '97 Assault I.

5        **MR. HAZEL:**  Your Honor, it actually was a March

6    1999 --

7        **THE COURT:**  '99 Assault I?

8        **MR. HAZEL:**  -- Assault I.

9        **THE COURT:**  Okay.

10        **MR. HAZEL:**  And he pled guilty in October 2000.  He

11    was released from Division of Corrections' custody on January

12    21st, 2005.

13        **THE COURT:**  Okay.  So it's timely?

14        **MR. HAZEL:**  Yes, it is.

15        **THE COURT:**  Okay.  Again, the conviction date is?

16        **MR. HAZEL:**  The conviction date is October 27th,

17    2000.

18        **THE COURT:**  10/27/2000, which of course puts it

19    within the ten-year window, and the release date was?

20        **MR. HAZEL:**  He was released from DOC custody on

21    January 21st, 2005.

22        **THE COURT:**  1/21/05, and this is Assault I, and then

23    I will indicate that I will permit the Government to impeach

24    with it.  My understanding is that the Government had

25    discovered another conviction.

1    **MR. HAZEL:**  Your Honor, there was another one I had

2    some question about.

3              **THE COURT:**  What is it?

4              **MR. HAZEL:**  It's from November 7th, 1996.  The

5    conviction date is May 12th, 1998.

6              **THE COURT:**  What's the charge?

7              **MR. HAZEL:**  It's also assault first-degree.

8              **THE COURT:**  Okay.  The conviction date is?

9              **MR. HAZEL:**  The conviction date is May 12, 1998.

10             **THE COURT:**  5/12/98.  Do you have a release date?

11             **MR. HAZEL:**  My understanding is that he's actually

12   currently serving that sentence as part of a probation

13   violation.  I was not able to obtain or at least I don't have

14   in front of me now the date that he was initially released,

15   but he is currently in custody for that charge, having

16   violated his probation.

17             **THE COURT:**  Okay.  Do you wish to be heard,

18   Mr. Draper?

19             **MR. DRAPER:**  Not on that.  I do wish to be heard on

20   the first conviction, however.

21             **THE COURT:**  Yes, sir?

22             **MR. DRAPER:**  The assault first, our objection would

23   be as to how the Government is allowed to describe that

24   assault first.  The presentence report we have describes it as

25   assault first, slash, DOC employee, et cetera, which may or

1    may not be different, and, if the Government is referring to

2    it as an assault in the first degree on a DOC employee --

3              THE COURT:  You want to avoid the Department of

4    Correction inference that he was in prison while it was going

5    on?

6              MR. DRAPER:  That's correct, Your Honor.

7              THE COURT:  Will the Government have any problem

8    with just referring to it as a first-degree assault?

9              MR. HAZEL:  No problem with that at all.

10              THE COURT:  Leaving it at that?  Okay.  The

11    Government will refer to it only as a first-degree assault

12    without reference to DOC personnel, Mr. Draper.

13              MR. DRAPER:  Thank you, Your Honor.

14              THE COURT:  Okay.  Anything further, then, from the

15    Government by way of impeachables?

16              MR. HAZEL:  That's all we would intend to impeach

17    with, Your Honor.

18              THE COURT:  Okay.  As I said, I find that the

19    probative value of these two convictions does outweigh the

20    prejudicial effect.  I do that noting, again, the

21    dissimilarity of the charge he's facing and the two

22    convictions, and also believing the prejudice to be diminished

23    by his stipulation to a qualifying conviction.  Accordingly, I

24    will permit the Government to impeach with the October 27,

25    2000 conviction for assault first-degree, and with the May 12,

1    1998 conviction of assault first-degree, which I understand he

2    is currently serving a sentence for.

3              Do you have your witnesses here, Mr. Draper --

4              **MR. DRAPER:**  Yes, I do.

5              **THE COURT:**  -- apart from the Defendant?  How long

6    do you think you'll be with them on direct?

7              **MR. DRAPER:**  Ten minutes.

8              **THE COURT:**  Okay.  Ten each, about?

9              **MR. DRAPER:**  And I only anticipate one witness at

10   this time.

11             **THE COURT:**  Okay.  And I will then ask you whether

12   you have any additional evidence.  If you say, "No," that will

13   inform me that your client will not be testifying.  If he does

14   not testify, do you want the instruction on his failure to

15   testify?

16             **MR. DRAPER:**  I believe I do, but if I may have a few

17   minutes before the jury comes in, because one of the questions

18   Mr. Redd asked me in lockup was what the Court would instruct

19   the jury.

20             **THE COURT:**  Okay.  Well, you have the instruction in

21   front of you.

22             **MR. DRAPER:**  I was going to have him read that

23   during the break so he'd understand.

24             **THE COURT:**  Okay.  Very good.  We are in recess

25   until 1:00 unless anybody has anything else.

1           **MR. HAZEL:**  Your Honor, I guess just because I've

2    never been in trial before Your Honor, I was curious as to

3    whether you instruct before or after closings.

4           **THE COURT:**  I instruct after the closings.

5           **MR. HAZEL:**  Very well.

6           **MR. DRAPER:**  Thank you, Your Honor.

7           **THE COURT:**  For one thing, that gives my clerk time

8    to make the changes while you're arguing.

9           **MR. HAZEL:**  Sure.

10          **THE COURT:**  So I instruct afterwards.

11          **MR. HAZEL:**  Thank you.

12          **THE COURT:**  Anything else, folks?

13          **MR. DRAPER:**  No, Your Honor.

14          **THE COURT:**  Thank you.

15          **THE CLERK:**  Please rise.  This Honorable Court

16   stands in recess until 1 o'clock.

17          (Recess taken, 12:46 p.m. - 1:00 p.m.)

18          **THE CLERK:**  Please rise.  This Honorable Court

19   resumes in session.

20          **THE COURT:**  Ready for the jury, folks?

21          **MR. DRAPER:**  Yes, Your Honor.

22          **THE COURT:**  Ron?  I don't know why I'm always

23   surprised to see him, your witness.

24          (Jury enters.)

25          **THE COURT:**  Good afternoon.  Please be seated.

1    Members of the jury, the Government has rested its case.   We

2    will now hear from the Defense.   Mr. Draper?

3            **MR. DRAPER:**   May it please the Court.   The Defense

4    calls Joseph Segreti.

5                        **JOSEPH SEGRETI**

6            **WAS THEN DULY SWORN TO TELL THE TRUTH**

7                     **DIRECT EXAMINATION**

8    **BY MR. DRAPER:**

9    Q.   Mr. Segreti, where are you employed?

10   A.   I work for the Office of the Federal Public Defender.

11   Q.   And so how are you employed by the Office of the Federal

12   Defender?   What's your position?

13   A.   I'm the chief investigator.

14   Q.   How long have you worked with the Federal Public

15   Defender's Office?

16   A.   Since July of 1984.

17   Q.   And, prior to working for the Federal Defender's Office,

18   did you have any other investigative experience?

19   A.   Yes.   I was a member of the Baltimore City Police

20   Department for ten years.

21   Q.   And what were your duties with the Baltimore City Police

22   Department?

23   A.   For the first five years, I was assigned to the Eastern

24   District.   The last five years, I was a member of the Homicide

25   Unit.

1    Q.    Now, Mr. Segreti, are you familiar with the case of

2    *United States versus Garfield Redd*?

3    A.    Yes, I am.

4    Q.    And have you done any investigation on this case?

5    A.    Yes, I did.

6    Q.    And, during your investigation, did you come across a

7    Nissan Altima?

8    A.    Yes.

9    Q.    I'm going to hand to you what's been marked as

10   Defendant's Exhibit Number 6 and ask you if you recognize

11   that.

12              (Witness perusing document.)

13   A.    It's a printout supplied by the Motor Vehicle

14   Administration.

15   Q.    And what is on that printout, or what is it a printout

16   of?

17   A.    It's essentially application for certificate of title to

18   an automobile.

19   Q.    Now, what automobile is it an application for?

20   A.    A 2001 Nissan Altima.

21   Q.    Does it indicate who applied or who purchased the Nissan

22   Altima?

23   A.    Yes.  John Alan Hargrave, Jr.

24   Q.    And does it list when Mr. Hargrave actually purchased the

25   Nissan Altima?

1    A.    I think it said 2000.  I'm not seeing it right -- it's

2    not jumping right out at me.

3    Q.    Directing your attention perhaps to the bottom of the

4    page.

5    A.    27th of October 2000.

6    Q.    Thank you.  And also on that document, does it indicate

7    where Mr. Hargrave lives?

8    A.    Yes.

9    Q.    And where was that?

10   A.    541 Gold Street, Baltimore, Maryland.

11   Q.    Thank you.

12           MR. DRAPER:  Your Honor, at this time, the Defense

13   would move Defendant's Exhibit Number 6 into evidence.

14           THE COURT:  Without objection, Defense 6 is

15   admitted.

16   BY MR. DRAPER:

17   Q.    Now, Mr. Segreti, did you have the opportunity to go to

18   541 Gold Street?

19   A.    Yes.

20   Q.    And, referring to the monitor there, there is Defendant's

21   Exhibit Number 2.  Do you recognize this photograph?

22   A.    Yes, I do.

23   Q.    And what does that photograph portray?

24   A.    That's a photograph of the front of 5 -- the 500 Block of

25   Gold Street.  It's the south side of the street.

Direct Examination of Joseph Segreti                    T-II-221

1    Q.   Am I pointing at the correct address?

2    A.   That's correct.

3    Q.   Now, during your investigation of the case, did you come

4    to speak with Mr. Hargrave?

5    A.   Yes, I did.

6    Q.   And did you learn that the police had interviewed

7    Mr. Hargrave?

8    A.   Yes, I did.

9    Q.   Specifically, the police had asked him about a gun?

10           **MR. HAZEL:**  Objection.

11           **THE COURT:**  What's the basis?

12           **MR. HAZEL:**  Hearsay.

13           **THE COURT:**  Overruled.

14   **BY MR. DRAPER:**

15   Q.   That the police had asked him about a handgun?

16   A.   Yes.

17   Q.   And what, if anything, did you learn from your interview

18   of Mr. Hargrave?

19   A.   Well, I asked Mr. --

20           **MR. HAZEL:**  Objection.

21           **THE COURT:**  Sustained.

22   **BY MR. DRAPER:**

23   Q.   Did you learn when it was that police had been to

24   interview Mr. Hargrave?

25   A.   The night of the incident.

 1   Q.   "The incident" referring to which incident?

 2   A.   The arrest of Mr. Redd.

 3   Q.   And did you learn whether or not a handgun was, in fact,

 4   owned by Mr. Hargrave?

 5            MR. HAZEL:   Objection.

 6            THE COURT:   Sustained.

 7   BY MR. DRAPER:

 8   Q.   Do you know whether or not Mr. Hargrave was surprised the

 9   police had found a handgun under his car?

10            MR. HAZEL:   Objection.

11            THE COURT:   Sustained.

12   BY MR. DRAPER:

13   Q.   Mr. Segreti, did you make any attempts to serve

14   Mr. Hargrave with a subpoena?

15   A.   Yes.

16   Q.   And what was the result of that effort?

17   A.   It appeared to me yesterday that there had not been any

18   activity at the house, meaning I left my card there.  The

19   paper had been delivered.  I was told --

20            MR. HAZEL:   Objection.

21            THE COURT:   Sustained.

22   BY MR. DRAPER:

23   Q.   Did you make any efforts today as well?

24   A.   Yes, I did.

25   Q.   And have you learned subsequently that Mr. Hargrave was

 1    not available?

 2    A.   That's correct.

 3              **MR. DRAPER:**   I beg the Court's indulgence.

 4    Q.   Mr. Segreti, in your experience as an investigator, are

 5    you familiar with Gold Street and Gold Street and Pennsylvania

 6    Avenue?

 7    A.   Yes, I am.

 8    Q.   And how would you describe, in your experience as an

 9    investigator, that area?

10    A.   How would I describe it?

11    Q.   Yes, sir.

12    A.   It's a commercial strip.  The intersection of

13    Reisterstown Road and Gold, it's a commercial strip.  It's

14    very heavily populated, and it has high crime.

15    Q.   And, when you say "high crime," what type of crime

16    activity would you expect?

17    A.   In my experience, it -- in the police department and

18    in -- with the Office of the Federal Defender, there --

19    anything from assaults to gun cases.  Serious assaults.

20    Q.   And have you ever had the opportunity to also investigate

21    drug cases?

22    A.   Yes.

23    Q.   Does this area or are you aware whether or not there is

24    or has been drug activity in this area?

25    A.   There is a significant amount of drug activity in that

 1    area.

 2    Q.    And, in your experience as an investigator, both for the

 3    Baltimore City Police Department as well as the Federal Public

 4    Defender's Office, are you familiar with the practices of drug

 5    dealers?

 6    A.    Somewhat.

 7    Q.    Somewhat?  And are you familiar with the concept of a

 8    stash?

 9    A.    Yes.

10    Q.    If you'd please tell the ladies and gentlemen of the jury

11    what a stash is.

12    A.    Stashes could be either drugs or guns.  It's kept not

13    close to the person particularly doing the dealing, but he has

14    access to it, or someone close to him, someone familiar with

15    him would have access to it.

16    Q.    And you say in both a gun and drugs?

17    A.    Yes.

18    Q.    Well, where would someone stash guns -- a gun or drugs?

19    A.    It could be anywhere in the immediate vicinity of where

20    the persons are congregating.  Sometimes it's in the

21    backyards.  Sometimes it's on or about a motor vehicle.  A lot

22    of times those are the only things that are around that, so

23    they make a convenient place to put things.

24         **MR. DRAPER:**  Thank you, Mr. Segreti.  I don't have

25    any additional questions, Your Honor.

| | |
|---|---|
| 1 | THE COURT:  Cross? |
| 2 | MR. DRAPER:  Please answer any questions the |
| 3 | Government may have. |
| 4 | MR. HAZEL:  No questions, Your Honor. |
| 5 | THE COURT:  Thank you.  You may step down, sir. |
| 6 | THE WITNESS:  Thank you, Your Honor. |
| 7 | (Witness excused.) |
| 8 | THE COURT:  Anything further, counsel? |
| 9 | MR. DRAPER:  The Defense rests, Your Honor. |
| 10 | THE COURT:  Okay.  Counsel, approach, please. |
| 11 | (Whereupon, the following conference was held at the |
| 12 | bench.) |
| 13 | THE COURT:  Defense has rested.  Is Defense renewing |
| 14 | previous motions? |
| 15 | MR. DRAPER:  Yes, Your Honor. |
| 16 | THE COURT:  Incorporating all additional evidence |
| 17 | into that motion, and I assume resting on prior arguments? |
| 18 | MR. DRAPER:  That's correct, Your Honor. |
| 19 | THE COURT:  Government, anything to say before I, |
| 20 | once again, deny the motion? |
| 21 | MR. HAZEL:  No, Your Honor. |
| 22 | THE COURT:  Motion is denied.  Anything, the |
| 23 | Government, in rebuttal? |
| 24 | MR. HAZEL:  No, Your Honor. |
| 25 | THE COURT:  How long will you be in opening close? |

1           MR. HAZEL:  Fifteen minutes.

2           THE COURT:  Your close?

3           MR. DRAPER:  I'd say more like 30.

4           THE COURT:  Okay.  Rebuttal?

5           MR. HAZEL:  Fifteen minutes.

6           THE COURT:  Anybody want a two- or five-minute

7   warning?

8           MR. HAZEL:  Actually, Your Honor, can I change my

9   first one to 20 minutes?

10           THE COURT:  Sure.

11           MR. HAZEL:  The first.

12           THE COURT:  Take any time you want.  You're just

13   stuck with it once you pick it.

14           MR. HAZEL:  That's why I bumped it up by five

15   minutes.

16           THE COURT:  Two- or five-minute warning, folks?

17           MR. DRAPER:  He's going to be -- I'll take 35.

18           THE COURT:  Okay.  Anybody want a warning?

19           MR. DRAPER:  Yes, Your Honor.  I will.

20           THE COURT:  Two, or five?

21           MR. DRAPER:  Five, please.

22           THE COURT:  Okay.

23           MR. HAZEL:  Five minutes.

24           THE COURT:  Okay.  Very good.  And your rebuttal

25   time was?

1        **MR. HAZEL:**  Fifteen minutes.

2        **THE COURT:**  Fifteen.  Yes, sir?

3        **MR. DRAPER:**  I've discussed the instructions with

4    Mr. Redd, and we do request the instruction --

5        **THE COURT:**  On failure to testify?

6        **MR. DRAPER:**  Correct.

7        **THE COURT:**  Thank you.

8        Would you have him finalize it with failure to

9    testify.  In other words --

10        **LAW CLERK:**  Yes.

11        **THE COURT:**  Thank you.

12        **MR. DRAPER:**  There was one other point I noted on

13    the instruction on law enforcement.  Was that Number 15?

14        **MR. EDWARDS:**  Yeah.  I believe Instruction

15    Number 15.  There was language to the effect that the law

16    enforcement officer, the fact that they're a Federal law

17    enforcement officer and the fact that you only heard from

18    Baltimore City Police, and include that Federal language in

19    it --

20        **THE COURT:**  Okay.  So you want me to --

21        **MR. DRAPER:**  We just didn't want them --

22        **THE COURT:**  You want me to include Federal in this?

23        **MR. DRAPER:**  Yes, Your Honor.

24        **THE COURT:**  I will find it and do that.

25        **MR. DRAPER:**  Thank you.

1        **THE COURT:**  Okay.  Step back, please.

2        (Whereupon, the bench conference was concluded.)

3        **THE COURT:**  Members of the jury, we've just

4   concluded all of the evidence in the case.  The next phase

5   will be where the lawyers tell you what they believe the

6   evidence has proved.  After that, I will give you instructions

7   on the law.  Then the case will be given to you for your

8   decision.

9        Now, we start with the Government because, of

10  course, the Government has the burden of proof here.  The

11  Government will take no more than 20 minutes in its first

12  closing argument to you, and, again, give them your full time

13  and attention.  I will watch the clock for you.

14       Counsel?

15       **MR. HAZEL:**  Thank you, Your Honor.

16       Good afternoon, ladies and gentlemen.

17       **JURORS:**  Good afternoon.

18       **MR. HAZEL:**  Officer James Glanville saw the

19  Defendant, Garfield Redd, with a gun in his hand.

20  Officer Glanville saw the Defendant put the gun under the back

21  end of that car.  Officer Glanville pointed out the gun to

22  Officer Ivery.  Officer Ivery then found the gun underneath

23  the back end of the car.  Ladies and gentlemen, that's what

24  this case is about.  That's what the evidence has shown, and

25  that's what proves the Defendant's guilt, Garfield Redd,

Case 1:07-cr-00470-RDB   Document 60   Filed 01/06/09   Page 26 of 107
Closing Argument by the Government
T-II-229

1    beyond a reasonable doubt.

2           Now, ladies and gentlemen, I'm going to go over just

3    a little bit of the testimony.  I'm not going to go through

4    every minute and detail of it.  You just heard it yesterday,

5    but I'm just going to give you a brief overview of some of the

6    testimony you've heard in this case.

7           You heard Officer James Glanville take the stand,

8    and he testified that, on October 22nd, 2006, around

9    10:00 p.m., he was in a car with three other police officers,

10   that they turned onto the 500 Block of Gold Street, multiple

11   pictures of which are depicted on the board up there.  It was

12   his recollection that the car stopped sort of midway down the

13   block.  It was Officer Glanville's recollection that

14   Officer Vargas, who was one of the people who was with him,

15   came out and walked down to this area, and I'm referring to

16   Government's Exhibit Number 2, that he came and walked down to

17   this area where he talked to some people; that Officers Suiter

18   and Ivery walked further down here to this area, and that he

19   was sort of in between where those two were.

20          Officer Glanville then testified that he saw the

21   Defendant, Mr. Garfield Redd, sitting on these steps depicted

22   in both of these pictures, that he at that time was standing

23   out in the street.  He said there was about 10 to 15 steps

24   from where he was standing, about 10 to 15 steps from where he

25   saw the Defendant, Mr. Redd, and that he saw the Defendant

Case 1:07-cr-00470-RDB   Document 60   Filed 01/06/09   Page 27 of 107
Closing Argument by the Government
T-II-230

1      with a gun in his hand.

2              Now, keep in mind the Defendant has been sitting

3      there.  He's sitting on those steps.  The police officers have

4      pulled up.  The police officers, who are in uniform, have

5      gotten out of the car.  Some have walked in different

6      directions.  Mr. Redd, now seeing police officers on the

7      street, has a gun in his hand, so what's he going to do?  He's

8      got to get out of there.  He's got to get out of there.  He's

9      got to find somewhere, some way to get rid of that gun.  So he

10     starts to run.  Seeing Officer Glanville, he can't run

11     directly into Officer Glanville, but he thinks, lucky for him,

12     there is a car there.  So, as Officer Glanville said, he sees

13     him with his gun in his hand, dip down and toss the gun, and

14     then he takes off and tries to walk in a different direction

15     from Officer Glanville.

16             Officer Glanville, as the Defendant is walking away,

17     draws his weapon, and he's pointing the weapon at him and

18     commanding him over and over again to get on the ground.

19     Eventually, the Defendant got on the ground.  He eventually

20     complied.  Officer Ivery told you that, after the Defendant

21     had been placed in cuffs and was sitting up, upon seeing that

22     a gun has now been recovered, he's caught, suddenly he starts

23     passing out, start, you know, sort of -- he doesn't know where

24     he is, he's passing out, he's in and out of consciousness.

25     Officers wanted to make sure he was okay.  They called an

Case 1:07-cr-00470-RDB   Document 60   Filed 01/06/09   Page 28 of 107
Closing Argument by the Government
T-II-231

1    ambulance, called a medic, gave him a little smelling salts.

2    Suddenly, he's just fine.  He suddenly has nothing wrong with

3    him.

4            Now, you've heard from two other officers, and I'm

5    not going to walk you through all of what each of them said.

6    Suffice us to say that there are points on which

7    Officer Glanville and Officer Suiter and Officer Ivery

8    remembered things a little differently in terms of things like

9    where the car was placed and who got out where.  I suspect

10   that you're going to hear some more about that, and there is

11   no getting around that, but, on the key points of what

12   happened out there that night and what Officer Glanville saw

13   that night, Officer Suiter and Officer Ivery corroborate that.

14           Officer Suiter told you that he had gone further

15   down the street by where the grassy area is, and that he could

16   hear Glanville giving him instructions, giving the Defendant

17   instructions.  Couldn't hear exactly what they were, but he

18   could hear something.  He could hear him sort of yelling out

19   instructions to the Defendant, and so he turns and begins to

20   go in that direction, and what does he see?  He says he

21   conceded he couldn't see what was in his hand because it was

22   dark and, from his angle, he couldn't see, but he saw the same

23   motion that Officer Glanville described.

24           Officer Ivery told you that, by the time he heard

25   Officer Glanville screaming or shouting instructions to the

 1    Defendant and he walked down in that direction, the Defendant

 2    by that point was already on the ground and that

 3    Officer Glanville was holding him at gunpoint and that, when

 4    he got there, Officer Glanville said, "He dropped the gun

 5    under the car;" not, "Officer Ivery, check and see what's

 6    under the car;" not, "I think there is something under the

 7    car."  He said, just seconds after having seen him drop the

 8    gun, "He dropped the gun under the car."

 9         What does Officer Ivery do?  Of course he turns, and

10    he said he didn't even have to look far.  He turned to his

11    left because he was in the street and the car was parked to

12    the left of him, and he could see underneath the rear of the

13    car.  Just where Officer Glanville had seen the Defendant put

14    the gun, he finds the gun.  Officer Glanville saw the gun in

15    his hand, saw him put the gun down, showed Officer Ivery where

16    it was.  Officer Ivery found it just where the Defendant

17    dropped it.

18         That's the evidence in this case, ladies and

19    gentlemen.  I just want to talk to you very briefly about the

20    law in this case.  As I told you in the beginning of the case,

21    there is just one charge.  The Defendant is charged with

22    possession of a firearm by a prohibited person, and, as I said

23    then at the beginning, just yesterday about this time, there

24    are just three elements.  The first is that the Defendant was

25    convicted in any court of a crime punishable by imprisonment

1    for a term exceeding one year and that the State has not

2    restored the Defendant's civil rights following that

3    conviction.  You don't have to spend any time on that.  As has

4    been explained to you, the Defense and the Government have

5    stipulated to that fact.  So, when you go back there, you

6    check that element off.

7        The second element of this crime is that the

8    Defendant knowingly possessed the firearm.  Officer Glanville

9    saw the gun in his hand -- actual possession.

10        The other thing we have to prove in terms of that

11   element is that what we found here is actually a firearm.

12   That's part of the offense, that that was actually recovered,

13   actually seen in his hand, that it actually is a firearm,

14   could project a bullet by explosion.  You heard from a firearm

15   examiner, who was declared as an expert, told you that he took

16   this gun and he placed his initials in it after he finished

17   with it, that he test fired the gun, that it could, in fact,

18   project a bullet, that it did, in fact, meet the definition of

19   a firearm.  That's Element 2.  He possessed the gun, and it

20   was, in fact, a firearm.  Check off the second element.

21        The third element, ladies and gentlemen, is that he

22   possessed a firearm that was in or affecting interstate

23   commerce.  To prove that, the Government must show that, at

24   some point prior to Defendant's possession, the firearm

25   traveled in interstate commerce.  It's sufficient for this

1    element to show -- and you'll hear the Court will give you the

2    instructions, but it's sufficient to show that the firearm

3    crossed a state line prior to coming into the possession of

4    the Defendant.

5            The firearm examiner also, in addition to telling

6    you that it was, in fact, a firearm, told you that it's a

7    Hi-Point firearm, and that Hi-Point firearms aren't

8    manufactured in the state of Maryland; they're manufactured in

9    the state of Ohio.  So, in order for the gun -- this is pretty

10   common-sensical.  In order for the gun to have made it from

11   where it was manufactured in Ohio to the Defendant's hand on

12   the 500 Block of Gold Street in Baltimore, Maryland, it would

13   have had to travel in interstate commerce, across a state

14   line.  Check off the third element.

15           Three elements.  The Government has proven each of

16   those elements beyond a reasonable doubt.  Officer Glanville

17   saw him with the gun, saw him drop the gun.  Officer Ivery

18   recovered the gun.  The Government has proven, beyond a

19   reasonable doubt, that the Defendant is guilty of possession

20   of a firearm by a prohibited person.  Ladies and gentlemen, we

21   ask that you return a verdict consistent with the law and

22   evidence in this case -- a verdict of guilty.

23           Thank you.

24           **THE COURT**:  Thank you, Mr. Hazel.  Mr. Draper has

25   said he's not going to take any more than 35 minutes of your

1    time, so, again, I will watch the clock for you.  Please give

2    him your full time and attention.

3              Mr. Draper?

4              **MR. DRAPER:**  Thank you, Your Honor.  May it please

5    the Court.

6              Good afternoon, ladies and gentlemen of the jury.

7              **JURORS:**  Good afternoon.

8              **MR. DRAPER:**  Garfield Redd was the wrong person in

9    the wrong place at the wrong time.  No one else was arrested

10   that night, so the Flex Squad, the three officers from whom

11   you've heard -- all were former members of the Flex Squad, but

12   no longer part of -- needed to show that they, in fact, were

13   out suppressing crime.  They got a gun.  They took a picture,

14   put their prize on their wall to show they were suppressing

15   crime, and, unfortunately for Garfield Redd, he was the

16   closest person to their prize.  That's why Garfield Redd is

17   here today.  Not because he possessed a gun.  He did not.

18   He's here today because of one officer's misperception on a

19   dark night on a drug-infested street in a crowd of 15 to 20

20   people.  Garfield Redd was trying to get high, not possess a

21   firearm.

22              Now, you've heard the Government's case, and, again,

23   the testimony is what you heard from here (pointing to the

24   witness stand), not what you think the attorney tells you the

25   evidence was.  It's what you remember and what you actually

1  heard.  Now, supposedly one of the Government's five witnesses

2  thinks he saw Garfield Redd throw a gun.  Only one.  He may

3  have thought that that's what he saw when a man emerged from

4  the shadows, but, in fact, he is mistaken, and we submit to

5  you the evidence does not support that that happened.

6         The Government's case as presented to you makes

7  absolutely no sense, no common sense.  The Government would

8  have you focus upon violence in the drug-infested

9  neighborhoods and the drugs on the street and forget about the

10  individual people, the facts, and the problems.  As to

11  Garfield Redd, you have to judge the evidence as it applies to

12  him, not to the problems in society, not to the problems on

13  that street, but how the evidence applies to that man.  The

14  law doesn't allow you to infer that he is guilty merely for

15  participating in the evening's activities of trying to get

16  high.  You may not find him guilty of possession of a firearm

17  simply because he is a junkie.  The mere fact that he may have

18  been associating with a crowd of 15 to 20 people who are out

19  on that street not doing anything good does not allow you to

20  convict him of possession of a firearm.

21         You must make your decision independently as to

22  Garfield Redd and what he did and did not do on the evening of

23  October 22nd, 2006, and I'll ask you to please, in your

24  deliberations, to look at all the evidence and to see the

25  innocent missteps and miscues and mistakes, and to recognize

1    the misperceptions derived from the evidence that you heard,

2    and to question the Government's liberal interpretations of

3    the testimony.

4              Here is what we have:  We have the tale of three

5    officers and the missing fourth.  Where is the fourth officer,

6    Mr. Vargas?  We've heard of where other people said he was on

7    that evening.  Where was he yesterday or today?  The

8    Government has the burden of proving to you guilt beyond a

9    reasonable doubt.  Where was the fourth member of the Flex

10   Squad?  Would we have heard a fourth version, a fourth tale?

11   You've heard how the other three officers are no longer part

12   of the Flex Squad, and you've heard the Government concede

13   only one man allegedly saw Garfield Redd with a gun, and that

14   was Officer Glanville.

15             Well, Officer Glanville's testimony is riddled with

16   inconsistencies and mistakes.  We submit to you misperceptions

17   and some mistakes may seem, in isolation, to be quite

18   innocent.  Some of the questions that I asked, such as the

19   mistake in time, a 15- to 20-minute mistake in time as to when

20   it's documented he actually called in to dispatch after

21   Mr. Redd is in custody to when the time he wrote the incident

22   down on his own report -- a 15- to 20-minute discrepancy, it

23   may not seem like much, but it's important when judging the

24   credibility and the totality of Mr. Glanville's testimony as

25   to how easy it is for him to make a mistake, and, if he can

 1    easily make a mistake on a discrepancy in time, he may have

 2    made a mistake that night on what he perceived was happening

 3    in the shadows.

 4              He corrected himself or changed his testimony and

 5    admitted as much to you that, between the morning and the

 6    afternoon, his sworn testimony changed about the distance

 7    between himself and Mr. Redd.  Now, you heard him testify that

 8    he said it was 10 to 15 steps, the distance between himself

 9    and Mr. Redd, but, on cross-examination, he admitted that

10    earlier, outside of your presence, he had testified that he

11    was a mere five steps from Mr. Redd, but that was a mistake,

12    and so now it was 10 to 15 steps from Mr. Redd.  Again, these

13    mistakes in Officer Glanville's memory and testimony are

14    important to determine the facts of this case.

15              Now, let me use a black marker to describe much of

16    what Officer Glanville told you.  If you look on your

17    monitors, I'm referring to Defense Exhibit Number 4, and

18    you'll have this back in the jury room where I marked, at

19    Officer Glanville's direction, the location of people, cars,

20    and other items that he saw.  Well, one of the things that

21    Officer Glanville told you about was he could not remember if

22    this street light here was working.  He thought this one was

23    down on the corner, but this one, he was unsure of, and he

24    admitted that it was poor lighting that night.

25              The one fact that everyone seems to be in agreement

1    on is that a man, allegedly Garfield Redd, was on this step

2    when the police arrived.  No other lighting source has been

3    pointed out or are we aware of, so everyone concedes that the

4    lighting he saw was poor.  In fact, the lighting was so poor

5    that night that Officer Glanville describes Mr. Garfield as

6    emerging from the shadows, and two other officers either

7    walked and/or drove past Mr. Redd on the steps without even

8    noticing him.  That's how poor the lighting was that night.

9          Officer Glanville testifies that Officers Ivery and

10   Suiter walked past, because, according to Officer Glanville,

11   the patrol car is somewhere here in the middle, and,

12   therefore, Suiter and Ivery walk down to here, not noticing

13   Mr. Redd on a step, and certainly not seeing a gun.

14   Mr. Glanville tells you that Mr. Redd did not have any gloves

15   on.  He tells you that, in a search of Mr. Redd, he does not

16   find any bullets.  He tells you that there were people

17   scattered around the block, and, again, we've heard two

18   versions of where the crowds were -- split crowds on each

19   corner or one crowd right there in the middle.  Regardless,

20   think of the credibility of Mr. Glanville's story when an

21   officer allegedly sees a firearm thrown into the street and

22   doesn't bother to recover the firearm, but, instead, chases an

23   unarmed man running away, leaving a firearm to be picked up by

24   a crowd which they suspect is of drug users.

25          The only thing that Mr. Glanville found

Case 1:07-cr-00470-RDB   Document 60   Filed 01/06/09   Page 37 of 107
Closing Argument by the Defense
T-II-240

1    incriminating on Mr. Redd was one capsule of suspected heroin.

2    Officer Suiter testified that the crowd was from the tree down

3    to here.  Now, the other officers have told us the crowds were

4    on the corners.  Officer Suiter says the crowd was here in the

5    middle, which would have placed the Nissan Altima owned by

6    John Hargrave somewhere here, so the crowd that Officer Suiter

7    saw was right by the car, where a gun was found.

8          Officer Suiter says that he also walked by the

9    location where Mr. Redd was supposedly on the steps, but does

10   not see him because Mr. Suiter is walking on the street.

11   That's how poor the lighting was out there that night, and

12   Officer Suiter says that the man that he saw walking up the

13   street and ultimately arrested by Mr. Glanville was walking --

14   not running, but walking up the street.

15         At most, Officer Suiter, who admittedly told you he

16   never saw a gun in, near, or around Garfield Redd, and, at

17   most, he saw some type of dipping motion on the part of

18   Mr. Redd.  He doesn't remember a medic.  He doesn't remember

19   any alleged pretended activity on the part of Mr. Redd, nor

20   does he remember a medic giving him treatment, even though

21   that's been established by other officers' testimony as well

22   as documentation.  Most importantly, Mr. Suiter never saw a

23   gun in his hand.

24         Mr. Ivy testifies that Glanville actually got out up

25   here with Mr. Vargas, and that he's up here on the top of the

 1    street.  Mr. Ivy says that the car drove all the way down

 2    here, the police car, and that they got out and went to this

 3    corner to talk to people.  So Officer Ivy's even contesting

 4    where Mr. Glanville was standing.  He certainly doesn't see

 5    the additional encounter between Mr. Redd and Mr. Glanville

 6    and tells you something quite different from what

 7    Mr. Glanville says of where he got out of the vehicle.

 8              Officer Ivy only has his attention drawn to Garfield

 9    Redd after he hears, unsure of what he hears, but he hears

10    Officer Glanville shouting, yelling, drawing his attention,

11    and he sees Officer Glanville pulling his gun.  He does not

12    see Garfield Redd with a gun.  He simply sees Mr. Glanville

13    pulling his own weapon, and so Officer Ivy is the one who

14    takes the prize picture and posts it on the wall of the Flex

15    Squad.

16              What we do have in this case is a complete lack of

17    forensic evidence of what they do not have.  There are

18    absolutely no fingerprints on Government 3a.  No fingerprints

19    were found, which use your own common sense, but the

20    Government version, I submit to you, does not add up.  No

21    one's explained to you what happened to the powder that

22    supposedly was used to dust this gun for prints, and, if the

23    gun was picked up by the officers, why were their prints not

24    on it, or, if he couldn't find the prints using the dust, why

25    not use the Super Glue method, which the Baltimore City Police

Closing Argument by the Defense

1    Department commonly uses, or, if you can't find prints, why

2    not test the gun for DNA?  It was taken into evidence.  It was

3    taken to Evidence Control.  Why not test this gun to see if

4    Mr. Garfield Redd had deposited DNA on it?

5          I submit to you, had it been tested, you would not

6    have found Garfield Redd's DNA on that gun, because he never

7    handled it, nor did he handle Government's Exhibit 3b, the

8    clip, nor did he handle these bullets, Government's 3c, and

9    put them in, because, if he had, there would be DNA that would

10   be presented to you as well as fingerprint evidence.

11         There were no bullets found upon Mr. Redd -- not in

12   his pocket, not on his person.  Mr. Faber, the firearms

13   expert, tells you there was gunshot residue in the barrel of

14   that gun, but no one bothered to even look at Garfield Redd's

15   hands, clothing, or other items to see if there was gunshot

16   residue on his person, and I submit to you, had they done that

17   test, it would have been negative.  There would not have been

18   gunshot residue on Garfield Redd, because he never handled

19   this gun.  All he had was a capsule of suspected heroin on his

20   person.

21         What's missing?  The Court will tell you that it's

22   the Government's burden to prove to you beyond a reasonable

23   doubt that Garfield Redd possessed that gun on that night,

24   and, yes, we have raised a lot of questions.  That's part of

25   my purpose in representing Garfield Redd, is to raise the

1    questions to protect his innocence.  I don't have to answer --

2    I wish I could provide you with every answer.  The Government,

3    that's their responsibility.  Where is the medic?  We've heard

4    two different versions of the alleged description of the way

5    that Mr. Redd acted that night.

6            Now, undisputed, according to the reports, that a

7    medic or paramedic or an ambulance, a medical person, was

8    called to the scene.  That's on the entry log that

9    Officer Glanville referred to, the time that the medic was

10   called, mere seconds after the initial call in to dispatch.

11   Where is the medic, who could tell you -- the medical person,

12   trained, who could give their opinion as to the state of

13   Mr. Garfield Redd that night; not the interpretation of two

14   members of the Flex Squad who say they think he was pretending

15   either a seizure or unconsciousness, but something enough that

16   they called a medic to come to the scene.  So let's settle the

17   difference and hear from the medic, but you have not.  The

18   Government has chosen not to call that person.

19           Where, as I mentioned before, is the fourth member,

20   Officer Vargas up here on the street corner?  Had

21   Mr. Glanville gone to retrieve what he thought was a gun that

22   was thrown, Officer Vargas was at the end of the street to

23   stop the unarmed person running away.  Why does Glanville

24   continue to focus on the man who has just discarded a weapon

25   and not let his other officers stop him on the corner?  Why

1    have we not heard from Mr. Vargas?  His name wasn't even

2    mentioned to you in the initial *voir dire* as anyone you would

3    recognize, meaning he was not even on the witness list.

4            What's very interesting that night, you'll have a

5    chance, should you choose, to handle, to see this weapon,

6    Government 3a.  It's a heavy piece of metal, and supposedly

7    someone threw it underhanded motion.  Supposedly that's what

8    one person saw, but nobody heard it.  No one heard a large

9    metal object hit the ground, pavement under a car or bounce.

10   I submit to you it wasn't heard because it didn't happen.  It

11   wasn't thrown there by Garfield Redd.  It was there already.

12           Don't let the Government fool you with, "This isn't

13   CSI," or the argument that this is not like the television

14   show.  This is the Federal Government.  You sit as jurors in a

15   Federal courthouse.  With all the resources of the Federal

16   Government, they have the technology to investigate this case,

17   and you see the results of it.  Baltimore City had the

18   technology, both in DNA and other fingerprinting techniques to

19   try to lift anyone's fingerprints off of this gun, but it was

20   not done.  They didn't even bother to swab the gun for DNA,

21   which is readily available.  In fact, Mr. Harris testified

22   that he does that.  He swabs for DNA, and his only explanation

23   for not swabbing was, well, it wasn't requested.  No one even

24   called him out to the scene.  In fact, it's a good week,

25   October 22nd being the incident, and his report of examining

 1    the gun for fingerprints is November 1st.

 2             Another interesting point on the forensics is he

 3    says, "Well, I didn't wipe the dust off," the graphite dust

 4    from testing, and, again, you can handle this.  You can see

 5    whether or not you need to leave your own prints on here.  You

 6    can see whether or not you feel or see graphite powder on your

 7    hands from handling the evidence that was supposedly dusted.

 8    No one has come in here and has told you that they wiped it

 9    down, and Mr. Faber, the firearms examiner, didn't even

10    provide you with a date that he examined the firearm, so don't

11    let them infer from the evidence in this case that Mr. Faber

12    wiped off the gun, because he didn't even testify to you as to

13    when he examined it.

14             Mr. Harris says that in only 1% of his cases does he

15    find fingerprints.  Ladies and gentlemen, I submit to you that

16    is ridiculous.  There is absolutely no empirical evidence.  He

17    doesn't even keep his own statistics of when he finds them and

18    when he does not, and I submit to you that that is an

19    off-the-cuff comment that has absolutely no basis in fact, and

20    he's only doing the simplest method of detection, because he

21    himself doesn't even use the Super Glue fuming method readily

22    available in the Baltimore City Police Department.

23             This case, as a public defender, is terrifying for

24    me, because it's my job to help you get it right, to defend

25    Garfield Redd and to get it right, and it's terrifying to me

1   because I fear that you not be swayed by the talk of guns and

2   the talk of drugs in the dark streets of Baltimore off the

3   Pennsylvania Avenue on a late night.  Don't let this cloud

4   over your judgment of what the real evidence is in this case.

5   There is a lack of evidence in this case against Garfield Redd

6   for a reason, and the reason is:  He did not possess the gun

7   that night.

8           There is safety provided to keep you from unfair

9   speculation about would've, could've, should've as to whether

10  he possessed it, but, ladies and gentlemen, there is no

11  evidence to show you that he, in fact, possessed it.  If there

12  was, it would have been presented, and the getting the guns

13  off the streets of Baltimore, which one of the officers

14  described as one of the missions of the Flex Squad, that is a

15  great idea.  We need to get the guns off the streets of

16  Baltimore that are creating incalculable violence, but not at

17  any cost do we then get the guns off and tag the local junky

18  with a charge.  Not at any cost should we overlook the lack of

19  evidence in this case.

20          This is the United States of America, and we demand

21  better.  We demand more of our Government.  We protect the

22  vulnerable, even drug addicts, who is no less of a person.

23  Now, I'm not here trying to infer any improper motive on the

24  part of the Government.  I'm not here to allege there is some

25  grand conspiracy on the part of the Government to get the

1   junky drug addict Garfield Redd; just perhaps a little

2   overzealous police work that skipped a few very important

3   mistakes, and unfortunately that skip led to innocent mistakes

4   and has now led to Garfield Redd unfortunately sitting in that

5   chair, and the problem is that those mistakes led to his

6   arrest and led to him being here.

7          Now, as I said, I wish I could provide you with all

8   the answers, but the truth is:  We don't know whose gun that

9   was.  The Government has presented no evidence to you

10  whatsoever as to who purchased the gun, as to whether it was

11  in the registry, or how it even got into the state of Maryland

12  other than it was manufactured outside the state of Maryland

13  according to their expert.  Well, manufactured and sold to

14  whom?  No evidence it was sold to Garfield Redd.  So somebody

15  owned that gun at some time, but no one has presented that

16  evidence to you.  There is no evidence that someone lost that

17  gun.  There is no evidence presented to you that someone stole

18  that gun from another individual.  There must be a paper trail

19  somewhere, but it's not been presented to you, and I submit to

20  you that, if there was a paper trail that led to Garfield

21  Redd, you certainly would have it before you.

22         Mr. Redd's mere presence on Gold Street that night

23  trying to get drugs is not enough to convict him of possession

24  of the gun.  Being merely present in the vicinity of a gun is

25  not enough.  They have to prove to you that he physically

1    possessed it, and we submit to you that they cannot.

2           So, again, I can't give you every answer, but I can

3    pose at least a plausible explanation of what happened that

4    has culminated in Mr. Garfield Redd being here today.  By the

5    police officer's own admission, four members in 2006 of the

6    Flex Squad were out driving around in one car looking to break

7    up drug activity.  They saw a crowd of people, 15 to 20

8    people, on Gold Street, which everyone concedes is a

9    high-crime, drug-infested area.  They thought it was the

10   makings, at least according to one of the officers, of a drug

11   market in the process of getting set up, where junkies and

12   users go to buy drugs and literally would line up to make a

13   purchase.

14          Officer Glanville, I hope that he's not being

15   malicious in his mistakes of what he thinks he saw that night.

16   I submit to you that he's just mistaken.  By his own

17   admission, it was very, very dark.  He sees a man emerge from

18   the shadows.  If Garfield Redd was sitting on that step in the

19   shadows with this gun and a police car has either driven by

20   him and/or two police officers have walked by him, depending

21   on which officer you choose to believe or disbelieve, and he

22   has this gun, and no one's paid him any attention because he's

23   sitting in the shadows, why in the world would an individual

24   then come out of the shadows with a gun and walk towards a

25   police officer into an area where Officer Glanville says he

 1   can see him?  Why not just leave the gun in the shadows and

 2   walk away?  Why not just leave the gun on the step or in the

 3   shadows by the step and walk away, because no one's seen him?

 4   No one's even bothered him yet.  He's brought the attention to

 5   himself, according to the testimony of the police officers.

 6          So I submit to you what Officer Glanville saw was a

 7   man who emerged from the shadows, walking or running, either

 8   five feet or ten to fifteen steps, and this man, Garfield

 9   Redd, made a motion, made some type of motion near the car.

10   Again, there is even a discrepancy as to where the car is

11   parked.  One officer, I believe, put the car down further than

12   the steps here.  So, if that's true, Mr. Redd went this

13   direction, threw the gun, then went that direction.  Other

14   officers said the car was further up the street.

15          Again, if someone had called the mobile crime

16   processing unit, we could have taken pictures that night of

17   where the gun was found, where the car was located, or what

18   the lighting was like, but no one did.

19          **THE COURT**:  Five minutes.

20          **MR. DRAPER**:  Thank you, Your Honor.  So

21   Mr. Glanville sees him make some motion, and this all happens

22   very, very fast, and a man is walking or running towards him

23   coming out of the shadows, and Officer Glanville pulls his

24   gun.  He pulls his weapon.  No one hears a gun drop, not even

25   Officer Glanville, who is closest to the scene.  Mr. Glanville

Case 1:07-cr-00470-RDB   Document 60   Filed 01/06/09   Page 47 of 107
Closing Argument by the Defense
T-II-250

1    arrests Garfield Redd.  He doesn't tackle him.  He doesn't,

2    according to him, lay a hand on him.  He just lays down on the

3    pavement, and he's arrested.

4          The Government asked Mr. Glanville, "Well, why

5    didn't you shoot him?  Why didn't you shoot the man running

6    towards you five feet or ten to fifteen steps with a gun in a

7    ready position, ready to shoot position?  Why didn't you shoot

8    him?"  I submit to you he wasn't shot because

9    Officer Glanville really didn't see the gun.  If he had really

10   seen a gun, he would have shot him for his own safety, and he

11   would have been justified -- a man running towards him with a

12   gun in the ready position?  If he really threw the gun, he

13   would have stopped and secured the gun, made sure no one else

14   in that crowd got it, and Officer Vargas on that corner could

15   have stopped the man running or walking away.

16         Mr. Redd, as I said, is just a junky.  If Mr. Redd

17   had had a gun this nice on October 22nd, 2006, it wouldn't

18   have even gotten warm in his hand before it got turned over

19   for money or drugs to get high.  All he had on his person was

20   one capsule of suspected heroin.  Mr. Redd, the hearing-

21   impaired person you see has used the apparatus here, simply

22   tried to walk away, and, in his feeble efforts, perhaps was

23   trying to discard his heroin, and he couldn't even do that.

24   That's the motion we submit to you that was seen by

25   Officer Glanville -- trying to throw away his stuff, and he

 1    couldn't even do that.  Remember, they told you, it was found

 2    in his left front pocket, in his front pants pocket, and he

 3    even failed in that -- the hearing-impaired junky who couldn't

 4    even get rid of his heroin.

 5            I do ask you to return a verdict of not guilty in

 6    this case.  I submit to you the evidence does not show that

 7    Garfield Redd possessed a firearm that night.  He was simply

 8    in the wrong place at the wrong time, doing the wrong thing,

 9    trying to score heroin, but not possessing a gun.  There is no

10    evidence linking him to that gun, and no bullets on his

11    person.  There is no gunshot residue on his body, his clothes.

12    There is no evidence of his DNA ever being on this weapon.

13    All we have is a suspected heroin capsule.

14            This is not the crime of possession of a handgun.

15    It's just the story of a junky trying to get high, who happens

16    to be on the street the night the police find a handgun.

17    Mr. Redd even failed in that.  He wasn't even able to get high

18    that night.  So I ask you to please not take a shortcut with

19    Mr. Redd's liberty, to reach the right decision, and to find

20    Garfield Redd not guilty.

21            Thank you.

22            **THE COURT:**  Thank you, Mr. Draper.

23            Government?

24            **MR. HAZEL:**  Ladies and gentlemen, Officer Glanville

25    didn't see Garfield Redd make some motion.  He didn't see him

Case 1:07-cr-00470-RDB   Document 60   Filed 01/06/09   Page 49 of 107
Rebuttal Argument by the Government
T-II-252

1    make some motion that could have been a toss of some heroin.

2    He saw him with a gun, and he saw him toss the gun.  That was

3    his testimony, so, to side with what Mr. Draper is saying, to

4    acquit in this case, you either have to believe that he's

5    lying, or that he's mistaken.  That's it.

6            Now, Mr. Draper tried to soften it up a little at

7    the end there and say, "Well, you know, I certainly hope that

8    Officer Glanville wasn't being malicious, and I'm not saying

9    this was some grand conspiracy," but what did he tell you?

10   What did he argue?  He suggested to you that he's

11   overreaching, that he's being less than truthful, suggesting

12   that perhaps Officer Suiter came less than truthful, even

13   suggested that the fingerprint examiner, in terms of saying

14   whether or not he tested the fingerprint, did he really have

15   powder on this gun?  Even the fingerprints examiner is

16   apparently willing to come in here and lie.

17           All these people willing to lie about Garfield Redd,

18   yet they can't get together, and they're all willing to lie,

19   but they can't get together and figure out for certain where

20   the car was parked?  They're all willing to lie on him, all

21   willing to stretch the truth and do whatever it takes to get

22   this guy off the street.  They're all willing to do that, but

23   they're not willing to get together and decide for certain

24   whether they're going to say that the people were in the

25   middle of the street or the side of the street?

1              No.   That doesn't make sense.   Each officer came in

2       here and gave you their honest recollection of what happened,

3       Officer Glanville saying that he saw the gun, saw the gun

4       toss; Officer Suiter telling you that he saw the dipping

5       motion.   He was honest with you.   How easy would it have been

6       to say, "Oh, yeah, I saw the gun.   I saw the gun"?   How easy

7       would that have been?   But he's coming in here telling you

8       what he saw and what he didn't see, so he said, "You know, it

9       was dark.   I couldn't see what it was, but I saw the dipping

10      motion."   That corroborates what Officer Glanville said,

11      giving you his honest recollection of what he saw and what he

12      didn't see.   So that's lying?   That doesn't make sense in this

13      case, that he's mistaken.

14              Ladies and gentlemen, Officer Glanville told you

15      that, from 10 to 15 steps away, he saw a man holding a gun,

16      that he saw him run toward him in his direction, and toss a

17      gun, and the gun is recovered there.   How could he make a

18      mistake like that?   How could anybody make a mistake like

19      that?   You see me holding this pen in my hand.   You see me

20      toss the pen.   You saw it.   That's just a mistake?   The gun

21      just happens to be found right where he saw the gun being

22      placed?   Mistake doesn't make sense.

23              Now, certainly, ladies and gentlemen, there are

24      variances in the stories in the testimony that the police

25      officers told on some of the details, and those things, ladies

1    and gentlemen, those things came out on direct testimony.

2    Those weren't things that Mr. Draper had to pull out.  The

3    officers, in their direct testimony, at the board, each and

4    every one of them at the board, some of them said that they

5    remember the car one place.  Some of them said they remember

6    the car in another place.  Those are variances.  This happened

7    two years ago.

8         Ladies and gentlemen, you know, picture yourself,

9    say, at a family reunion, and, you know, it's a normal family

10   reunion, and all of a sudden, you know, Cousin Bob and

11   Cousin Jim get into an argument.  Cousin Bob ends up hitting

12   Cousin Jim.  Not a big event, doesn't happen at most family

13   reunions.  You tend to remember that.  You'll remember

14   probably forever that Cousin Bob hit Cousin Jim.  It's a big

15   moment.

16        It's two years later now.  Say it's at the next

17   family reunion.  You have three people who are all there, who

18   are talking to you about what happened that day.  One of the

19   people who is telling the story was standing next to

20   Cousin Jim when it happened.  One of the people was coming

21   from the kitchen when it happened, and so they only saw it

22   from behind.  Another one is coming from down the steps and

23   only comes after Cousin Jim has already been hit.  As they

24   tell you the story, all three of them get you to the same

25   point -- that Cousin Bob hit Cousin Jim -- but one of them

Case 1:07-cr-00470-RDB   Document 60   Filed 01/06/09   Page 52 of 107
Rebuttal Argument by the Government
T-II-255

1    might remember that Cousin Jim fell straight back, one of them

2    might remember that Cousin Jim fell to the side, one of them

3    might remember that it happened right before dinner, one of

4    them might remember that it happened right after dinner.

5         It's two years later, three people looking at it

6    from slightly different angles with slightly different

7    recollections.  It would be odd, I submit to you, if all of

8    the officers came in here and, point for point for point,

9    every single thing, lined up on something that happened two

10   years ago, but, like the story of Cousin Bob hitting

11   Cousin Jim, on the crucial elements, the significant points of

12   what happened that day, there is corroboration that

13   Officer Glanville sees the gun, corroborated by Suiter also

14   seeing the dipping motion that Officer Glanville describes;

15   corroboration from Officer Ivery seeing or coming up and being

16   told, seconds later, "The gun has been tossed under the car."

17   So, yes, there are variances, but those don't amount to

18   reasonable doubt.

19        Now, I'm going to go through just some of the other

20   points that Defense counsel has raised in the time that I have

21   remaining.  One point that Defense counsel harped on for some

22   time, or spoke about -- I apologize.  I didn't mean to say

23   that -- spoke about for some time, is this lack of

24   fingerprints, or this lack of DNA.  Ladies and gentlemen, you

25   see me holding this pen.  You see me holding this pen.  I take

1    it over, I toss it over to Mr. Levin.  You saw me holding it.

2    If Officer Harris comes in here and says, "You know what?  I

3    dusted it.  I used my black powder, and, you know, I did

4    whatever I could, but I didn't see a fingerprint on it," does

5    that change the fact that you saw it in my hand?  Do you need

6    to look for my DNA to see if maybe I sneezed on it, like was

7    suggested at some point?  No.

8            All of these varied sort of complicated and, you

9    know, these CSI techniques, they're all very interesting and

10   fascinating.  They don't replace eyewitness testimony.  So

11   counsel wants to criticize the Government for not bringing you

12   all these different types of evidence that are allegedly

13   available -- some are; some aren't.  He wants to criticize the

14   Government for all of these different things we bring,

15   criticized us for not bringing in the medic, criticized us for

16   not bringing in Officer Vargas.  What would have been the

17   point?  He would have called them liars, too.

18        **MR. DRAPER**:  Objection to the characterization, Your

19   Honor.

20        **THE COURT**:  Overruled.  The jury will understand

21   that this is argument.  They will base their verdicts on the

22   evidence.  Overruled.

23        **MR. HAZEL**:  The Defense wants to criticize us for

24   all that they say we didn't bring in.  What we brought you,

25   ladies and gentlemen, is the best type of evidence:

Case 1:07-cr-00470-RDB   Document 60   Filed 01/06/09   Page 54 of 107
Rebuttal Argument by the Government
T-II-257

1   eyewitness evidence -- somebody who saw the crime, not

2   somebody who comes in with some fancy graphs and charts and

3   says what microfibers were on the gun, or who sneezed on the

4   gun, or who may have touched the gun.  Somebody who saw the

5   Defendant holding the gun, that's the evidence that the

6   Government has brought you -- someone who saw him holding the

7   gun.

8           Another point that's made -- this idea of gunshot

9   residue.  Why weren't tests for gunshot residue taken?  Well,

10  there was no allegation of a gunshot.  Why are they testing

11  him for gunshot -- no one claims that they saw Mr. Redd shoot

12  the gun.  None of the officers say, "Yeah, we think he fired

13  the gun, so maybe we should check his hands for gunshot

14  residue."  Why are you checking his hands for gunshot residue?

15  It doesn't make sense.

16          A few other points that were made by counsel.  This

17  idea -- and we heard it through some of the testimony and some

18  of the cross-examination and some of the argument that this

19  was a bad neighborhood, that, you know, people -- you know,

20  you heard the investigator say, you know, people stash things.

21  You know, a neighborhood like this, you find little stash

22  areas.  You know, if you don't want something on you, you want

23  to hide something from police officers, you put it somewhere

24  where somebody hopefully won't find it, or, if they find it,

25  they won't connect it to you.  Absolutely right, and the

1    Defendant in this case tried to stash the gun.  He tried to

2    stash the gun under a car.  That's exactly what he did in this

3    case.  He sees an officer coming, and he tosses it under the

4    car.

5              Another point on that, ladies and gentlemen.  This

6    idea that it's just a bad neighborhood, there are all these

7    other people around, and, you know, counsel said at one point

8    we're asking you to make an inference from the surroundings.

9    You know, we're just asking you to draw an inference from the

10   fact that he was there and this gun was found.  That would be

11   a good argument.  It would be a somewhat persuasive argument

12   if this were, in fact, a case where the only evidence we had

13   put forward is that we found this gun, and the Defendant

14   happened to be standing around.  If that were the case we had

15   presented to you where all an officer can tell you is, "Yeah,

16   I found this gun over here on the ground and the Defendant was

17   standing closest to it and so that's the guy who was

18   arrested," and that's the guy that's on trial, if that was the

19   case that we had here, then all these other things about the

20   fingerprints and the DNA and the microfibers and, you know,

21   all of that would make a lot more sense at that point.

22             **THE COURT:**  Five more minutes.

23             **MR. HAZEL:**  Thank you, Your Honor.

24             But that's not the case that we have here.  We're

25   not asking you to make any inference as to whether or not the

1    gun was his, because, again, there was direct testimony,

2    direct evidence that the Defendant had a gun.  So this idea

3    that there are all these other people around, maybe there were

4    all these other people around.  Officer Glanville saw who put

5    the gun there, and he said it best himself.  When he was

6    asked, "Oh, you found that gun there," he said, "No.  I didn't

7    find the gun there.  I saw the Defendant put the gun there."

8           Just a couple more points.  Counsel said there is no

9    paper trail regarding the gun, no paper trail regarding

10   ownership or who owned the gun.  Ownership is not an issue

11   here.  He's not charged with being the lawful owner of the

12   gun.  He's not charged with having purchased the gun even.  We

13   haven't put any evidence in as to where he got the gun from.

14   It's not relevant.  The only relevant point is who had the gun

15   that night, and evidence has been provided as to that point.

16          So, ladies and gentlemen, we've heard the evidence

17   in this case.  Oh!  One other point I did want to make.

18   Counsel made the point, "Well, no one heard the gun drop."

19   Ladies and gentlemen, the evidence is that Officer Glanville,

20   at this time, is screaming out instructions to the Defendant.

21   There are other people around.  They didn't hear the gun drop,

22   or at least there hasn't been testimony.  No one recalled

23   hearing the gun drop.  So what?  He saw the gun.  He saw the

24   gun.

25          The evidence in this case is clear.  October 22nd,

1    2006, Officer James Glanville sees the Defendant on the steps

2    with the gun.  The Defendant, knowing that there are officers

3    on now -- on at least -- one would suspect he saw it on this

4    side of the block, the side of the block closest to the grass,

5    needs to get out of there, because he has a gun, and

6    Mr. Draper says, "Well, why doesn't he just put the gun down

7    there?"  Well, he doesn't want to give up his gun, until he

8    sees Officer Glanville.  He realizes that not all the officers

9    have gone down, but, in fact, that there is one that's been

10   left behind, and that's Officer James Glanville, standing

11   about 10 to 15 steps away from him, and so he tosses that gun,

12   a gun that's then recovered moments later, seconds later by

13   Officer Ivery.  Saw the gun, saw him put it under there.  The

14   dip is seen, the dipping motion, by Mr. Suiter, the gun found

15   seconds later.

16          The proof of the Defendant's guilt is clear.  The

17   Defendant has been proven, beyond a reasonable doubt, as being

18   guilty of the crime possession of a firearm by a prohibited

19   person.  Ladies and gentlemen, when we started this case, the

20   Defendant was entitled to a fair trial.  He's now had that.

21   When we started this case, the Defendant was entitled to be

22   presumed innocent until the Government proved his guilt beyond

23   a reasonable doubt, and we've now done that.  The only thing

24   left that this defendant is entitled to in this courtroom is

25   your verdict of guilty.  I simply ask that you give the

1    Defendant what he's entitled to.

2         Thank you.

3         **THE COURT:**  Thank you.  Members of the jury, can you

4    hear me?

5         **JURORS:**  Yes.

6         **THE COURT:**  You are now about to enter your final

7    duty, which is to decide the fact issues in the case.

8         Before you do that, I will instruct you on the law.

9    You must pay close attention to me.  I will go slowly and be

10   as clear as possible.

11        Now, before you start trying to take notes on the

12   instructions, let me tell you that I will give you my

13   instructions at the end of my reading them to you, so you will

14   have them, so, if you want to take notes, feel free to, but

15   you don't have to try to xerox my notes, because they will be

16   given to you.

17        It is evident to me that you followed the testimony

18   with close attention.  I will ask you to give me that same

19   careful attention as I instruct you on the law.  You have

20   heard all of the evidence, as well as the final arguments of

21   the lawyers.  My duty at this point is to instruct you on the

22   law, and your duty is to accept these instructions and apply

23   them to the facts as you determined them.

24        On these legal matters, you must take the law as I

25   give it to you.  You should not single out any instructions as

1    alone stating the law, but you should consider the

2    instructions as a whole when you retire to deliberate in the

3    jury room.  You should not, any of you, be concerned about the

4    wisdom of any rule that I state.  Regardless of any opinion

5    that you may have as to what the law may be -- or ought to

6    be -- you must base your verdict on the law which I will give

7    you.

8           You, the members of the jury, are the sole and

9    exclusive judges of the facts.  You pass upon the weight of

10   the evidence, you determine the credibility of the witnesses,

11   and you draw whatever reasonable inferences you decide to draw

12   from the facts as you determined them.

13          In determining the facts, you have to rely upon your

14   own recollection of the evidence.  What the lawyers have said

15   in their opening statements or in their closing arguments or

16   in their objections or in their questions, none of that is

17   evidence, nor is anything I may have said during the trial or

18   may say during the instructions evidence.

19          The evidence is the testimony given to you by the

20   witnesses -- the answers they gave to the questions and any

21   exhibits that were received into evidence.  You may also

22   consider any stipulations or agreements of the parties as

23   evidence.

24          Now, since you are the sole and exclusive judges of

25   the facts, I do not mean to indicate any opinion as to the

1    facts or what your verdict should be.

2              It is the duty of the attorney for each side of a

3    case to object when the other side offers testimony or other

4    evidence which that attorney believes is not properly

5    admissible.  The lawyers also have the right and duty to ask

6    me to make rulings of law and to request conferences out of

7    your hearing.  All of these questions of law have to be

8    decided by me.  You should not show any prejudice against an

9    attorney or his client because the attorney objected to the

10   admissibility of evidence or asked for a conference out of

11   your hearing or asked me to make a ruling on the law.

12             As I have indicated, my rulings on the admissibility

13   of evidence do not indicate any opinion that I may have about

14   the weight or effect of that evidence.  You are the sole

15   judges of the credibility -- that is, the believability -- of

16   witnesses, and the weight and effect of all the evidence.

17             You are to perform the duty of finding the facts

18   without bias or prejudice against or sympathy for any party.

19   You are to perform your final duty in an attitude of complete

20   fairness and impartiality.

21             Your verdict has to be based only upon the evidence

22   developed at trial or the lack of evidence.

23             It would be improper for you to consider, in

24   reaching your decision as to whether the Government has met

25   its burden of proof, any personal feelings you may have about

1    the Defendant's race, religion, national origin, sex, or age.

2    All people are entitled to the presumption of innocence, and

3    the Government has the burden of proof, as I will discuss in a

4    moment.

5         It would be equally wrong for you to allow any

6    feelings you have about the nature of the crime charged to

7    interfere with your decision-making process.

8         To repeat, your verdict has to be based only on the

9    evidence or lack of evidence in the case.

10        The case is important to the Government, for the

11   enforcement of criminal laws is a matter of prime concern to

12   the community.  Equally, the case is important to the

13   Defendant, who is charged with a serious crime.

14        The fact that the prosecution is brought in the name

15   of the United States of America entitles the Government to no

16   greater consideration than would be given to any other party

17   to a lawsuit.  By the same token, the Government is entitled

18   to no less consideration.  All parties, whether they're the

19   Government or individuals, stand as equals at the bar of

20   justice.

21        Your verdict should be based upon the facts as found

22   by you from the evidence and the law contained in these

23   instructions.

24        Although the Defendant has been indicted, you must

25   remember that an Indictment is only an accusation; it is not

1   evidence.  The Defendant has pled not guilty to that

2   Indictment.

3           As a result of the Defendant's plea of not guilty,

4   the burden is on the prosecution to prove guilt beyond a

5   reasonable doubt.  This burden never shifts to a defendant for

6   the simple reason that the law never imposes upon a defendant

7   in a criminal case the burden or duty of calling any witness

8   or producing any evidence.

9           The law presumes the Defendant to be innocent of all

10  charges against him.  I therefore instruct you that the

11  Defendant is to be presumed by you to be innocent throughout

12  your deliberations until such time, as ever, that you as a

13  jury are satisfied that the Government has proved him guilty

14  beyond a reasonable doubt.

15          The Defendant began the trial here with a clean

16  slate.  This presumption of innocence alone is sufficient to

17  acquit him unless you, as jurors, are unanimously convinced

18  beyond a reasonable doubt of his guilt, after a careful and

19  impartial consideration of all of the evidence in this case.

20  If the Government fails to sustain its burden, you have to

21  find the Defendant not guilty.

22          This presumption of innocence was with the Defendant

23  when the trial began and remains with him, even now as I speak

24  to you, and will continue with him into your deliberations

25  unless and until you are convinced that the Government has

1    proved him guilty beyond a reasonable doubt.

2           There are two types of evidence upon which you may

3    rely in deciding whether a defendant is guilty or not guilty.

4           One type of evidence is called direct evidence.

5    Direct evidence is where a witness testifies to what he saw or

6    heard or observed.  In other words, when a witness testifies

7    about what is known to him by his own knowledge by virtue of

8    his own senses -- what he sees, feels, touches, or hears --

9    that is called direct evidence.

10          Circumstantial evidence is evidence which tends to

11   prove a disputed fact by proof of some other facts.  You infer

12   on the basis of reason and experience and common sense from an

13   established fact the existence or the nonexistence of some

14   other fact.

15          Circumstantial evidence is of no less value than

16   direct evidence; as a general rule, the law makes no

17   distinction between direct and circumstantial evidence, but

18   simply requires that, before you convict a defendant, the jury

19   has to be satisfied of his guilt beyond a reasonable doubt

20   from all of the evidence in the case.

21          I emphasize to you that a lawyer's question is not

22   evidence.  At times, a lawyer, for example, on

23   cross-examination, may have incorporated into a question a

24   statement which assumes certain facts to be true and asked a

25   witness if the statement was true.  If the witness denies the

1    truth of a statement and there is no evidence in the record

2    proving that the assumed fact is true, then you may not

3    consider the fact to be true simply because it was contained

4    in a lawyer's question.

5              Questions are not evidence; answers are.

6              The evidence in this case consists of the sworn

7    testimony of the witnesses, the exhibits received in evidence,

8    and stipulations.

9              Exhibits which have been marked for identification

10   but not received may not be considered by you as evidence.

11   Only those exhibits which were actually received will be

12   considered evidence.

13             Also, you are to disregard any testimony when I have

14   ordered it to be stricken.  As I indicated before, only the

15   witnesses' answers are evidence, and you are not to consider a

16   question as evidence.  Also, statements by the lawyers are not

17   evidence.

18             You should consider the evidence in light of your

19   own common sense and experience, and you may draw reasonable

20   inferences from the evidence.

21             Anything that you have seen or heard about this case

22   outside the courtroom is not evidence and must be entirely

23   disregarded.

24             As I have told you, there has been at least one

25   stipulation in the case.  A stipulation is an agreement among

1    the parties that a certain fact is true, and you should regard

2    such agreed facts as true.

3            During the trial, you have heard the attorneys and I

4    have used from time to time in these instructions the word

5    "inference," and the lawyers in their arguments have asked you

6    to infer on the basis of your reason, experience, and common

7    sense, from one or more established facts, the existence of

8    some other fact.

9            An inference is not a suspicion or a guess.  It is a

10   reasoned, logical decision to conclude that a disputed fact

11   does exist on the basis of another fact which you know exists.

12           There are times when different inferences may be

13   drawn from facts, whether proved by direct or circumstantial

14   evidence.  The Government may ask you to draw one set of

15   inferences while the Defense may ask you to draw another.  It

16   is for you, and you alone, to decide what inferences you will

17   draw from the evidence.

18           The process of drawing inferences from facts in

19   evidence is not a matter of guesswork or speculation.  An

20   inference is a deduction or a conclusion which you, the jury,

21   may draw, but you're not required to draw, from the facts

22   which have been established by either direct or circumstantial

23   evidence.  In drawing inferences, you should exercise your

24   common sense.

25           So, while you are considering the evidence presented

1    to you, you are permitted to draw, from the facts which you

2    find to be proven, such reasonable inferences as would be

3    justified in light of your experience.

4           Here again, let me remind you that, whether based on

5    direct or circumstantial evidence, or upon logical, reasoned

6    inferences drawn from such evidence, you must be satisfied of

7    the guilt of the Defendant beyond a reasonable doubt before

8    you can convict.

9           Knowledge, willfulness, and intent involve the state

10   of a person's mind.  Accordingly, this is a fact that you are

11   called upon to decide.

12          Rarely is there direct proof to establish the state

13   of one's mind.  This may be inferred from what one says or

14   does -- his words, actions, and conduct at the time of the

15   occurrence of certain events.

16          The intent with which an act is done is often more

17   clearly and conclusively shown by the act itself or by a

18   series of acts than by words or explanations of the acts

19   uttered long after it happened.  Accordingly, intent,

20   willfulness, and knowledge are usually established by

21   surrounding facts and circumstances as of the time the acts in

22   question happened, or the events took place, and the

23   reasonable inferences to be drawn from them.

24          The fact that one party called more witnesses or

25   introduced more evidence than the other does not mean that you

Case 1:07-cr-00470-RDB   Document 60   Filed 01/06/09   Page 67 of 107
Instructions to the Jury
T-II-270

1    should necessarily find the facts in favor of the side

2    offering the most witnesses.  By the same token, you do not

3    have to accept the testimony of any witness who has not been

4    contradicted or impeached, if you find the witness not to be

5    credible.  You also have to decide which witnesses to believe

6    and which facts are true.

7         To do this, you must look at all the evidence,

8    drawing upon your own common sense and personal experience.

9    After examining all the evidence, you may decide that the

10   party calling the most witnesses has not persuaded you because

11   you do not believe its witnesses, or because you believe the

12   fewer witnesses called by the other side.

13        In a moment, I will tell you certain things for

14   evaluating credibility or believability of witnesses.  For the

15   moment, however, you should keep in mind that the burden of

16   proof is always on the Government, and the Defendant is not

17   required to call any witnesses or offer any evidence since he

18   is presumed to be innocent.

19        A person who testifies is a witness.  You are the

20   sole judges of whether testimony should be believed.  In

21   making this decision, you may apply your own common sense and

22   everyday experiences.  In determining whether a witness should

23   be believed, you should carefully judge all the testimony and

24   evidence and the circumstances under which each witness has

25   testified.

1    You should consider such things as the witness'

2  behavior on the stand and way of testifying, the witness'

3  opportunity to see or hear the things about which testimony

4  was given, the accuracy of the witness' memory, did the

5  witness have a motive not to tell the truth, does the witness

6  have an interest in the outcome of the case, was the witness'

7  testimony consistent, was the witness' testimony supported or

8  contradicted by other evidence, and whether and the extent to

9  which the witness' testimony in court was different from any

10  statements made by the witness on any previous occasion.

11    You need not believe any witness even though the

12  testimony is not contradicted.  You may believe all, part, or

13  none of the testimony of any witness.

14    The Defendant did not testify in this case.  Under

15  our constitution, he has no obligation to testify or to

16  present any other evidence because it is the prosecution's

17  burden to prove the Defendant guilty beyond a reasonable

18  doubt.  That burden remains with the prosecution throughout

19  the entire trial, and never shifts to the Defendant.  The

20  Defendant is never required to prove that he is innocent.

21    You may not attach any significance to the fact that

22  he did not testify.  No adverse inference may be drawn against

23  him by you because he did not take the witness stand.  You may

24  not consider this against the Defendant in your deliberations

25  in the jury room.

1    You have heard the testimony of various law

2    enforcement officials in this case.  The fact that a witness

3    may be employed as a law enforcement official does not mean

4    that his testimony is necessarily deserving of more or less

5    consideration or greater or lesser weight than that of an

6    ordinary witness.

7    At the same time, it is quite legitimate for a

8    Defense attorney to try to attack the credibility of a law

9    enforcement witness on the grounds that his testimony may be

10   colored by a personal or professional interest in the outcome

11   of the case.

12   It is your decision, after reviewing all the

13   evidence, whether to accept the testimony of a law enforcement

14   witness and to give that testimony whatever weight, if any,

15   you find it deserves.

16   In this case, I have permitted certain witnesses to

17   express their opinions about matters that are in issue.  An

18   expert witness may be permitted to testify to an opinion on

19   those matters about which he has special knowledge, skill, and

20   training.  Such testimony is presented to you on the theory

21   that someone who is experienced in a field can assist you in

22   understanding the evidence or in reaching an independent

23   decision on the facts.

24   In weighing an expert's testimony, you may consider

25   the witness' qualifications, his opinions, the reasons for

1  testifying, as well as all of the other considerations that

2  ordinarily apply when you are deciding whether or not to

3  believe a witness' testimony.  You may give the expert

4  testimony whatever weight, if any, you find it deserves in

5  light of all of the evidence in the case.  You should not,

6  however, accept expert testimony merely because I allowed the

7  witness to testify about his opinion, nor should you

8  substitute it for your own reason, judgment, and common sense.

9  Again, the determination of the facts in this case rests

10  solely with you.

11        During the trial, you have heard testimony of

12  witnesses or arguments by attorneys that the Government did

13  not use specific investigative techniques.  You may consider

14  these facts in deciding whether the Government has met its

15  burden of proof, because, as I told you, you should look at

16  all of the evidence or lack of evidence in deciding whether

17  the Defendant is guilty; however, you also are instructed that

18  there is no legal requirement that the Government use any

19  specific investigative technique to prove its case.  Law

20  enforcement techniques are not your concern.

21        Your concern, as I have said, is to determine

22  whether or not, on the evidence or lack of evidence, the

23  Defendant's guilt has been proved beyond a reasonable doubt.

24        With these preliminary instructions in mind, let us

25  turn to the charge against the Defendant as contained in the

1    Indictment.  Again, I remind you the Indictment is not

2    evidence.  It merely describes the charge against the

3    Defendant.  It is an accusation.  It may not be considered by

4    you as evidence of the guilt of the Defendant.

5          In reaching your determination of whether the

6    Government has proved the Defendant guilty beyond a reasonable

7    doubt, you may consider only the evidence introduced or lack

8    of evidence.

9          The Defendant is not charged with committing any

10   crime other than the offense contained in the Indictment.  You

11   have heard evidence of other acts allegedly committed by the

12   Defendant.  When that evidence was introduced, it was to be

13   used solely for a limited purpose, but I emphasize to you that

14   you are not to consider the evidence for any other purpose,

15   and you are only to return a verdict as to the charge

16   contained in the Indictment.

17         While on the subject of the Indictment, I draw your

18   attention to the fact that the Indictment charges that

19   specific offense occurred on or about a certain date.  The law

20   only requires a substantial similarity between the date

21   alleged in the Indictment and the date established by the

22   testimony or exhibits.

23         The Indictment charges the Defendant with being a

24   person convicted of a crime who possessed a weapon shipped in

25   interstate commerce.  The Indictment reads that the Grand Jury

1    for the District of Maryland charged that, on or about October

2    22, 2006, within the District of Maryland, Garfield Redd,

3    having been convicted of a crime punishable by imprisonment

4    for a term exceeding one year, did knowingly and unlawfully

5    possess a firearm, and the firearm, the Hi-Point .40-calibre

6    semi-automatic pistol, is described, in and affecting

7    commerce.

8           Congress was of the view that the ease with which

9    persons, including criminals, were able to acquire firearms

10   was a significant factor in the prevalence of violent crime in

11   the United States and that Federal control over possession of

12   firearms by convicted persons would be helpful to State and

13   local authorities in meeting this problem.  Accordingly,

14   Congress passed a series of laws designed to give support to

15   Federal, State, and local law enforcement officials in

16   combatting crime and violence.  In your role as jurors, you

17   are not to be concerned with the wisdom or policy of these

18   laws.  If, in fact, a violation occurred, the law should be

19   enforced.

20          In general, these laws include provisions which

21   prohibit certain categories of people from possessing or

22   receiving firearms which were shipped in interstate commerce,

23   and requires any person in the business of dealing in firearms

24   to be licensed.

25          The Government contends that the Defendant was

1   within the class of people prohibited from possessing firearms

2   shipped in interstate commerce because he had been convicted

3   of a crime punishable by more than a year in jail.

4        The Government must prove each of the following

5   elements beyond a reasonable doubt to sustain its burden of

6   proving the Defendant guilty:  First, that the Defendant was

7   convicted in any court of a crime punishable by imprisonment

8   for a term exceeding one year, as charged, and that the State

9   has not restored the Defendant's civil rights following that

10  conviction; second, the Government has to prove beyond a

11  reasonable doubt that the Defendant knowingly possessed the

12  firearm as charged, and, third, that the possession charged

13  was in or affecting interstate commerce or foreign commerce.

14       The first element the Government must prove beyond a

15  reasonable doubt before you convict is that, before the date

16  the Defendant is charged with possessing the firearm, he had

17  been convicted of a crime punishable by imprisonment for a

18  term exceeding one year, and that the State has not restored

19  his civil rights following that conviction.

20       The Defendant is alleged to have possessed the

21  firearm charged in the Indictment.

22       Now, the Defendant and the Government have

23  stipulated or agreed that the Defendant was convicted of a

24  crime and that this crime is punishable by imprisonment for a

25  term exceeding one year.  They have also agreed that this

1    conviction occurred prior to the time the Defendant is alleged

2    to have possessed the weapon charged in the Indictment.  The

3    parties have stipulated that the State of Maryland has not

4    restored the Defendant's civil rights following the

5    conviction.

6         I instruct you, in this connection, that the prior

7    conviction that is an element of the charge here and is not

8    disputed is only to be considered by you for the fact that it

9    exists and for nothing else.  You are not to consider it for

10   any other purpose.  You are not to speculate as to what the

11   conviction was for.  You may not consider the prior conviction

12   in deciding whether it's more likely than not that the

13   Defendant was in knowing possession of the gun that's charged,

14   which is the disputed element of the offense.

15        The second element which the Government must prove

16   beyond a reasonable doubt is that, on or about the date set

17   forth in the Indictment, the Defendant knowingly possessed a

18   firearm.

19        A "firearm" is defined as any weapon which will or

20   is designed to or may be readily converted to expel a

21   projectile by the action of an explosive.

22        To "possess" means to have something within a

23   person's control.  This does not necessarily mean that the

24   Defendant had to have held it physically; that is, to have

25   actual possession of it.  As long as the firearm was in the

1    Defendant's control, he possesses it.  If you find that the

2    Defendant either had actual possession of the firearm, or that

3    he had the power and intention to exercise control over it,

4    even though it was not in his physical possession, you may

5    find that the Government has proven possession.

6         The law also recognizes that possession may be sole

7    or joint.  If one person alone possesses an object, that's

8    sole possession; however, it is possible that more than one

9    person may have the power and intention to exercise control

10   over the firearm.  This is called joint possession.  If you

11   find that the Defendant had such power and intention, then he

12   possessed the firearm under this element, even if he possessed

13   it jointly with another.  Proof of ownership of the firearm is

14   not required.

15        To satisfy this element, you must also find that the

16   Defendant knowingly possessed the firearm.  This means that he

17   possessed it purposely and voluntarily, and not by accident or

18   mistake.  It also means that he knew the weapon was a firearm

19   as we commonly use the word; however, the Government is not

20   required to prove that the Defendant knew that he was breaking

21   the law.

22        The third element that the Government must prove

23   beyond a reasonable doubt is that the firearm that the

24   Defendant is charged with possessing was in or affecting

25   interstate commerce.

1    This means that the Government must prove that, at

2    some time before the Defendant's possession, the firearm had

3    traveled in interstate commerce.  It is sufficient for the

4    Government to establish this element by proving that, at any

5    time before the date charged in the Indictment, the firearm

6    crossed a state line.  It's not necessary that the Government

7    prove that the Defendant himself carried it across a state

8    line, nor does the Government have to prove who carried it

9    across, or how it was transported.  It is also not necessary

10   for the Government to prove that the Defendant knew that the

11   firearm had previously traveled in interstate commerce.

12        In this regard, there has been evidence that the

13   firearm in question was made in a different state than the

14   state where the Defendant is charged with possessing it.  You

15   are permitted to infer from these facts that the firearm

16   traveled in interstate commerce; however, you are not required

17   to do so.

18        You may not infer that the Defendant is guilty of

19   participating in criminal conduct merely from the fact that he

20   was present at the time the crime was being committed and had

21   knowledge that it was being committed.

22        The question of possible punishment of the Defendant

23   is of no concern to the jury and should not in any sense enter

24   into and influence your deliberations.  The duty of imposing

25   sentence rests exclusively upon me.  Your function is to weigh

Case 1:07-cr-00470-RDB   Document 60   Filed 01/06/09   Page 77 of 107
Instructions to the Jury
T-II-280

1    the evidence in the case, and to determine whether or not the

2    Defendant is guilty beyond a reasonable doubt based solely on

3    the evidence.  Under your oath as jurors, you cannot allow a

4    consideration of the punishment, which may be imposed upon the

5    Defendant if he is convicted, to influence your verdict in any

6    way or in any sense to enter into your deliberations.

7         You will now be pleased to know that I have reached

8    the last part of these instructions relating to the mechanics

9    and procedure of your deliberations.

10        When you retire to the jury room, you will select

11   one of your number to act as foreperson.  The foreperson will

12   preside over your deliberations and be your spokesperson here

13   in court.  If it becomes necessary during your deliberations

14   to communicate with me, you may send a note by the Bailiff

15   signed by your foreperson or by one or more members of the

16   jury.  No member of the jury should ever attempt to

17   communicate with me by any means other than a signed writing,

18   and I will never communicate with any of you on any subject

19   touching the merits of the case otherwise than in writing or

20   here orally in open court.

21        You will note from the oath that's about to be taken

22   by the Bailiff that he, too, is forbidden from communicating

23   with you on any matter touching the merits of the case.  Now,

24   the Bailiff of course can ask you if you've had enough note

25   pads or if the room temperature is okay.  He just can't talk

1   to you about the merits of your deliberations.

2          Also, please bear in mind that you are never to

3   reveal to any person, not even to the Court, how you stand

4   numerically or otherwise until you have reached a unanimous

5   verdict.  I never need to know that there are so many of you

6   for guilty or so many of you for not guilty.  That's

7   information I cannot use.  Please don't transmit that

8   information to me.

9          Now, to help you, we have prepared a verdict form.

10  It is this short questionnaire.  It has one question on it:

11  "How do you find the Defendant, Garfield Redd, as to Count 1

12  of the Indictment," and the choices are "not guilty" and

13  "guilty."  There is a place for a date and a signature of your

14  foreperson, and, by completing this form, that's how you all

15  record your verdict.  When you have reached agreement, then

16  the foreperson will fill it in, but, before the foreperson

17  fills in the verdict form, all of you have to agree to it.

18          When you return to the courtroom, the Clerk will

19  take the roll, and will then ask if you have agreed of your

20  verdict, and, if you have, you'll say, "We have."  He will

21  then ask you, "Who will speak for you," and you will say, "Our

22  foreperson."  The foreperson will then give the verdict to the

23  Clerk.

24          The verdict has to represent the considered judgment

25  of each of you.  In order to return a verdict, all of you have

1    to agree on it.  In other words, your verdict has to be

2    unanimous.

3            It is your duty to consult with one another and to

4    deliberate with a view to reaching an agreement, if you can do

5    so without doing any injustice to your individual judgment.

6    Each of you has to decide the case for yourself, but do so

7    only after an impartial consideration of all the evidence with

8    your fellow jurors.  During the course of your deliberations,

9    do not hesitate to reexamine your own views and change your

10   opinion, if you are convinced it is wrong, but do not

11   surrender your honest conviction as to the weight or effect of

12   the evidence solely because of the opinion of your fellow

13   jurors or for the mere purpose of returning a verdict.

14           As I've told you at the beginning, remember, you are

15   not partisans now.  You are judges -- judges of the facts of

16   this case.

17           Counsel, please approach.

18           (Whereupon, the following conference was held at the

19   bench.)

20           **THE COURT:**  Exceptions, Government?

21           **MR. HAZEL:**  I'm sorry, Your Honor?

22           **THE COURT:**  Exceptions to the --

23           **MR. HAZEL:**  No, Your Honor.

24           **THE COURT:**  Exceptions?

25           **MR. DRAPER:**  We renew the prior request and

1    objections --

2            THE COURT:  I've considered them restated in full

3    here.

4            MR. DRAPER:  Based on the Government's rebuttal, we

5    had proposed two eyewitness instructions, Number 13 and 14,

6    and we would request those in light of the Government's

7    rebuttal where they argued eyewitness.

8            THE COURT:  I don't recall the eyewitness thing.

9    What about the argument are you trying to --

10           MR. DRAPER:  I have --

11           THE COURT:  -- remedy?

12           MR. DRAPER:  Just simply that these are two proposed

13   instructions that come from the treatise.  They're not out of

14   Sands.  I had put them in a proposed -- basically saying that

15   take it for what it's worth.  The Government was saying that

16   more -- I'm afraid that the Government's argument could be

17   interpreted as saying that eyewitness testimony is due more

18   weight than other types of testimony.

19           THE COURT:  Okay.  I believe I properly instructed

20   the jury with respect to judging witness credibility.

21   Included in those instructions was the requirement that they

22   consider such things as the witness' opportunity to see or

23   hear the things about which testimony was given, and I think

24   that was adequately covered in the instructions.  Accordingly,

25   I will not give the non-patterned instructions that are

1    proposed.  Please make sure that Mr. Lawson has a copy for the

2    record --

3              **MR. DRAPER:**  Yes, Your Honor.

4              **THE COURT:**  -- should that be necessary.

5              Anything further?

6              **MR. DRAPER:**  Nothing, Your Honor.

7              **THE COURT:**  Okay.  Counsel, please let Ron know

8    where you are so that he can contact you.  Also, please be no

9    more than ten minutes away by phone.  Please review the

10   evidence before it goes back.  I made one change in the

11   instructions.  I just eliminated the final reference of felons

12   that is there.  I did not read that reference, but I will

13   change the instructions that will go back to them so that it

14   does not include that reference, so please be sure, again,

15   that you review the instructions that go back, review the

16   verdict forms that go back, review the exhibits that go back,

17   and make sure that it's basically signed off with Ron that --

18             **MR. DRAPER:**  Yes, Your Honor.

19             **THE COURT:**  -- everything's kosher that's going

20   back, okay?

21             (Whereupon, the bench conference was concluded.)

22             **THE COURT:**  Please swear the Bailiff.

23             **THE CLERK:**  Please raise your right hand.

24             (Bailiff sworn.)

25             **THE CLERK:**  State your name for the record.

1       **CSO:**   Court security officer Paul Sacca.

2       **THE COURT:**   Thank you.   Alternates Number 1 and 2,

3    thank you very much.   You have been my insurance policy.   As

4    you can see, we have a jury intact, and I'm surprised that all

5    came back today, so we will not be needing your further

6    services.   We do have a small token of our appreciation in the

7    form of a certificate for your service.   I thank you.   You are

8    free to go.   Good day.

9       **JUROR:**   Thank you.

10      **THE COURT:**   Members of the jury, during your

11   deliberations, remember you may feel free to use your notes.

12   Remember that notes are not evidence, but just reminders of

13   what the evidence was, but, again, you are permitted to use

14   your notes during the deliberations.   For purposes of your

15   planning, I will keep you here no later than 5:00 this

16   afternoon, so, if you haven't reached a verdict by 5:00, feel

17   free to break.   We'll bring you in tomorrow morning at a

18   reasonable hour, and you can continue your deliberations.

19          The evidence, sets of my instructions, and sets of

20   the questionnaire will be brought back to you after we check

21   them.   We will not be sending back the gun.   That's just a

22   practice here.   If any of you want to feel it or heft it or

23   see it before you go back and begin your deliberations, let me

24   know, and I'll have it passed around.   Does anyone want to see

25   or feel or heft the gun?

1    Yes.  Would you circulate the gun, Ron.  Publish it

2    to the jury, please, and everyone who wants to touch it or

3    feel it or weigh it, get a chance to.  Feel free to drop it if

4    you want to drop it.  I think further down the front row,

5    please.  Further down the front row so everyone who wants to

6    get a chance to has a chance to handle it.

7    Again, it will be in Mr. Lawson's custody.  If you

8    need it during your deliberations, we'll bring you back in if

9    you want to, again, examine it further during that period of

10   time.

11   Thank you.  You may now begin your deliberations.

12   Again, your first order of business will be electing one of

13   you to serve as your foreperson.

14   (Jury excused.)

15   **THE COURT:**  Counsel, thank you for an efficiently

16   tried case.

17   **MR. HAZEL:**  Thank you, Your Honor.

18   **MR. LEVIN:**  Your Honor, may I get the Court's

19   permission not to return today?

20   **THE COURT:**  Yes.

21   **MR. LEVIN:**  Thank you.  Since I played such a

22   minimal role.

23   **THE COURT:**  You're going to let him solo now, huh?

24   **MR. LEVIN:**  Thank you.

25   **THE COURT:**  We're in recess, folks.

 1          **THE CLERK:**  This Honorable Court stands in recess.

 2          (Recess taken, 2:51 p.m. - 4:45 p.m.)

 3          **THE CLERK:**  Please rise.  This Honorable Court

 4     resumes in session.

 5          **THE COURT**:  Good afternoon.  Please be seated.

 6     Counsel, we have this note from the jury:  "What is the legal

 7     definition of 'beyond a reasonable doubt'?  Some of us still

 8     have 'doubt.'  What is 'reasonable' doubt?"

 9          Let me hear from you.  Don't all jump in at once.

10          Government, any thoughts?

11          **MR. HAZEL:**  I was still formulating my thoughts to

12     be quite honest, Your Honor.  My understanding, at least as

13     even looking at what was filed by counsel, is that the Fourth

14     Circuit has apparently looked unfavorably upon the Court

15     further defining reasonable doubt.

16          **THE COURT:**  Yes.  That's an understatement, but

17     accurate.

18          **MR. HAZEL:**  Right, which sort of -- I don't know

19     that that leaves us with much to really say in response to

20     this.

21          **THE COURT:**  My inclination is to tell them that --

22     well, let me hear from you, Mr. Draper.

23          **MR. DRAPER:**  Your Honor, we, of course, renew our

24     request -- I believe it was Defendant's Request Number 3

25     that's previously been filed with the Court, which

1    acknowledged as well the case law of the Fourth Circuit on

2    this particular point.

3             THE COURT:   Okay.  My inclination is to call them

4    in, tell them that I've received the note, and explain to them

5    that some things the law commits to the common sense and

6    experience of jurors without any attempt to define, and the

7    determination of whether something has been proved beyond a

8    reasonable doubt is one of those things.  Accordingly, I

9    cannot define it for them.

10            Any objections to that, folks?

11            MR. HAZEL:   I think that's what the case law

12   requires.

13            MR. DRAPER:   Your Honor, we would object.  Our

14   preference would be that the Court not give any instruction to

15   the jurors at all.

16            THE COURT:   Not answer their question, you mean?

17            MR. DRAPER:   Either not answer the question, or give

18   a definition.  I think that --

19            THE COURT:   Thank you.  You have your objection.

20            Ask the jury to join us, please.

21            (Jury enters.)

22            THE COURT:   Please be seated.  I have received your

23   note:  "What is the legal definition of 'beyond a reasonable

24   doubt'?  Some of us still have doubt.  What is considered

25   'reasonable' doubt?"  It's, of course, signed by your jury

1    foreperson.

2          Members of the jury, there is some things that the

3    law does not attempt to define, because we recognize that

4    there are certain things that are committed to you in your

5    role as judges of the facts, and, as we say, we anticipate

6    that you would bring your experience and common sense into the

7    jury room with you.  So the law makes no effort to define what

8    is beyond a reasonable doubt.  It leaves it to you to

9    determine, again, using common sense and experience, whether

10   the Government has proved someone guilty beyond a reasonable

11   doubt.

12         The words are not unusual words.  They're not words

13   that have any sort of specialized legal meaning.  They are

14   merely terms and a concept that you encounter in your everyday

15   lives, and, as I said, you are trusted and empowered to make

16   that determination without any special legal technical sense

17   or any definition of the terms in any legal or technical way.

18         Now, it is 5 o'clock, so I'm going to suggest that

19   you all break for the day, and I will ask you to be here

20   tomorrow morning no later than 9:30, and, at 9:30, I will ask

21   that you resume your deliberations.  Now, as you break up, end

22   your deliberations at the point where you're all together.

23   There shouldn't be two of you or three of you over here or

24   four of you over there having discussions.  Your deliberations

25   have to be done as a group and together, so, if you walk each

1   other to the car or the bus stop, please talk about anything
2   else but the case.
3           Again, your deliberations, your discussions about
4   the case, have to be done together.  Obviously you can think
5   about it tonight, get a good night's sleep, good night's rest,
6   and come in tomorrow and begin the deliberations again, but I
7   ask only that you don't engage in deliberations.  Again,
8   please don't conduct any investigation on your own.  Don't
9   consult any authorities.  Don't try to apply a dictionary
10  definition to the matter.
11          Again, have some trust in your own judgment and in
12  your collective wisdom as a jury.  That's pretty much what the
13  founders did.  They had faith and confidence in your
14  collective wisdom as a jury.  Again, this is not a technical
15  legal matter.  It's a matter of common sense and experience,
16  and that's what you're expected to bring to bear on this.
17          Good night, ladies and gentlemen.  See you tomorrow
18  morning.
19              JUROR:  Thank you.
20          THE CLERK:  Please rise.  This Honorable Court
21  stands in recess until tomorrow morning at 9:30.
22          THE COURT:  You're free to go, members of the jury.
23          (Jury excused.)
24          THE COURT:  Counsel, we're going to just let them
25  start at 9:30.  There is not going to be any formal

1   sending-out process tomorrow morning.  So, again, if you'll

2   just be available at 9:30 for Ron to get in touch with you.

3               Any further objections, counsel?

4           **MR. DRAPER:**  Just as stated before, Your Honor.

5           **THE COURT:**  Very good.  Government?

6           **MR. HAZEL:**  No, Your Honor.

7           **THE COURT:**  Very good.  Tomorrow morning, please be

8   on call starting at 9:30.

9           **THE REPORTER:**  This Honorable Court stands in recess

10  until tomorrow morning at 9:30.

11              (Proceedings adjourned.)

12

13

14  I, Martin J. Giordano, Registered Merit Reporter and Certified

15  Realtime Reporter, certify that the foregoing is a correct

16  transcript from the record of proceedings in the

17  above-entitled matter.

18

19  _____          _____

20    Martin J. Giordano, RMR, CRR                  Date

21

22

23

24

25

1
                             <u>INDEX</u>

2
                <u>UNITED STATES v. GARFIELD REDD</u>

3
       <u>JURY TRIAL - VOLUME II - SEPTEMBER 3, 2008</u>

4

5

6
                                      PAGE

COMMENCEMENT OF PROCEEDINGS............................ 205

7
JURY CHARGE CONFERENCE................................. 205

8
<u>WITNESSES FOR</u>
9
  <u>THE DEFENSE</u>:

10
JOSEPH SEGRETI
          Sworn............................................. 218
11
          Direct Examination by MR. DRAPER................. 218
          Witness Excused.................................. 225
12
CLOSING ARGUMENT BY THE GOVERNMENT..................... 228

13
CLOSING ARGUMENT BY THE DEFENSE........................ 235

14
REBUTTAL ARGUMENT BY THE GOVERNMENT.................... 251

15
INSTRUCTIONS TO THE JURY............................... 261

16
EXCEPTIONS CONFERENCE.................................. 282

17
NOTE FROM THE JURY.................................... 287

18
PROCEEDINGS ADJOURNED................................. 291

19

20

21

22

23

24

25

**'**

**'97** [1] - 213:4
**'99** [1] - 213:7
**'beyond** [2] - 287:7, 288:23
**'doubt** [1] - 287:8
**'reasonable'** [2] - 287:8, 288:25

---

**1**

**1** [5] - 205:13, 205:16, 217:16, 281:11, 285:2
**1%** [1] - 245:14
**1/21/05** [1] - 213:22
**10** [7] - 207:1, 229:23, 229:24, 238:8, 238:12, 253:15, 260:11
**10/27/2000** [1] - 213:18
**101** [1] - 204:24
**10:00** [1] - 229:9
**11** [2] - 207:19, 211:15
**12** [3] - 207:23, 214:9, 215:25
**12:32** [1] - 204:9
**12:46** [1] - 217:17
**12th** [1] - 214:5
**13** [2] - 208:2, 283:5
**14** [1] - 283:5
**15** [14] - 211:21, 227:13, 227:15, 229:23, 229:24, 235:19, 236:18, 237:19, 237:22, 238:8, 238:12, 248:7, 253:15, 260:11
**18** [1] - 209:2
**19** [1] - 209:6
**1984** [1] - 218:16
**1996** [1] - 214:4
**1998** [3] - 214:5, 214:9, 216:1
**1999** [1] - 213:6
**1:00** [2] - 216:25, 217:17
**1st** [1] - 245:1

---

**2**

**2** [5] - 205:19, 220:21, 229:16, 233:19, 285:2
**20** [6] - 209:10, 226:9, 228:11, 235:19, 236:18, 248:7
**20-minute** [2] - 237:19, 237:22
**2000** [5] - 213:10, 213:17, 215:25, 220:1, 220:5
**2001** [1] - 219:20
**2005** [2] - 213:12, 213:21
**2006** [6] - 229:8, 236:23, 248:5, 250:17, 260:1, 275:2
**2008** [3] - 204:9, 205:1, 292:3
**205** [2] - 292:6, 292:7
**21** [2] - 209:2, 212:6
**21201** [1] - 204:24
**218** [2] - 292:10, 292:11

---

**21st** [2] - 213:12, 213:21
**22** [3] - 209:23, 209:24, 275:2
**225** [1] - 292:11
**228** [1] - 292:12
**22nd** [5] - 229:8, 236:23, 244:25, 250:17, 259:25
**235** [1] - 292:13
**251** [1] - 292:14
**261** [1] - 292:15
**27** [1] - 215:24
**27th** [2] - 213:16, 220:5
**282** [1] - 292:16
**287** [1] - 292:17
**291** [1] - 292:18
**2:51** [1] - 287:2

---

**3**

**3** [5] - 204:9, 205:1, 205:23, 287:24, 292:3
**30** [1] - 226:3
**35** [2] - 226:17, 234:25
**3a** [2] - 241:18, 244:6
**3b** [1] - 242:7
**3c** [1] - 242:8

---

**4**

**4** [3] - 206:2, 206:4, 238:17
**40-calibre** [1] - 275:5
**410-962-4504** [1] - 204:25
**4:45** [1] - 287:2

---

**5**

**5** [4] - 206:6, 206:8, 220:24, 289:18
**5/12/98** [1] - 214:10
**500** [3] - 220:24, 229:10, 234:12
**541** [2] - 220:10, 220:18
**5515** [1] - 204:23
**5:00** [2] - 285:15, 285:16
**5:03** [1] - 204:9

---

**6**

**6** [6] - 206:10, 206:12, 210:11, 219:10, 220:13, 220:14

---

**7**

**7** [2] - 206:14, 206:16
**7th** [1] - 214:4

---

**8**

**8** [1] - 206:18

---

**9**

**9** [6] - 206:22, 210:14, 210:19, 210:22, 211:6, 211:10
**9:30** [7] - 289:20, 290:21, 290:25, 291:2, 291:8, 291:10

---

**A**

**able** [3] - 214:13, 251:17, 275:9
**above-entitled** [2] - 204:10, 291:17
**Absolutely** [1] - 257:25
**absolutely** [4] - 236:7, 241:18, 245:16, 245:19
**accept** [5] - 211:1, 261:22, 270:3, 272:13, 273:6
**access** [2] - 224:14, 224:15
**accident** [1] - 278:17
**According** [1] - 210:17
**according** [6] - 239:10, 243:6, 247:13, 248:10, 249:5, 250:2
**Accordingly** [6] - 215:23, 269:10, 269:19, 275:13, 283:24, 288:8
**accuracy** [1] - 271:4
**accurate** [1] - 287:17
**accusation** [2] - 264:25, 274:3
**acknowledged** [1] - 288:1
**acquire** [1] - 275:9
**acquit** [2] - 252:4, 265:17
**act** [3] - 269:16, 269:17, 280:11
**acted** [1] - 243:5
**action** [1] - 277:21
**actions** [1] - 269:14
**activities** [1] - 236:15
**activity** [6] - 222:18, 223:16, 223:24, 223:25, 240:19, 248:7
**acts** [4] - 269:18, 269:21, 274:11
**actual** [3] - 233:9, 277:25, 278:2
**add** [1] - 241:20
**addict** [1] - 247:1
**addicts** [1] - 246:22
**addition** [1] - 234:5
**additional** [4] - 216:12, 224:25, 225:16, 241:5
**additionally** [2] - 210:13, 211:20
**address** [1] - 221:1
**adequately** [1] - 283:24
**adjourned** [1] - 291:11
**ADJOURNED...............................** [1] - 292:18
**Administration** [1] - 219:14
**admissibility** [2] - 263:10, 263:12
**admissible** [1] - 263:5
**admission** [2] - 248:5, 248:17
**admitted** [4] - 220:15, 238:5, 238:9, 238:24
**admittedly** [1] - 240:15
**adverse** [1] - 271:22

**affecting** [4] - 233:22, 275:6, 276:13, 278:24
**afraid** [1] - 283:16
**afternoon** [9] - 205:5, 217:25, 228:16, 228:17, 235:6, 235:7, 238:6, 285:16, 287:5
**afterwards** [1] - 217:10
**age** [1] - 264:1
**Agent** [1] - 204:19
**ago** [2] - 254:7, 255:10
**agree** [2] - 281:17, 282:1
**agreed** [4] - 268:2, 276:23, 276:25, 281:19
**agreement** [4] - 238:25, 267:25, 281:15, 282:4
**agreements** [1] - 262:22
**Alan** [1] - 219:23
**allegation** [1] - 257:10
**allege** [2] - 207:14, 246:24
**alleged** [5] - 240:19, 243:4, 274:21, 276:20, 277:1
**allegedly** [5] - 237:13, 239:1, 239:21, 256:12, 274:11
**allow** [4] - 236:14, 236:19, 264:5, 280:3
**allowed** [2] - 214:23, 273:6
**alone** [4] - 262:1, 265:16, 268:16, 278:7
**Alternates** [1] - 285:2
**Altima** [5] - 219:7, 219:20, 219:22, 219:25, 240:5
**ambulance** [2] - 231:1, 243:7
**America** [2] - 246:20, 264:15
**AMERICA** [1] - 204:4
**amount** [2] - 223:25, 255:17
**angle** [1] - 231:22
**angles** [1] - 255:6
**answer** [4] - 225:2, 243:1, 243:2, 248:2, 288:16, 288:17
**answers** [4] - 247:8, 262:20, 267:5, 267:15
**anticipate** [2] - 216:9, 289:5
**Anyway** [1] - 207:18
**apart** [1] - 216:5
**apologize** [1] - 255:22
**apparatus** [1] - 250:21
**appeared** [1] - 222:17
**application** [2] - 219:17, 219:19
**applied** [1] - 219:21
**applies** [2] - 236:11, 236:13
**apply** [5] - 207:2, 261:22, 270:21, 273:2, 290:9
**appreciation** [1] - 285:6
**approach** [2] - 225:10, 282:17
**area** [10] - 223:9, 223:23, 223:24, 224:1, 229:15, 229:17, 229:18, 231:15, 248:9, 248:25
**areas** [1] - 257:22
**argue** [1] - 252:10
**argued** [1] - 283:7
**arguing** [1] - 217:8

**argument** [9] - 228:12, 244:13, 254:11, 256:21, 257:18, 258:11, 283:9, 283:16
**ARGUMENT** [3] - 292:12, 292:13, 292:14
**arguments** [5] - 225:17, 261:20, 262:15, 268:5, 273:12
**armed** [1] - 210:18
**arrest** [2] - 222:2, 247:6
**arrested** [4] - 235:9, 240:13, 250:3, 258:18
**arrests** [1] - 250:1
**arrived** [1] - 239:2
**Assault** [4] - 213:4, 213:7, 213:8, 213:22
**assault** [9] - 214:7, 214:22, 214:24, 214:25, 215:2, 215:8, 215:11, 215:25, 216:1
**assaults** [1] - 223:19
**assigned** [1] - 218:23
**assist** [1] - 272:21
**Assistant** [4] - 204:14, 204:14, 204:16, 204:17
**associating** [1] - 236:18
**assume** [1] - 225:17
**assumed** [1] - 267:2
**assumes** [1] - 266:24
**ATF** [1] - 204:19
**attach** [1] - 271:21
**attack** [1] - 272:8
**attempt** [3] - 280:16, 288:6, 289:3
**attempts** [1] - 222:13
**attention** [11] - 220:3, 228:13, 235:2, 241:8, 241:10, 248:22, 249:4, 261:9, 261:18, 261:19, 274:18
**attitude** [1] - 263:19
**attorney** [6] - 235:24, 263:2, 263:4, 263:9, 272:8
**Attorney** [2] - 204:14, 204:14
**attorneys** [2] - 268:3, 273:12
**authorities** [2] - 275:13, 290:9
**automatic** [1] - 275:6
**automobile** [2] - 219:18, 219:19
**available** [5] - 223:1, 244:21, 245:22, 256:13, 291:2
**Avenue** [2] - 223:6, 246:3
**avoid** [1] - 215:3
**aware** [2] - 223:23, 239:3

# B

**backyards** [1] - 224:21
**bad** [2] - 257:19, 258:6
**Bailiff** [5] - 280:14, 280:22, 280:24, 284:22, 284:24
**Baltimore** [14] - 204:8, 204:24, 218:19, 218:21, 220:10, 224:3, 227:18, 234:12, 241:25, 244:17, 245:22, 246:2, 246:13, 246:16
**bar** [1] - 264:19

**barrel** [1] - 242:13
**base** [2] - 256:21, 262:6
**Based** [1] - 283:4
**based** [5] - 263:21, 264:8, 264:21, 269:4, 280:2
**basis** [5] - 221:11, 245:19, 266:12, 268:6, 268:11
**bear** [2] - 281:2, 290:16
**becomes** [1] - 280:13
**beg** [1] - 223:3
**began** [2] - 265:15, 265:23
**begin** [3] - 285:23, 286:11, 290:6
**beginning** [3] - 232:20, 232:23, 282:14
**begins** [1] - 231:19
**behalf** [2] - 204:13, 204:15
**behavior** [1] - 271:2
**behind** [2] - 254:22, 260:10
**believability** [2] - 263:15, 270:14
**believes** [1] - 263:4
**bench** [4] - 225:12, 228:2, 282:19, 284:21
**best** [2] - 256:25, 259:5
**better** [1] - 246:21
**between** [7] - 229:19, 238:5, 238:7, 238:8, 241:5, 266:17, 274:20
**beyond** [25] - 229:1, 234:16, 234:18, 237:8, 242:22, 260:17, 260:22, 265:4, 265:14, 265:18, 266:1, 266:19, 269:7, 271:17, 273:23, 274:6, 276:5, 276:10, 276:14, 277:16, 278:23, 280:2, 288:7, 289:8, 289:10
**bias** [1] - 263:18
**big** [2] - 254:12, 254:14
**bit** [1] - 229:3
**black** [2] - 238:15, 256:3
**Block** [3] - 220:24, 229:10, 234:12
**block** [4] - 229:13, 239:17, 260:4
**board** [3] - 229:11, 254:3, 254:4
**Bob** [5] - 254:10, 254:11, 254:14, 254:25, 255:10
**body** [1] - 251:11
**bother** [2] - 239:22, 244:20
**bothered** [2] - 242:14, 249:4
**bottom** [1] - 220:3
**bounce** [1] - 244:9
**Bradley** [1] - 204:19
**break** [5] - 216:23, 248:6, 285:17, 289:19, 289:21
**breaking** [1] - 278:20
**brief** [1] - 229:5
**briefly** [1] - 232:19
**bring** [6] - 256:14, 256:24, 285:17, 286:8, 289:6, 290:16
**bringing** [3] - 256:11, 256:15, 256:16
**brought** [5] - 249:4, 256:24, 257:6, 285:20
**bullet** [2] - 233:14, 233:18
**bullets** [4] - 239:16, 242:8, 242:11, 251:10

**bumped** [1] - 226:14
**burden** [14] - 228:10, 237:8, 242:22, 263:25, 264:3, 265:4, 265:5, 265:7, 265:20, 270:15, 271:17, 271:18, 273:15, 276:5
**bus** [1] - 290:1
**business** [2] - 275:23, 286:12
**buy** [1] - 248:12
**BY** [10] - 218:8, 220:16, 221:14, 221:22, 222:7, 222:12, 222:22, 292:12, 292:13, 292:14

# C

**cannot** [4] - 248:1, 280:3, 281:7, 288:9
**capsule** [4] - 240:1, 242:19, 250:20, 251:13
**car** [33] - 222:9, 228:21, 228:23, 229:9, 229:12, 230:5, 230:12, 231:9, 232:5, 232:6, 232:7, 232:8, 232:11, 232:13, 239:11, 240:7, 241:1, 241:2, 244:9, 248:6, 248:19, 249:9, 249:10, 249:11, 249:14, 249:17, 252:20, 254:5, 254:6, 255:16, 258:2, 258:4, 290:1
**card** [1] - 222:18
**career** [1] - 210:19
**careful** [2] - 261:19, 265:18
**carefully** [1] - 270:23
**carried** [2] - 279:7, 279:8
**cars** [1] - 238:19
**case** [65] - 211:16, 218:1, 219:1, 219:4, 221:3, 228:4, 228:7, 228:24, 229:6, 232:18, 232:20, 234:22, 235:22, 236:6, 238:14, 241:16, 244:16, 245:11, 245:23, 246:4, 246:5, 246:19, 251:6, 252:4, 253:13, 258:1, 258:3, 258:12, 258:14, 258:19, 258:24, 259:17, 259:25, 260:19, 260:21, 261:7, 263:3, 264:9, 264:10, 264:12, 265:7, 265:19, 266:20, 267:6, 267:21, 267:25, 271:6, 271:14, 272:2, 272:11, 272:16, 273:5, 273:9, 273:19, 280:1, 280:19, 280:23, 282:6, 282:16, 286:16, 288:1, 288:11, 290:2, 290:4
**cases** [3] - 223:19, 223:21, 245:14
**categories** [1] - 275:21
**caught** [1] - 230:22
**certain** [10] - 252:19, 252:23, 266:24, 268:1, 269:15, 270:13, 272:16, 274:19, 275:21, 289:4
**certainly** [5] - 239:13, 241:4, 247:21, 252:7, 253:23
**certificate** [2] - 219:17, 285:7
**Certified** [1] - 291:14
**certify** [1] - 291:15
**cetera** [1] - 214:25
**chair** [1] - 247:5
**chance** [4] - 244:5, 286:3, 286:6
**change** [5] - 226:8, 256:5, 282:9,

284:10, 284:13
**changed** [2] - 238:4, 238:6
**changes** [1] - 217:8
**characterization** [1] - 256:18
**charge** [9] - 214:6, 214:15, 215:21, 232:21, 246:18, 273:25, 274:2, 274:15, 277:7
**CHARGE** [1] - 292:7
**charged** [17] - 232:21, 259:11, 259:12, 264:6, 264:13, 274:9, 275:1, 276:8, 276:12, 276:16, 276:21, 277:2, 277:13, 278:24, 279:5, 279:14
**charges** [3] - 265:10, 274:18, 274:23
**charts** [1] - 257:2
**chases** [1] - 239:22
**Check** [2] - 233:20, 234:14
**check** [4] - 232:5, 233:6, 257:13, 285:20
**checking** [1] - 257:14
**chief** [1] - 218:13
**choices** [1] - 281:12
**choose** [2] - 244:5, 248:21
**chosen** [1] - 243:18
**Circuit** [2] - 287:14, 288:1
**circulate** [1] - 286:1
**circumstances** [2] - 269:21, 270:24
**Circumstantial** [2] - 266:10, 266:15
**circumstantial** [4] - 266:17, 268:13, 268:22, 269:5
**City** [7] - 218:19, 218:21, 224:3, 227:18, 241:25, 244:17, 245:22
**civil** [4] - 233:2, 276:9, 276:19, 277:4
**claims** [1] - 257:11
**class** [1] - 276:1
**clean** [1] - 265:15
**clear** [3] - 259:25, 260:16, 261:10
**clearly** [1] - 269:17
**clerk** [1] - 217:7
**Clerk** [2] - 281:18, 281:23
**CLERK** [9] - 205:2, 217:15, 217:18, 227:10, 284:23, 284:25, 287:1, 287:3, 290:20
**client** [3] - 210:15, 216:13, 263:9
**clip** [1] - 242:8
**clock** [2] - 228:13, 235:1
**close** [6] - 224:13, 224:14, 225:25, 226:2, 261:9, 261:18
**closest** [4] - 235:16, 249:25, 258:17, 260:4
**closing** [2] - 228:12, 262:15
**CLOSING** [2] - 292:12, 292:13
**closings** [2] - 217:3, 217:4
**clothes** [1] - 251:11
**clothing** [1] - 242:15
**cloud** [1] - 246:3
**collective** [2] - 290:12, 290:14
**colored** [1] - 272:10
**combatting** [1] - 275:16
**coming** [7] - 234:3, 249:23, 253:7, 254:20, 254:22, 255:15, 258:3

**commanding** [1] - 230:18
**COMMENCEMENT** [1] - 292:6
**comment** [1] - 245:19
**commerce** [13] - 233:23, 233:25, 234:13, 274:25, 275:7, 275:22, 276:2, 276:13, 278:25, 279:3, 279:11, 279:16
**commercial** [2] - 223:12, 223:13
**commits** [1] - 288:5
**committed** [4] - 274:11, 279:20, 279:21, 289:4
**committing** [1] - 274:9
**common** [14] - 234:10, 236:7, 241:19, 266:12, 267:19, 268:6, 268:24, 270:8, 270:21, 273:8, 288:5, 289:6, 289:9, 290:15
**common-sensical** [1] - 234:10
**commonly** [2] - 242:1, 278:19
**communicate** [3] - 280:14, 280:17, 280:18
**communicating** [1] - 280:22
**community** [1] - 264:12
**complete** [2] - 241:16, 263:19
**completing** [1] - 281:14
**complicated** [1] - 256:8
**complied** [1] - 230:20
**concede** [1] - 237:12
**conceded** [1] - 231:21
**concedes** [2] - 239:3, 248:8
**concept** [2] - 244:7, 289:14
**concern** [4] - 264:11, 273:20, 273:21, 279:23
**concerned** [2] - 262:3, 275:17
**conclude** [1] - 268:10
**concluded** [3] - 228:2, 228:4, 284:21
**conclusion** [1] - 268:20
**conclusively** [1] - 269:17
**conduct** [3] - 269:14, 279:19, 290:8
**conference** [5] - 225:11, 228:2, 263:10, 282:18, 284:21
**CONFERENCE**.............................. [1] - 292:7
**CONFERENCE**.............................. [1] - 292:16
**conferences** [1] - 263:6
**confidence** [1] - 290:13
**congregating** [1] - 224:20
**Congress** [2] - 275:8, 275:14
**Congressional** [1] - 208:23
**connect** [1] - 257:25
**connection** [1] - 277:6
**consciousness** [1] - 230:24
**consider** [15] - 262:1, 262:22, 263:23, 267:3, 267:15, 267:18, 271:1, 271:24, 272:24, 273:13, 274:7, 274:14, 277:9, 277:11, 283:22
**consideration** [6] - 264:16, 264:18, 265:19, 272:5, 280:4, 282:7
**considerations** [1] - 273:1
**considered** [7] - 267:10, 267:12, 274:3,

277:8, 281:24, 283:2, 288:24
**considering** [1] - 268:25
**consistent** [2] - 234:21, 271:7
**consists** [1] - 267:6
**conspiracy** [2] - 246:25, 252:9
**constitution** [1] - 271:15
**consult** [2] - 282:3, 290:9
**contact** [1] - 284:8
**contained** [5] - 264:22, 267:3, 273:25, 274:10, 274:16
**contends** [1] - 275:25
**contesting** [1] - 241:3
**continue** [3] - 243:24, 265:24, 285:18
**continued** [1] - 204:10
**contradicted** [3] - 270:4, 271:8, 271:12
**Control** [1] - 242:3
**control** [5] - 275:11, 277:23, 278:1, 278:3, 278:9
**convenient** [1] - 224:23
**converted** [1] - 277:20
**convict** [5] - 236:20, 247:23, 266:18, 269:8, 276:15
**convicted** [9] - 232:25, 274:24, 275:3, 275:12, 276:2, 276:7, 276:17, 276:23, 280:5
**conviction** [20] - 207:14, 213:16, 213:16, 213:25, 214:5, 214:8, 214:9, 214:20, 215:23, 215:25, 216:1, 233:3, 276:10, 276:19, 277:1, 277:5, 277:7, 277:11, 282:11
**convictions** [2] - 215:19, 215:22
**convinced** [3] - 265:17, 265:25, 282:10
**copy** [2] - 205:10, 284:1
**corner** [6] - 238:23, 239:19, 241:3, 243:20, 243:25, 250:14
**corners** [1] - 240:4
**correct** [6] - 215:6, 221:1, 221:2, 223:2, 225:18, 291:15
**Correct** [1] - 227:6
**corrected** [1] - 238:4
**Correction** [1] - 215:4
**Corrections'** [1] - 213:11
**corroborate** [1] - 231:13
**corroborated** [1] - 255:13
**corroborates** [1] - 253:10
**corroboration** [2] - 255:12, 255:15
**cost** [2] - 246:17, 246:18
**could've** [1] - 246:9
**counsel** [8] - 225:8, 255:20, 255:21, 256:11, 257:16, 258:7, 287:13, 291:3
**Counsel** [10] - 205:9, 225:10, 228:14, 259:8, 259:18, 282:17, 284:7, 286:15, 287:6, 290:24
**Count** [1] - 281:11
**couple** [1] - 259:8
**course** [7] - 213:18, 228:10, 232:9, 280:24, 282:8, 287:23, 288:25
**court** [5] - 232:25, 271:9, 276:7, 280:13, 280:20

**COURT** [168] - 204:1, 205:5, 205:9, 205:15, 205:18, 205:21, 205:23, 205:25, 206:2, 206:4, 206:6, 206:8, 206:10, 206:12, 206:14, 206:16, 206:18, 206:20, 206:22, 206:24, 207:1, 207:7, 207:12, 207:15, 207:18, 207:21, 207:23, 207:25, 208:2, 208:4, 208:6, 208:8, 208:10, 208:12, 208:14, 208:16, 208:18, 208:20, 208:23, 208:25, 209:4, 209:6, 209:8, 209:10, 209:12, 209:14, 209:16, 209:18, 209:23, 210:1, 210:4, 210:6, 210:15, 210:21, 211:3, 211:5, 211:9, 211:12, 211:18, 211:22, 211:24, 212:2, 212:5, 212:9, 212:12, 212:16, 212:19, 213:1, 213:7, 213:9, 213:13, 213:15, 213:18, 213:22, 214:3, 214:6, 214:8, 214:10, 214:17, 214:21, 215:3, 215:7, 215:10, 215:14, 215:18, 216:5, 216:8, 216:11, 216:20, 216:24, 217:4, 217:7, 217:10, 217:12, 217:14, 217:20, 217:22, 217:25, 220:14, 221:11, 221:13, 221:21, 222:6, 222:11, 222:21, 225:1, 225:5, 225:8, 225:10, 225:13, 225:16, 225:19, 225:22, 225:25, 226:2, 226:4, 226:6, 226:10, 226:12, 226:16, 226:18, 226:20, 226:22, 226:24, 227:2, 227:5, 227:7, 227:11, 227:20, 227:22, 227:24, 228:1, 228:3, 234:24, 249:19, 251:22, 256:20, 258:22, 261:3, 261:6, 282:20, 282:22, 282:24, 283:2, 283:8, 283:11, 283:19, 284:4, 284:7, 284:19, 284:22, 285:2, 285:10, 286:15, 286:20, 286:23, 286:25, 287:5, 287:16, 287:21, 288:3, 288:16, 288:19, 288:22, 290:22, 290:24, 291:5, 291:7
**Court** [20] - 205:3, 209:20, 211:8, 212:1, 216:18, 217:15, 217:18, 218:3, 234:1, 235:5, 242:21, 281:3, 285:1, 287:1, 287:3, 287:14, 287:25, 288:14, 290:20, 291:9
**Court's** [7] - 205:12, 205:15, 205:18, 205:23, 209:24, 223:3, 286:18
**courthouse** [1] - 244:15
**Courthouse** [1] - 204:23
**courtroom** [3] - 260:24, 267:22, 281:18
**Cousin** [14] - 254:10, 254:11, 254:12, 254:14, 254:20, 254:23, 254:25, 255:1, 255:2, 255:10, 255:11
**covered** [1] - 283:24
**creating** [1] - 246:16
**credibility** [8] - 211:10, 237:24, 239:20, 262:10, 263:15, 270:14, 272:8, 283:20
**credible** [1] - 270:5
**crime** [25] - 223:14, 223:15, 232:25, 233:7, 235:13, 235:15, 248:9, 249:15, 251:14, 257:1, 260:18, 264:6, 264:13, 274:10, 274:24, 275:3, 275:10, 275:16, 276:3, 276:7, 276:17, 276:24,

279:20
**Criminal** [1] - 204:6
**criminal** [4] - 210:19, 264:11, 265:7, 279:19
**criminals** [1] - 275:9
**criticize** [3] - 256:11, 256:13, 256:23
**criticized** [2] - 256:15
**Crosby** [1] - 204:19
**Cross** [1] - 225:1
**cross** [3] - 238:9, 257:18, 266:23
**cross-examination** [3] - 238:9, 257:18, 266:23
**crossed** [2] - 234:3, 279:6
**crowd** [9] - 235:19, 236:18, 239:19, 239:24, 240:2, 240:4, 240:6, 248:7, 250:14
**crowds** [3] - 239:18, 240:3
**CRR** [2] - 204:23, 291:20
**crucial** [1] - 255:11
**CSI** [2] - 244:13, 256:9
**CSO** [1] - 285:1
**cuff** [1] - 245:19
**cuffs** [1] - 230:21
**culminated** [1] - 248:4
**curious** [1] - 217:2
**custody** [5] - 213:11, 213:20, 214:15, 237:21, 286:7

# D

**dark** [5] - 231:22, 235:19, 246:2, 248:17, 253:9
**Date** [1] - 291:20
**date** [17] - 213:3, 213:15, 213:16, 213:19, 214:5, 214:8, 214:9, 214:10, 214:14, 245:10, 274:19, 274:20, 274:21, 276:15, 277:16, 279:5, 281:13
**dealers** [1] - 224:5
**dealing** [2] - 224:13, 275:23
**deals** [2] - 210:14, 210:20
**decide** [8] - 252:23, 261:7, 262:11, 268:16, 269:11, 270:5, 270:9, 282:6
**decided** [1] - 263:8
**deciding** [5] - 266:3, 273:2, 273:14, 273:16, 277:12
**decision** [10] - 207:9, 228:8, 236:21, 251:19, 263:24, 264:7, 268:10, 270:21, 272:12, 272:23
**decision-making** [1] - 264:7
**declared** [1] - 233:15
**deduction** [1] - 268:20
**defend** [1] - 245:24
**DEFENDANT** [1] - 205:7
**defendant** [5] - 260:24, 265:5, 265:6, 266:3, 266:18
**Defendant** [85] - 204:7, 204:15, 207:3, 216:5, 228:19, 228:20, 229:21, 229:25, 230:2, 230:16, 230:19, 230:20, 231:16, 231:19, 232:1,

232:13, 232:16, 232:21, 232:24,
233:8, 234:4, 234:19, 257:5, 258:1,
258:13, 258:16, 259:2, 259:7, 259:20,
260:1, 260:2, 260:17, 260:20, 260:21,
261:1, 264:13, 264:24, 265:1, 265:9,
265:11, 265:15, 265:21, 265:22,
269:7, 270:16, 271:14, 271:17,
271:19, 271:20, 271:24, 273:17,
273:25, 274:3, 274:4, 274:6, 274:9,
274:12, 274:23, 275:25, 276:6,
276:11, 276:16, 276:20, 276:22,
276:23, 277:1, 277:13, 277:17,
277:24, 278:2, 278:11, 278:16,
278:20, 278:24, 279:7, 279:10,
279:14, 279:18, 279:22, 280:2, 280:5,
281:11
**Defendant's** [17] - 210:11, 219:10,
220:13, 220:20, 228:25, 233:2,
233:24, 234:11, 260:16, 264:1, 265:3,
273:23, 276:9, 277:4, 278:1, 279:2,
287:24
**defender** [1] - 245:23
**Defender** [5] - 204:16, 204:17, 218:10,
218:12, 223:18
**Defender's** [3] - 218:15, 218:17, 224:4
**DEFENSE** - 292:9
**Defense** [44] - 205:15, 205:18, 205:23,
206:4, 206:8, 206:10, 206:16, 206:18,
206:24, 207:1, 207:21, 207:23, 208:4,
208:6, 208:12, 208:14, 208:20,
208:21, 209:2, 209:8, 209:10, 209:16,
209:18, 210:1, 210:4, 210:7, 210:9,
212:7, 212:13, 212:24, 218:2, 218:3,
220:12, 220:14, 225:9, 225:13, 233:4,
238:17, 255:20, 255:21, 256:23,
268:15, 272:8
**DEFENSE**........................ [1] - 292:13
**define** [4] - 288:6, 288:9, 289:3, 289:7
**defined** [1] - 277:19
**defining** [1] - 287:15
**definition** [6] - 233:18, 287:7, 288:18,
288:23, 289:17, 290:10
**degree** [6] - 214:7, 215:2, 215:8,
215:11, 215:25, 216:1
**deliberate** [2] - 262:2, 282:4
**deliberations** [23] - 236:24, 265:12,
265:24, 271:24, 279:24, 280:6, 280:9,
280:12, 280:13, 281:1, 282:8, 285:11,
285:14, 285:18, 285:23, 286:8,
286:11, 289:21, 289:22, 289:24,
290:3, 290:6, 290:7
**delivered** [1] - 222:19
**demand** [2] - 246:20, 246:21
**denied** [1] - 225:22
**denies** [1] - 266:25
**deny** [1] - 225:20
**Department** [6] - 215:3, 218:20, 218:22,
224:3, 242:1, 245:22
**department** [1] - 223:17
**depicted** [2] - 229:11, 229:21

**deposited** [1] - 242:4
**derived** [1] - 237:1
**describe** [4] - 214:23, 223:8, 223:10,
238:15
**described** [3] - 231:23, 246:14, 275:6
**describes** [4] - 214:24, 239:5, 255:14,
274:2
**description** [1] - 243:4
**deserves** [2] - 272:15, 273:4
**deserving** [1] - 272:4
**designed** [2] - 275:14, 277:20
**detail** [1] - 229:4
**details** [1] - 253:25
**detection** [1] - 245:20
**determination** [4] - 273:9, 274:5, 288:7,
289:16
**determine** [5] - 238:14, 262:10, 273:21,
280:1, 289:9
**determined** [2] - 261:23, 262:12
**determining** [2] - 262:13, 270:22
**developed** [1] - 263:22
**dictionary** [1] - 290:9
**difference** [1] - 243:17
**different** [12] - 215:1, 230:5, 230:14,
241:6, 243:4, 255:6, 256:12, 256:14,
268:12, 271:9, 279:13
**differently** [1] - 231:8
**diminished** [1] - 215:22
**dinner** [2] - 255:3, 255:4
**dip** [2] - 230:13, 260:14
**dipping** [5] - 240:17, 253:4, 253:9,
255:14, 260:14
**dire** [1] - 244:2
**DIRECT** [1] - 218:7
**direct** [13] - 216:6, 254:1, 254:3, 259:1,
259:2, 266:4, 266:9, 266:16, 266:17,
268:13, 268:22, 269:5, 269:12
**Direct** [2] - 266:5, 292:11
**Directing** [1] - 220:3
**direction** [7] - 230:14, 231:20, 232:1,
238:19, 249:13, 253:16
**directions** [1] - 230:6
**directly** [1] - 230:11
**disbelieve** [1] - 248:21
**discard** [1] - 250:23
**discarded** [1] - 243:24
**discovered** [1] - 213:25
**discrepancy** [3] - 237:22, 238:1, 249:10
**discuss** [1] - 264:3
**discussed** [1] - 227:3
**discussions** [2] - 289:24, 290:3
**dispatch** [2] - 237:20, 243:10
**disputed** [4] - 266:11, 268:10, 277:8,
277:14
**disregard** [1] - 267:13
**disregarded** [1] - 267:23
**dissimilarity** [1] - 215:21
**distance** [2] - 238:6, 238:8
**distinction** [1] - 266:17

**DISTRICT** [2] - 204:1, 204:1
**District** [5] - 205:2, 205:3, 218:24,
275:1, 275:2
**Division** [1] - 213:11
**DIVISION** [1] - 204:2
**DNA** [11] - 242:2, 242:4, 242:6, 242:9,
244:18, 244:20, 244:22, 251:12,
255:24, 256:6, 258:20
**DOC** [4] - 213:20, 214:25, 215:2, 215:12
**Docket** [1] - 204:6
**document** [2] - 219:12, 220:6
**Document** [4] - 211:8, 212:1, 212:20,
212:22
**documentation** [1] - 240:22
**documented** [1] - 237:20
**done** [7] - 219:4, 242:16, 244:20,
260:23, 269:16, 289:25, 290:4
**doubt** [31] - 211:15, 229:1, 234:16,
234:19, 237:9, 242:23, 255:18,
260:17, 260:23, 265:5, 265:14,
265:18, 266:1, 266:19, 269:7, 271:18,
273:23, 274:7, 276:5, 276:11, 276:15,
277:16, 278:23, 280:2, 287:8, 287:15,
288:8, 288:24, 288:25, 289:8, 289:11
**doubt'** [2] - 287:7, 288:24
**down** [22] - 225:5, 229:12, 229:15,
229:16, 229:18, 230:13, 231:15,
232:1, 232:15, 237:22, 238:23,
239:12, 240:2, 241:1, 245:9, 249:11,
250:2, 254:22, 260:6, 260:9, 286:4,
286:5
**Draper** [14] - 204:16, 212:22, 214:18,
215:12, 216:3, 218:2, 234:24, 235:3,
251:22, 252:3, 252:6, 254:2, 260:6,
287:22
**DRAPER** [93] - 205:8, 205:17, 205:20,
205:24, 206:5, 206:9, 206:11, 206:17,
206:19, 206:25, 207:4, 207:8, 207:13,
207:17, 207:22, 207:24, 208:5, 208:7,
208:13, 208:15, 208:21, 208:24,
209:3, 209:9, 209:11, 209:17, 209:19,
210:5, 210:9, 210:17, 210:22, 211:4,
211:6, 211:11, 211:14, 211:20,
211:23, 212:8, 212:14, 212:18,
212:23, 214:19, 214:22, 215:6,
215:13, 216:4, 216:7, 216:9, 216:16,
216:22, 217:6, 217:13, 217:21, 218:3,
218:8, 220:12, 220:16, 221:14,
221:22, 222:7, 222:12, 222:22, 223:3,
224:24, 225:2, 225:9, 225:15, 225:18,
226:3, 226:17, 226:19, 226:21, 227:3,
227:6, 227:12, 227:21, 227:23,
227:25, 235:4, 235:8, 249:20, 256:18,
282:25, 283:4, 283:10, 283:12, 284:3,
284:6, 284:18, 287:23, 288:13,
288:17, 291:4
**DRAPER**................. [1] - 292:11
**draw** [11] - 258:9, 262:11, 267:19,
268:14, 268:15, 268:17, 268:21,
269:1, 274:17

**drawing** [4] - 241:10, 268:18, 268:23, 270:8
**drawn** [5] - 241:8, 268:13, 269:6, 269:23, 271:22
**draws** [1] - 230:17
**driven** [1] - 248:19
**driving** [1] - 248:6
**drop** [8] - 232:7, 234:17, 249:24, 259:18, 259:21, 259:23, 286:3, 286:4
**dropped** [3] - 232:4, 232:8, 232:17
**drove** [2] - 239:7, 241:1
**drug** [12] - 223:21, 223:24, 223:25, 224:4, 235:19, 236:8, 239:24, 246:22, 247:1, 248:7, 248:9, 248:10
**drug-infested** [3] - 235:19, 236:8, 248:9
**drugs** [8] - 224:12, 224:16, 224:18, 236:9, 246:2, 247:23, 248:12, 250:19
**due** [1] - 283:17
**DULY** [1] - 218:6
**During** [3] - 268:3, 273:11, 282:8
**during** [10] - 216:23, 219:6, 221:3, 262:17, 262:18, 280:13, 285:10, 285:14, 286:8, 286:9
**dust** [4] - 241:22, 241:24, 245:3
**dusted** [2] - 245:7, 256:3
**duties** [1] - 218:21
**duty** [10] - 261:7, 261:21, 261:22, 263:2, 263:5, 263:17, 263:19, 265:7, 279:24, 282:3

---

# E

**ease** [1] - 275:8
**easily** [1] - 238:1
**Eastern** [1] - 218:23
**easy** [3] - 237:25, 253:5, 253:6
**EDWARDS** [1] - 227:14
**Edwards** [1] - 204:17
**effect** [5] - 215:20, 227:15, 263:14, 263:16, 282:11
**efficiently** [1] - 286:15
**effort** [2] - 222:16, 289:7
**efforts** [2] - 222:23, 250:22
**either** [9] - 210:7, 224:12, 239:6, 243:15, 248:19, 249:7, 252:4, 268:22, 278:2
**Either** [1] - 288:17
**electing** [1] - 286:12
**electronically** [1] - 210:13
**element** [15] - 233:6, 233:7, 233:11, 233:20, 233:21, 234:1, 234:14, 276:14, 277:7, 277:14, 277:15, 278:12, 278:15, 278:22, 279:4
**Element** [1] - 233:19
**elements** [5] - 232:24, 234:15, 234:16, 255:11, 276:5
**eliminated** [1] - 284:11
**emerge** [1] - 248:17
**emerged** [2] - 236:3, 249:7

**emerging** [1] - 239:6
**emphasize** [2] - 266:21, 274:13
**empirical** [1] - 245:16
**employed** [3] - 218:9, 218:11, 272:3
**employee** [2] - 214:25, 215:2
**empowered** [1] - 289:15
**encounter** [2] - 241:5, 289:14
**end** [6] - 228:21, 228:23, 243:22, 252:7, 261:13, 289:21
**ends** [1] - 254:11
**enforced** [1] - 275:19
**enforcement** [10] - 227:13, 227:16, 227:17, 264:11, 272:2, 272:3, 272:9, 272:13, 273:20, 275:15
**engage** [1] - 290:7
**enter** [3] - 261:6, 279:23, 280:6
**enters** [2] - 217:24, 288:21
**entire** [1] - 271:19
**entirely** [1] - 267:22
**entitled** [8] - 204:10, 260:20, 260:21, 260:24, 261:1, 264:2, 264:17, 291:17
**entitles** [1] - 264:15
**entry** [1] - 243:8
**equally** [1] - 264:5
**Equally** [1] - 264:12
**equals** [1] - 264:19
**error** [1] - 211:19
**essentially** [1] - 219:17
**establish** [2] - 269:12, 279:4
**established** [6] - 240:21, 266:13, 268:7, 268:22, 269:20, 274:21
**et** [1] - 214:25
**evaluating** [1] - 270:14
**evening** [2] - 236:22, 237:7
**evening's** [1] - 236:15
**event** [1] - 254:12
**events** [2] - 269:15, 269:22
**Eventually** [1] - 230:19
**eventually** [1] - 230:19
**everyday** [2] - 270:22, 289:14
**evidence** [127] - 210:23, 216:12, 220:13, 225:16, 228:4, 228:6, 228:24, 232:18, 234:22, 235:25, 236:5, 236:11, 236:13, 236:24, 237:1, 241:17, 242:2, 242:10, 245:7, 245:11, 245:16, 246:4, 246:5, 246:11, 246:19, 247:9, 247:14, 247:16, 247:17, 251:6, 251:10, 251:12, 256:12, 256:22, 256:25, 257:1, 257:5, 258:12, 259:2, 259:13, 259:15, 259:16, 259:19, 259:25, 261:20, 262:10, 262:14, 262:17, 262:18, 262:19, 262:21, 262:23, 263:4, 263:10, 263:13, 263:14, 263:16, 263:21, 263:22, 264:9, 264:22, 265:1, 265:8, 265:19, 266:2, 266:4, 266:5, 266:9, 266:10, 266:15, 266:16, 266:17, 266:20, 266:22, 267:1, 267:5, 267:6, 267:7, 267:10, 267:12, 267:15, 267:16, 267:17, 267:18, 267:20, 267:22, 268:14,

268:17, 268:19, 268:23, 268:25, 269:5, 269:6, 269:25, 270:7, 270:9, 270:17, 270:24, 271:8, 271:16, 272:13, 272:22, 273:5, 273:16, 273:22, 274:2, 274:4, 274:7, 274:8, 274:11, 274:12, 274:14, 279:12, 280:1, 280:3, 282:7, 282:12, 284:10, 285:12, 285:13, 285:19
**Evidence** [1] - 242:3
**evident** [1] - 261:17
**exactly** [2] - 231:17, 258:2
**Examination** [1] - 292:11
**EXAMINATION** [1] - 218:7
**examination** [3] - 238:9, 257:18, 266:23
**examine** [1] - 286:9
**examined** [2] - 245:10, 245:13
**examiner** [5] - 233:15, 234:5, 245:9, 252:13, 252:15
**examining** [2] - 244:25, 270:9
**example** [1] - 266:22
**exceeding** [5] - 233:1, 275:4, 276:8, 276:18, 276:25
**Exceptions** [3] - 282:20, 282:22, 282:24
**EXCEPTIONS** [1] - 292:16
**exclusive** [2] - 262:9, 262:24
**exclusively** [1] - 279:25
**excused** [3] - 225:7, 286:14, 290:23
**Excused.................................** [1] - 292:11
**exercise** [3] - 268:23, 278:3, 278:9
**Exhibit** [6] - 219:10, 220:13, 220:21, 229:16, 238:17, 242:7
**exhibits** [5] - 262:21, 267:7, 267:11, 274:22, 284:16
**Exhibits** [1] - 267:9
**exist** [1] - 268:11
**existence** [2] - 266:13, 268:7
**exists** [2] - 268:11, 277:9
**expect** [1] - 223:16
**expected** [1] - 290:16
**expel** [1] - 277:20
**experience** [14] - 218:18, 223:4, 223:8, 223:17, 224:2, 266:12, 267:19, 268:6, 269:3, 270:8, 288:6, 289:6, 289:9, 290:15
**experienced** [1] - 272:21
**experiences** [1] - 270:22
**expert** [6] - 233:15, 242:13, 247:13, 272:18, 273:3, 273:6
**expert's** [1] - 272:24
**explain** [1] - 288:4
**explained** [2] - 233:4, 241:21
**explanation** [2] - 244:22, 248:3
**explanations** [1] - 269:18
**explosion** [1] - 233:14
**explosive** [1] - 277:21
**express** [1] - 272:17
**extent** [1] - 271:8
**eyewitness** [6] - 256:10, 257:1, 283:5,

283:7, 283:8, 283:17

# F

**Faber** [3] - 242:12, 245:9, 245:11
**facing** [1] - 215:21
**fact** [41] - 210:22, 222:3, 227:16, 227:17, 233:5, 233:17, 233:18, 233:20, 234:6, 235:12, 236:4, 236:17, 238:25, 239:4, 244:21, 244:24, 245:19, 246:11, 256:5, 258:10, 258:12, 260:9, 261:7, 264:14, 266:11, 266:13, 266:14, 267:2, 267:3, 268:1, 268:8, 268:10, 268:11, 269:10, 269:24, 271:21, 272:2, 274:18, 275:18, 277:8, 279:19
**factor** [1] - 275:10
**facts** [28] - 210:25, 236:10, 238:14, 261:23, 262:9, 262:12, 262:13, 262:25, 263:1, 263:17, 264:21, 266:11, 266:24, 268:2, 268:7, 268:13, 268:18, 268:21, 269:6, 269:21, 270:1, 270:6, 272:23, 273:9, 273:14, 279:15, 282:15, 289:5
**failed** [2] - 251:3, 251:17
**fails** [1] - 265:20
**failure** [4] - 207:2, 216:14, 227:5, 227:8
**fair** [1] - 260:20
**fairness** [1] - 263:20
**faith** [1] - 290:13
**familiar** [6] - 211:16, 219:1, 223:5, 224:4, 224:7, 224:14
**family** [4] - 254:9, 254:12, 254:17
**fancy** [1] - 257:2
**far** [1] - 232:10
**fascinating** [1] - 256:10
**fast** [1] - 249:22
**favor** [2] - 210:25, 270:1
**fear** [1] - 246:1
**Federal** [16] - 204:16, 204:17, 218:10, 218:11, 218:14, 218:17, 223:18, 224:3, 227:16, 227:18, 227:22, 244:14, 244:15, 275:11, 275:15
**feeble** [1] - 250:22
**feelings** [2] - 263:25, 264:6
**feet** [2] - 249:8, 250:6
**fell** [2] - 255:1, 255:2
**fellow** [2] - 282:8, 282:12
**felons** [1] - 284:11
**few** [3] - 216:16, 247:2, 257:16
**fewer** [1] - 270:12
**field** [1] - 272:21
**fifteen** [2] - 249:8, 250:6
**Fifteen** [5] - 208:10, 226:1, 226:5, 227:1, 227:2
**figure** [1] - 252:19
**filed** [3] - 210:13, 287:13, 287:25
**fill** [1] - 281:16
**fills** [1] - 281:17

**final** [4] - 261:6, 261:20, 263:19, 284:11
**Final** [1] - 210:2
**finalize** [1] - 227:8
**fine** [1] - 231:2
**fingerprint** [4] - 242:10, 252:13, 252:14, 256:4
**fingerprinting** [1] - 244:18
**fingerprints** [8] - 241:18, 244:19, 245:1, 245:15, 252:15, 255:24, 258:20
**finished** [1] - 233:16
**firearm** [43] - 232:22, 233:8, 233:11, 233:13, 233:14, 233:19, 233:20, 233:22, 233:24, 234:2, 234:5, 234:6, 234:7, 234:20, 235:21, 236:16, 236:20, 239:21, 239:22, 239:23, 245:10, 251:7, 260:18, 275:5, 276:12, 276:16, 276:21, 277:18, 277:19, 277:25, 278:2, 278:10, 278:12, 278:13, 278:16, 278:18, 278:23, 279:2, 279:5, 279:11, 279:13, 279:15
**firearms** [8] - 234:7, 242:12, 245:9, 275:9, 275:12, 275:22, 275:23, 276:1
**fired** [2] - 233:17, 257:12
**First** [1] - 276:6
**first** [17] - 214:7, 214:20, 214:22, 214:24, 214:25, 215:2, 215:8, 215:11, 215:25, 216:1, 218:23, 226:9, 226:11, 228:11, 232:24, 276:14, 286:12
**first-degree** [5] - 214:7, 215:8, 215:11, 215:25, 216:1
**five** [10] - 218:23, 218:24, 226:6, 226:14, 226:16, 226:20, 236:1, 238:11, 249:8, 250:6
**Five** [4] - 226:21, 226:23, 249:19, 258:22
**five-minute** [2] - 226:6, 226:16
**Flex** [8] - 235:10, 235:11, 237:9, 237:12, 241:14, 243:14, 246:14, 248:6
**FOCR** [1] - 204:23
**focus** [2] - 236:8, 243:24
**folks** [5] - 217:12, 217:20, 226:16, 286:25, 288:10
**followed** [1] - 261:17
**following** [7] - 225:11, 233:2, 276:4, 276:9, 276:19, 277:4, 282:18
**fool** [1] - 244:12
**FOR** [2] - 204:1, 292:8
**forbidden** [1] - 280:22
**foregoing** [1] - 291:15
**foreign** [1] - 276:13
**forensic** [1] - 241:17
**forensics** [1] - 245:2
**foreperson** [10] - 280:11, 280:15, 281:14, 281:16, 281:22, 286:13, 289:1
**forever** [1] - 254:14
**forget** [1] - 236:9
**form** [9] - 212:13, 212:15, 212:16, 212:23, 212:24, 281:9, 281:14, 281:17, 285:7
**formal** [1] - 290:25

**former** [1] - 235:11
**forms** [1] - 284:16
**formulating** [1] - 287:11
**forth** [1] - 277:17
**forward** [1] - 258:13
**founders** [1] - 290:13
**four** [2] - 248:5, 289:24
**Fourteen** [1] - 208:6
**fourth** [6] - 237:5, 237:9, 237:10, 243:19
**Fourth** [2] - 287:13, 288:1
**Franklin** [1] - 204:16
**free** [6] - 261:14, 285:8, 285:11, 285:17, 286:3, 290:22
**FROM** [1] - 292:17
**front** [7] - 214:14, 216:21, 220:24, 251:2, 286:4, 286:5
**full** [3] - 228:12, 235:2, 283:2
**fuming** [1] - 245:21
**function** [1] - 279:25

# G

**Garfield** [41] - 219:2, 228:19, 228:25, 229:21, 235:8, 235:15, 235:16, 235:20, 236:2, 236:11, 236:22, 237:13, 239:1, 239:5, 240:16, 241:8, 241:12, 242:4, 242:6, 242:14, 242:18, 242:23, 242:25, 243:13, 244:11, 245:25, 246:5, 247:1, 247:4, 247:14, 247:20, 248:4, 248:18, 249:8, 250:1, 251:7, 251:20, 251:25, 252:17, 275:2, 281:11
**GARFIELD** [2] - 204:7, 292:2
**general** [3] - 211:23, 266:16, 275:20
**generated** [1] - 210:18
**gentlemen** [22] - 224:10, 228:16, 228:23, 229:2, 232:19, 233:21, 234:20, 235:6, 245:15, 246:10, 251:24, 253:14, 253:23, 254:1, 254:8, 255:24, 256:25, 258:5, 259:16, 259:19, 260:19, 290:17
**George** [1] - 204:14
**Giordano** [3] - 204:23, 291:14, 291:20
**given** [6] - 228:7, 261:16, 262:19, 264:16, 271:4, 283:23
**Glanville** [62] - 228:18, 228:20, 228:21, 229:7, 229:20, 230:10, 230:11, 230:12, 230:15, 230:16, 231:7, 231:12, 231:16, 231:23, 231:25, 232:3, 232:4, 232:13, 232:14, 233:8, 234:16, 237:14, 238:16, 238:21, 239:5, 239:9, 239:10, 239:14, 239:25, 240:13, 240:24, 241:4, 241:5, 241:7, 241:10, 241:11, 241:12, 243:9, 243:21, 243:23, 248:14, 248:25, 249:6, 249:21, 249:23, 249:25, 250:4, 250:9, 250:25, 251:24, 252:8, 253:3, 253:10, 253:14, 255:13, 255:14, 259:4, 259:19, 260:1, 260:8, 260:10

**Glanville's** [6] - 229:13, 237:15, 237:24, 238:13, 238:19, 239:20

**gloves** [1] - 239:14

**Glue** [2] - 241:25, 245:21

**Gold** [10] - 220:10, 220:18, 220:25, 223:5, 223:13, 229:10, 234:12, 247:22, 248:8

**Government** [105] - 204:13, 205:12, 205:21, 205:25, 206:2, 206:6, 206:12, 206:13, 206:14, 206:20, 206:22, 207:13, 207:19, 207:25, 208:2, 208:8, 208:10, 208:16, 208:17, 208:18, 208:19, 209:4, 209:6, 209:12, 209:14, 209:23, 210:2, 210:7, 212:3, 212:9, 213:1, 213:23, 213:24, 214:23, 215:1, 215:7, 215:11, 215:15, 215:24, 218:1, 225:3, 225:19, 225:23, 228:9, 228:10, 228:11, 233:4, 233:23, 234:15, 234:18, 236:7, 237:8, 237:12, 241:18, 241:20, 243:2, 243:18, 244:6, 244:12, 244:14, 244:16, 246:21, 246:24, 246:25, 247:9, 250:4, 251:23, 256:11, 256:14, 257:6, 260:22, 263:24, 264:3, 264:10, 264:15, 264:17, 264:19, 265:13, 265:20, 265:25, 268:14, 270:16, 273:12, 273:14, 273:18, 274:6, 275:25, 276:4, 276:10, 276:14, 276:22, 277:15, 278:5, 278:19, 278:22, 279:1, 279:4, 279:6, 279:8, 279:10, 282:20, 283:15, 287:10, 289:10, 291:5

**Government's** [12] - 212:14, 229:16, 235:22, 236:1, 236:6, 237:2, 242:7, 242:8, 242:22, 283:4, 283:6, 283:16

**GOVERNMENT.....................** [1] - 292:14

**GOVERNMENT.....................** [1] - 292:12

**grand** [2] - 246:25, 252:9

**Grand** [1] - 274:25

**graphite** [2] - 245:3, 245:6

**graphs** [1] - 257:2

**grass** [1] - 260:4

**grassy** [1] - 231:15

**great** [1] - 246:15

**greater** [2] - 264:16, 272:5

**ground** [5] - 230:18, 230:19, 232:2, 244:9, 258:16

**grounds** [1] - 272:9

**group** [1] - 289:25

**guess** [2] - 217:1, 268:9

**guesswork** [1] - 268:19

**guilt** [10] - 228:25, 237:8, 260:16, 260:22, 265:4, 265:18, 266:19, 269:7, 273:23, 274:4

**guilty** [21] - 213:10, 234:19, 234:22, 236:14, 236:16, 251:5, 251:20, 260:18, 260:25, 265:1, 265:3, 265:13, 265:21, 266:1, 266:3, 271:17, 273:17, 274:6, 276:6, 279:18, 280:2, 281:6,

281:12, 281:13, 289:10

**gun** [134] - 221:9, 223:19, 224:16, 224:18, 228:19, 228:20, 228:21, 228:22, 230:1, 230:7, 230:9, 230:13, 230:22, 232:4, 232:8, 232:14, 232:15, 233:9, 233:16, 233:17, 233:19, 234:9, 234:10, 234:17, 234:18, 235:13, 235:17, 236:2, 237:13, 239:13, 240:7, 240:16, 240:23, 241:11, 241:12, 241:22, 241:23, 242:2, 242:3, 242:6, 242:14, 242:19, 242:23, 243:21, 244:19, 244:20, 245:1, 245:12, 246:6, 247:8, 247:10, 247:15, 247:17, 247:18, 247:24, 248:19, 248:22, 248:24, 249:1, 249:2, 249:13, 249:17, 249:24, 250:6, 250:9, 250:10, 250:12, 250:13, 250:17, 251:9, 251:10, 252:2, 252:15, 253:3, 253:6, 253:15, 253:17, 253:20, 253:21, 255:13, 255:16, 257:3, 257:4, 257:5, 257:7, 257:12, 257:13, 258:1, 258:2, 258:10, 258:13, 258:16, 259:1, 259:2, 259:5, 259:6, 259:7, 259:9, 259:10, 259:12, 259:13, 259:14, 259:18, 259:21, 259:23, 259:24, 260:2, 260:5, 260:6, 260:7, 260:11, 260:12, 260:13, 260:14, 277:13, 285:21, 285:25, 286:1

**gunpoint** [1] - 232:3

**guns** [6] - 224:12, 224:18, 246:1, 246:12, 246:15, 246:17

**gunshot** [10] - 242:13, 242:15, 242:18, 251:11, 257:8, 257:9, 257:10, 257:11, 257:13, 258:18

**guy** [3] - 252:22, 258:17, 258:18

## H

**Hale** [1] - 204:14

**hand** [16] - 219:9, 228:19, 230:1, 230:7, 230:13, 231:21, 232:15, 233:9, 233:13, 234:11, 240:23, 250:2, 250:18, 253:19, 256:5, 284:23

**handgun** [5] - 221:15, 222:3, 222:9, 251:14, 251:16

**handle** [5] - 242:7, 242:8, 244:5, 245:4, 286:6

**handled** [2] - 242:7, 242:18

**handling** [1] - 245:7

**hands** [4] - 242:15, 245:7, 257:13, 257:14

**Hargrave** [12] - 219:23, 219:24, 220:7, 221:4, 221:7, 221:18, 221:24, 222:4, 222:8, 222:14, 222:25, 240:6

**harped** [1] - 255:21

**Harris** [3] - 244:21, 245:14, 256:2

**HAZEL** [73] - 205:14, 205:22, 206:1, 206:3, 206:7, 206:13, 206:15, 206:21, 206:23, 207:20, 208:1, 208:3, 208:9, 208:11, 208:17, 208:19, 209:5, 209:7, 209:13, 209:15, 209:24, 210:3, 211:7,

212:4, 212:10, 212:17, 212:21, 212:25, 213:5, 213:8, 213:10, 213:14, 213:16, 213:20, 214:1, 214:4, 214:7, 214:9, 214:11, 215:9, 215:16, 217:1, 217:5, 217:9, 217:11, 221:10, 221:12, 221:20, 222:5, 222:10, 222:20, 225:4, 225:21, 225:24, 226:1, 226:5, 226:8, 226:11, 226:14, 226:23, 227:1, 228:15, 228:18, 251:24, 256:23, 258:23, 282:21, 282:23, 286:17, 287:11, 287:18, 288:11, 291:6

**Hazel** [3] - 204:14, 212:20, 234:24

**hear** [14] - 218:2, 231:10, 231:16, 231:17, 231:18, 234:1, 243:17, 259:21, 261:4, 271:3, 283:23, 287:9, 287:22

**heard** [36] - 214:17, 214:19, 227:17, 229:4, 229:6, 229:7, 231:4, 231:24, 233:14, 235:11, 235:22, 235:23, 236:1, 237:1, 237:6, 237:10, 237:11, 237:12, 238:7, 239:17, 243:3, 244:1, 244:8, 244:10, 257:17, 257:20, 259:16, 259:18, 261:20, 266:6, 267:21, 268:3, 272:1, 273:11, 274:11

**hearing** [5] - 250:20, 251:3, 259:23, 263:7, 263:11

**hearing-impaired** [1] - 251:3

**hears** [5] - 241:9, 249:24, 266:8

**Hearsay** [1] - 221:12

**heavily** [1] - 223:14

**heavy** [1] - 244:6

**heck** [1] - 211:19

**heft** [2] - 285:22, 285:25

**held** [2] - 225:11, 277:24, 282:18

**help** [2] - 245:24, 281:9

**helpful** [1] - 275:12

**heroin** [8] - 240:1, 242:19, 250:20, 250:23, 251:4, 251:9, 251:13, 252:1

**hesitate** [1] - 282:9

**Hi** [3] - 234:7, 275:5

**Hi-Point** [3] - 234:7, 275:5

**hide** [1] - 257:23

**high** [8] - 223:14, 223:15, 235:20, 236:16, 248:9, 250:19, 251:15, 251:17

**high-crime** [1] - 248:9

**himself** [7] - 238:4, 238:7, 238:8, 245:21, 249:5, 259:5, 279:7

**hit** [4] - 244:9, 254:14, 254:23, 254:25

**hitting** [2] - 254:11, 255:10

**holding** [8] - 232:3, 253:15, 253:19, 255:25, 256:1, 257:5, 257:6

**Homicide** [1] - 218:24

**honest** [5] - 253:2, 253:5, 253:11, 282:11, 287:12

**Honor** [74] - 205:8, 205:14, 205:17, 205:20, 205:22, 206:1, 206:3, 206:5, 206:7, 206:15, 206:19, 206:21, 206:23, 207:22, 208:1, 208:3, 208:5, 208:9, 208:11, 208:21, 208:24, 209:5, 209:7, 209:11, 209:13, 209:15, 210:5,

210:9, 211:4, 211:11, 212:4, 212:8,
212:11, 212:17, 212:25, 213:5, 214:1,
215:6, 215:13, 215:17, 217:1, 217:2,
217:6, 217:13, 217:21, 220:12,
224:25, 225:4, 225:6, 225:9, 225:15,
225:18, 225:21, 225:24, 226:8,
226:19, 227:23, 228:15, 235:4,
249:20, 256:19, 258:23, 282:21,
282:23, 284:3, 284:6, 284:18, 286:17,
286:18, 287:12, 287:23, 288:13,
291:4, 291:6
**Honorable** [8] - 204:11, 205:4, 217:15,
217:18, 287:1, 287:3, 290:20, 291:9
**hope** [2] - 248:14, 252:7
**hopefully** [1] - 257:24
**hour** [1] - 285:18
**house** [1] - 222:18

# I

**idea** [5] - 246:15, 257:8, 257:17, 258:6,
259:2
**identification** [1] - 267:9
**II** [2] - 204:6, 292:3
**immediate** [1] - 224:19
**impaired** [2] - 250:21, 251:3
**impartial** [2] - 265:19, 282:7
**impartiality** [1] - 263:20
**impeach** [3] - 213:23, 215:16, 215:24
**impeachable** [1] - 213:2
**impeachables** [1] - 215:15
**impeached** [2] - 207:10, 270:4
**impeachment** [1] - 207:16
**important** [5] - 237:23, 238:14, 247:2,
264:10, 264:12
**importantly** [1] - 240:22
**imposed** [1] - 280:4
**imposes** [1] - 265:6
**imposing** [1] - 279:24
**imprisonment** [5] - 232:25, 275:3,
276:7, 276:17, 276:24
**improper** [2] - 246:23, 263:23
**IN** [1] - 204:1
**incalculable** [1] - 246:16
**incident** [5] - 221:25, 222:1, 237:21,
244:25
**inclination** [2] - 287:21, 288:3
**include** [8] - 211:5, 211:9, 211:10,
212:5, 227:18, 227:22, 275:20, 284:14
**included** [2] - 209:21, 211:13
**Included** [1] - 283:21
**including** [1] - 275:9
**inconsistencies** [1] - 237:16
**incorporated** [1] - 266:23
**Incorporating** [1] - 225:16
**incriminating** [1] - 240:1
**independent** [1] - 272:22
**independently** [1] - 236:21
**INDEX** [1] - 292:1

**indicate** [5] - 213:23, 219:21, 220:6,
262:25, 263:13
**indicated** [2] - 263:12, 267:14
**indicted** [1] - 264:24
**Indictment** [16] - 264:20, 265:2, 274:1,
274:10, 274:16, 274:17, 274:18,
274:21, 274:23, 274:25, 276:21,
277:2, 277:17, 279:5, 281:12
**individual** [4] - 236:10, 247:18, 248:23,
282:5
**individuals** [1] - 264:19
**indulgence** [1] - 223:3
**infer** [7] - 236:14, 245:11, 246:23,
266:11, 268:6, 279:15, 279:18
**inference** [8] - 215:4, 258:8, 258:9,
258:25, 268:5, 268:9, 268:20, 271:22
**inferences** [10] - 262:11, 267:20,
268:12, 268:15, 268:16, 268:18,
268:23, 269:2, 269:6, 269:23
**inferred** [1] - 269:13
**infested** [1] - 235:19, 236:8, 248:9
**influence** [2] - 279:24, 280:5
**inform** [2] - 207:1, 216:13
**information** [3] - 213:3, 281:7, 281:8
**initial** [2] - 243:10, 244:2
**initials** [1] - 233:16
**injustice** [1] - 282:5
**innocence** [4] - 243:1, 264:2, 265:16,
265:22
**innocent** [8] - 236:25, 237:18, 247:3,
260:22, 265:9, 265:11, 270:18, 271:20
**instead** [2] - 210:10, 239:22
**instruct** [9] - 216:18, 217:3, 217:4,
217:10, 261:8, 261:19, 261:21,
265:10, 277:6
**instructed** [2] - 273:17, 283:19
**instruction** [13] - 209:19, 209:20, 210:2,
210:10, 211:15, 211:21, 211:24,
212:3, 216:14, 216:20, 227:4, 227:13,
288:14
**Instruction** [8] - 205:12, 205:16, 205:19,
210:11, 210:14, 210:19, 211:14,
227:14
**INSTRUCTIONS** [1] - 292:15
**instructions** [34] - 205:10, 207:2, 207:5,
209:22, 210:12, 212:8, 212:10, 227:3,
228:6, 231:16, 231:17, 231:19,
231:25, 234:2, 259:20, 261:12,
261:13, 261:22, 261:25, 262:2,
262:18, 264:23, 268:4, 273:24, 280:8,
283:5, 283:13, 283:21, 283:24,
283:25, 284:11, 284:13, 284:15,
285:19
**insurance** [1] - 285:3
**intact** [1] - 285:4
**intend** [1] - 215:16
**intent** [4] - 208:23, 269:9, 269:16,
269:19
**intention** [3] - 278:3, 278:9, 278:11
**interest** [2] - 271:6, 272:10

**interesting** [3] - 244:4, 245:2, 256:9
**interfere** [1] - 264:7
**interpretation** [1] - 243:13
**interpretations** [1] - 237:2
**interpreted** [1] - 283:17
**intersection** [1] - 223:12
**interstate** [11] - 233:22, 233:25, 234:13,
274:25, 275:22, 276:2, 276:13,
278:25, 279:3, 279:11, 279:16
**interview** [2] - 221:17, 221:24
**interviewed** [1] - 221:6
**introduced** [4] - 210:23, 269:25, 274:7,
274:12
**investigate** [2] - 223:20, 244:16
**investigation** [4] - 219:4, 219:6, 221:3,
290:8
**investigative** [3] - 218:18, 273:13,
273:19
**investigator** [5] - 218:13, 223:4, 223:9,
224:2, 257:20
**involve** [1] - 269:9
**isolation** [1] - 237:17
**issue** [2] - 259:10, 272:17
**issues** [1] - 261:7
**items** [2] - 238:20, 242:15
**itself** [1] - 269:17
**Ivery** [16] - 228:22, 229:18, 230:20,
231:7, 231:13, 231:24, 232:5, 232:9,
232:15, 232:16, 234:17, 239:9,
239:12, 255:15, 260:13
**Ivy** [4] - 240:24, 241:1, 241:8, 241:13
**Ivy's** [1] - 241:3

# J

**jail** [1] - 276:3
**James** [4] - 228:18, 229:7, 260:1,
260:10
**January** [2] - 213:11, 213:21
**Jim** [9] - 254:11, 254:12, 254:14,
254:20, 254:23, 254:25, 255:1, 255:2,
255:11
**job** [1] - 245:24
**John** [2] - 219:23, 240:6
**join** [1] - 288:20
**joint** [2] - 278:7, 278:10
**jointly** [1] - 278:13
**Joseph** [1] - 218:4
**JOSEPH** [2] - 218:5, 292:10
**Jr** [3] - 204:11, 205:4, 219:23
**judge** [2] - 236:11, 270:23
**judges** [7] - 262:9, 262:24, 263:15,
270:20, 282:15, 289:5
**judging** [2] - 237:23, 283:20
**judgment** [5] - 246:4, 273:8, 281:24,
282:5, 290:11
**July** [1] - 218:16
**jump** [1] - 287:9
**jumping** [1] - 220:2

**junkie** [1] - 236:17
**junkies** [1] - 248:11
**junky** [5] - 246:17, 247:1, 250:16, 251:3, 251:15
**JUROR** [2] - 285:9, 290:19
**JURORS** [3] - 228:17, 235:7, 261:5
**jurors** [8] - 244:14, 265:17, 275:16, 280:3, 282:8, 282:13, 288:6, 288:15
**Jury** [8] - 210:11, 210:19, 211:14, 217:24, 274:25, 286:14, 288:21, 290:23
**jury** [35] - 204:10, 210:12, 212:24, 216:17, 216:19, 217:20, 218:1, 224:10, 228:3, 235:6, 238:18, 256:20, 261:3, 262:3, 262:8, 265:13, 266:18, 268:20, 271:25, 279:23, 280:10, 280:16, 283:20, 285:4, 285:10, 286:2, 287:6, 288:20, 288:25, 289:2, 289:7, 290:12, 290:14, 290:22
**JURY** [2] - 292:3, 292:7
**JURY**................................... [1] - 292:15
**JURY**................................... [1] - 292:17
**justice** [1] - 264:20
**justified** [2] - 250:11, 269:3

## K

**keep** [5] - 230:2, 245:17, 246:8, 270:15, 285:15
**kept** [1] - 224:12
**key** [1] - 231:11
**kitchen** [1] - 254:21
**knowing** [2] - 260:2, 277:13
**knowingly** [5] - 233:8, 275:4, 276:11, 277:17, 278:16
**knowledge** [4] - 266:7, 269:20, 272:19, 279:21
**Knowledge** [1] - 269:9
**known** [1] - 266:7
**kosher** [1] - 284:19

## L

**lack** [10] - 241:16, 246:5, 246:18, 255:23, 255:24, 263:22, 264:9, 273:16, 273:22, 274:7
**ladies** [13] - 224:10, 228:16, 229:2, 232:18, 233:21, 235:6, 246:10, 253:23, 253:25, 256:25, 258:5, 259:16, 290:17
**Ladies** [9] - 228:23, 234:20, 245:15, 251:24, 253:14, 254:8, 255:24, 259:19, 260:19
**language** [2] - 227:15, 227:18
**large** [1] - 244:8
**last** [3] - 211:20, 218:24, 280:8
**late** [1] - 246:3

**LAW** [1] - 227:10
**law** [36] - 211:16, 227:13, 227:15, 227:16, 228:7, 232:20, 234:21, 236:14, 261:8, 261:19, 261:22, 261:24, 262:1, 262:5, 262:6, 263:6, 263:7, 263:11, 264:22, 265:6, 265:9, 266:16, 272:1, 272:3, 272:8, 272:13, 274:19, 275:15, 275:18, 278:6, 278:21, 288:1, 288:5, 288:11, 289:3, 289:7
**Law** [1] - 273:19
**lawful** [1] - 259:11
**laws** [4] - 264:11, 275:14, 275:18, 275:20
**Lawson** [1] - 284:1
**Lawson's** [1] - 286:7
**lawsuit** [1] - 264:17
**lawyer** [1] - 266:22
**lawyer's** [2] - 266:21, 267:4
**lawyers** [6] - 228:5, 261:21, 262:14, 263:5, 267:16, 268:5
**lay** [1] - 250:2
**lays** [1] - 250:2
**learn** [4] - 221:6, 221:17, 221:23, 222:3
**learned** [1] - 222:25
**least** [7] - 214:14, 248:3, 248:10, 259:22, 260:3, 267:24, 287:12
**leave** [2] - 245:5, 249:1, 249:2
**leaves** [1] - 287:19, 289:8
**leaving** [1] - 239:23
**Leaving** [1] - 215:10
**led** [5] - 247:3, 247:4, 247:5, 247:6, 247:20
**left** [6] - 222:18, 232:11, 232:12, 251:2, 260:10, 260:24
**legal** [8] - 261:24, 273:18, 287:6, 288:23, 289:13, 289:16, 289:17, 290:15
**legitimate** [1] - 272:7
**less** [6] - 246:22, 252:11, 252:12, 264:18, 266:15, 272:4
**lesser** [1] - 272:5
**LEVIN** [3] - 286:18, 286:21, 286:24
**Levin** [2] - 204:14, 256:1
**liars** [1] - 256:17
**liberal** [1] - 237:2
**liberty** [1] - 251:19
**licensed** [1] - 275:24
**lie** [4] - 252:16, 252:17, 252:18, 252:20
**lift** [1] - 244:19
**light** [5] - 238:22, 267:18, 269:3, 273:5, 283:6
**lighting** [7] - 238:24, 239:2, 239:4, 239:8, 240:11, 249:18
**likely** [1] - 277:12
**limited** [1] - 274:13
**line** [5] - 234:3, 234:14, 248:12, 279:6, 279:8
**lined** [1] - 255:9

**linking** [1] - 251:10
**list** [2] - 219:24, 244:3
**literally** [1] - 248:12
**live** [1] - 210:8
**lives** [2] - 220:7, 289:15
**local** [3] - 246:17, 275:13, 275:15
**located** [1] - 249:17
**location** [2] - 238:19, 240:9
**lockup** [1] - 216:18
**log** [1] - 243:8
**logical** [2] - 268:10, 269:5
**Lombard** [1] - 204:24
**look** [7] - 232:10, 236:24, 238:16, 242:14, 256:6, 270:7, 273:15
**looked** [1] - 287:14
**looking** [3] - 248:6, 255:5, 287:13
**lost** [1] - 247:16
**lucky** [1] - 230:11
**lying** [2] - 252:5, 253:12

## M

**makings** [1] - 248:10
**malicious** [2] - 248:15, 252:8
**Malik** [1] - 204:17
**man** [15] - 236:3, 236:13, 237:13, 239:1, 239:23, 240:12, 243:24, 248:17, 249:7, 249:8, 249:22, 250:5, 250:11, 250:15, 253:15
**mandatory** [2] - 210:11, 210:15
**manufactured** [5] - 234:8, 234:11, 247:12, 247:13
**March** [2] - 213:3, 213:5
**marked** [3] - 219:9, 238:18, 267:9
**marker** [1] - 238:15
**market** [1] - 248:11
**Martin** [3] - 204:23, 291:14, 291:20
**MARYLAND** [1] - 204:1
**Maryland** [11] - 204:8, 204:24, 205:3, 220:10, 234:8, 234:12, 247:11, 247:12, 275:1, 275:2, 277:3
**matter** [6] - 204:10, 264:11, 268:19, 280:23, 290:10, 290:15, 291:17
**matters** [3] - 261:24, 272:17, 272:19
**mean** [7] - 210:24, 255:22, 262:25, 269:25, 272:3, 277:23, 288:16
**meaning** [3] - 222:18, 244:3, 289:13
**means** [5] - 277:22, 278:16, 278:18, 279:1, 280:17
**mechanics** [1] - 280:8
**medic** [10] - 231:1, 240:18, 240:20, 243:3, 243:7, 243:9, 243:11, 243:16, 243:17, 256:15
**medical** [2] - 243:7, 243:11
**meet** [1] - 233:18
**meeting** [1] - 275:13
**member** [5] - 218:19, 218:24, 237:9, 243:19, 280:16
**Members** [5] - 218:1, 228:3, 261:3,

285:10, 289:2
**members** [6] - 235:11, 243:14, 248:5, 262:8, 280:15, 290:22
**memory** [2] - 238:13, 271:4
**mentioned** [2] - 243:19, 244:2
**Mere** [1] - 211:23
**mere** [8] - 211:24, 212:2, 212:5, 236:17, 238:11, 243:10, 247:22, 282:13
**merely** [6] - 236:14, 247:24, 273:6, 274:2, 279:19, 289:14
**Merit** [1] - 291:14
**merits** [3] - 280:19, 280:23, 281:1
**met** [2] - 263:24, 273:14
**metal** [2] - 244:6, 244:9
**method** [3] - 241:25, 245:20, 245:21
**microfibers** [1] - 257:3, 258:20
**middle** [4] - 239:11, 239:19, 240:5, 252:25
**midway** [1] - 229:12
**might** [4] - 255:1, 255:2, 255:3, 255:4
**mind** [6] - 230:2, 269:10, 269:13, 270:15, 273:24, 281:2
**minimal** [1] - 286:22
**minimum** [2] - 210:12, 210:16
**minute** [3] - 226:6, 226:16, 229:4
**minutes** [13] - 216:7, 216:17, 226:1, 226:5, 226:9, 226:15, 226:23, 227:1, 228:11, 234:25, 249:19, 258:22, 284:9
**miscues** [1] - 236:25
**misperception** [1] - 235:18
**misperceptions** [2] - 237:1, 237:16
**missing** [2] - 237:5, 242:21
**missions** [1] - 246:14
**missteps** [1] - 236:25
**Mistake** [1] - 253:22
**mistake** [10] - 237:19, 237:25, 238:1, 238:2, 238:11, 253:18, 253:20, 278:18
**mistaken** [4] - 236:4, 248:16, 252:5, 253:13
**mistakes** [8] - 236:25, 237:16, 237:17, 238:13, 247:3, 247:5, 248:15
**mobile** [1] - 249:15
**moment** [4] - 254:15, 264:4, 270:13, 270:15
**moments** [1] - 260:12
**money** [1] - 250:19
**monitor** [1] - 220:20
**monitors** [1] - 238:17
**morning** [9] - 207:8, 238:5, 285:17, 289:20, 290:18, 290:21, 291:1, 291:7, 291:10
**Most** [1] - 240:22
**most** [7] - 205:10, 210:25, 240:15, 240:17, 254:12, 270:2, 270:10
**motion** [15] - 225:17, 225:20, 231:23, 240:17, 244:7, 249:9, 249:21, 250:24, 251:25, 252:1, 253:5, 253:10, 255:14, 260:14
**Motion** [1] - 225:22

**motions** [1] - 225:14
**motive** [2] - 246:23, 271:5
**Motor** [1] - 219:13
**motor** [1] - 224:21
**move** [1] - 220:13
**MR** [171] - 205:8, 205:14, 205:17, 205:20, 205:22, 205:24, 206:1, 206:3, 206:5, 206:7, 206:9, 206:11, 206:13, 206:15, 206:17, 206:19, 206:21, 206:23, 206:25, 207:4, 207:8, 207:13, 207:17, 207:20, 207:22, 207:24, 208:1, 208:3, 208:5, 208:7, 208:9, 208:11, 208:13, 208:15, 208:17, 208:19, 208:21, 208:24, 209:3, 209:5, 209:7, 209:9, 209:11, 209:13, 209:15, 209:17, 209:19, 209:24, 210:3, 210:5, 210:9, 210:17, 210:22, 211:4, 211:6, 211:7, 211:11, 211:14, 211:20, 211:23, 212:4, 212:8, 212:10, 212:14, 212:17, 212:18, 212:21, 212:23, 212:25, 213:5, 213:8, 213:10, 213:14, 213:16, 213:20, 214:1, 214:4, 214:7, 214:9, 214:11, 214:19, 214:22, 215:6, 215:9, 215:13, 215:16, 216:4, 216:7, 216:9, 216:16, 216:22, 217:1, 217:5, 217:6, 217:9, 217:11, 217:13, 217:21, 218:3, 218:8, 220:12, 220:16, 221:10, 221:12, 221:14, 221:20, 221:22, 222:5, 222:7, 222:10, 222:12, 222:20, 222:22, 223:3, 224:24, 225:2, 225:4, 225:9, 225:15, 225:18, 225:21, 225:24, 226:1, 226:3, 226:5, 226:8, 226:11, 226:14, 226:17, 226:19, 226:21, 226:23, 227:1, 227:3, 227:6, 227:12, 227:14, 227:21, 227:23, 227:25, 228:15, 228:18, 235:4, 235:8, 249:20, 251:24, 256:18, 256:23, 258:23, 282:21, 282:23, 282:25, 283:4, 283:10, 283:12, 284:3, 284:6, 284:18, 286:17, 286:18, 286:21, 286:24, 287:11, 287:18, 287:23, 288:11, 288:13, 288:17, 291:4, 291:6, 292:11
**multiple** [1] - 229:10
**must** [16] - 233:23, 236:21, 247:18, 261:9, 261:24, 262:6, 264:24, 267:22, 269:6, 270:7, 276:4, 276:14, 277:15, 278:15, 278:22, 279:1

## N

**name** [3] - 244:1, 264:14, 284:25
**national** [1] - 264:1
**nature** [1] - 264:6
**near** [2] - 240:16, 249:9
**necessarily** [4] - 210:24, 270:1, 272:4, 277:23
**necessary** [4] - 279:6, 279:9, 280:13, 284:4
**need** [6] - 245:5, 246:15, 256:5, 271:11,

281:5, 286:8
**needed** [1] - 235:12
**needing** [1] - 285:5
**needs** [1] - 260:5
**negative** [1] - 242:17
**neighborhood** [3] - 257:19, 257:21, 258:6
**neighborhoods** [1] - 236:9
**never** [12] - 217:2, 240:16, 240:22, 242:6, 242:18, 265:5, 265:6, 271:19, 271:20, 280:18, 281:2, 281:5
**next** [4] - 209:1, 228:4, 254:16, 254:19
**nice** [1] - 250:17
**night** [24] - 221:25, 231:12, 231:13, 235:10, 235:19, 238:2, 238:24, 239:5, 239:8, 240:11, 242:23, 243:5, 243:13, 244:4, 246:3, 246:7, 247:22, 248:15, 249:16, 251:7, 251:16, 251:18, 259:15, 290:17
**night's** [2] - 290:5
**Nissan** [5] - 219:7, 219:20, 219:21, 219:25, 240:5
**nobody** [1] - 244:8
**non** [1] - 283:25
**non-patterned** [1] - 283:25
**none** [2] - 262:16, 271:13
**None** [11] - 206:13, 206:15, 208:1, 208:3, 208:17, 208:19, 209:5, 209:7, 209:13, 209:15, 257:12
**nonexistence** [1] - 266:13
**normal** [1] - 254:9
**NORTHERN** [1] - 204:2
**NOTE** [1] - 292:17
**note** [6] - 280:14, 280:21, 280:24, 287:6, 288:4, 288:23
**noted** [1] - 227:12
**notes** [6] - 261:11, 261:14, 261:15, 285:11, 285:12, 285:14
**nothing** [2] - 231:2, 277:9
**Nothing** [2] - 212:10, 284:6
**noticing** [2] - 239:8, 239:12
**noting** [1] - 215:20
**November** [2] - 214:4, 245:1
**number** [4] - 209:2, 210:14, 210:20, 280:11
**Number** [28] - 205:13, 205:16, 205:19, 205:23, 207:19, 207:23, 208:2, 209:2, 209:6, 209:10, 210:11, 210:14, 210:19, 210:22, 211:6, 211:10, 211:15, 211:21, 219:10, 220:13, 220:21, 227:13, 227:15, 229:16, 238:17, 283:5, 285:2, 287:24
**numerically** [1] - 281:4

## O

**o'clock** [2] - 217:16, 289:18
**oath** [2] - 280:3, 280:21
**object** [6] - 208:21, 209:19, 244:9,

263:3, 278:7, 288:13
**objected** [1] - 263:9
**Objection** [6] - 221:10, 221:20, 222:5, 222:10, 222:20, 256:18
**objection** [30] - 205:15, 205:18, 206:11, 206:17, 206:19, 206:25, 207:20, 207:22, 207:24, 208:5, 208:7, 208:13, 208:15, 208:25, 209:3, 209:9, 209:11, 209:17, 209:23, 209:24, 210:1, 210:3, 210:5, 212:2, 212:12, 212:24, 212:25, 214:22, 220:14, 288:10
**objections** [5] - 205:12, 262:16, 283:1, 288:10, 291:3
**obligation** [1] - 271:15
**observed** [1] - 266:6
**obtain** [1] - 214:13
**Obviously** [1] - 290:4
**occasion** [1] - 271:10
**occurred** [3] - 274:19, 275:18, 277:1
**occurrence** [1] - 269:15
**October** [10] - 213:10, 213:16, 215:24, 220:5, 229:8, 236:23, 244:25, 250:17, 259:25, 275:1
**odd** [1] - 255:7
**OF** [4] - 204:1, 204:4, 205:1, 292:6
**off-the-cuff** [1] - 245:19
**offense** [4] - 233:12, 274:10, 274:19, 277:14
**offer** [1] - 270:17
**offering** [2] - 210:25, 270:2
**offers** [1] - 263:3
**Office** [6] - 218:10, 218:11, 218:15, 218:17, 223:18, 224:4
**officer** [11] - 227:16, 227:17, 237:5, 239:21, 248:21, 248:25, 249:11, 253:1, 258:3, 258:15, 285:1
**Officer** [85] - 228:18, 228:20, 228:21, 228:22, 229:7, 229:13, 229:14, 229:20, 230:10, 230:11, 230:12, 230:15, 230:16, 230:20, 231:7, 231:12, 231:13, 231:14, 231:23, 231:24, 231:25, 232:3, 232:4, 232:5, 232:9, 232:13, 232:14, 232:15, 232:16, 233:8, 234:16, 234:17, 237:14, 237:15, 238:13, 238:16, 238:19, 238:21, 239:5, 239:9, 239:10, 240:2, 240:4, 240:6, 240:8, 240:12, 240:15, 241:3, 241:8, 241:10, 241:11, 241:13, 243:9, 243:20, 243:22, 248:14, 248:25, 249:6, 249:23, 249:25, 250:9, 250:14, 250:25, 251:24, 252:8, 252:12, 253:3, 253:4, 253:10, 253:14, 255:13, 255:14, 255:15, 256:2, 256:16, 259:4, 259:19, 260:1, 260:8, 260:10, 260:13
**officer's** [2] - 235:18, 248:5
**officers** [24] - 229:9, 230:3, 230:4, 230:6, 231:4, 235:10, 237:5, 237:11, 239:6, 240:3, 241:23, 243:25, 246:13, 248:10, 248:20, 249:5, 249:14,

253:25, 254:3, 255:8, 257:12, 257:23, 260:2, 260:8
**Officers** [3] - 229:17, 230:25, 239:9
**officers'** [1] - 240:21
**official** [1] - 272:3
**officials** [2] - 272:2, 275:15
**often** [1] - 269:16
**Ohio** [2] - 234:9, 234:11
**once** [3] - 225:20, 226:13, 287:9
**One** [6] - 249:11, 254:18, 254:20, 255:21, 259:17, 266:4
**one** [70] - 207:2, 207:4, 209:14, 210:22, 214:1, 216:9, 216:17, 217:7, 226:9, 227:12, 229:14, 232:21, 233:1, 235:9, 235:18, 236:1, 236:2, 237:13, 238:20, 238:22, 238:23, 238:25, 239:19, 240:1, 241:13, 242:14, 244:8, 244:23, 245:8, 246:13, 246:14, 247:15, 248:6, 248:10, 249:18, 249:24, 250:13, 250:20, 254:4, 254:5, 254:22, 254:25, 255:1, 255:2, 255:3, 257:11, 258:7, 259:18, 259:22, 260:3, 260:9, 267:24, 268:7, 268:14, 269:13, 269:24, 275:4, 276:8, 276:18, 276:25, 278:7, 278:8, 280:11, 280:15, 281:10, 282:3, 284:10, 286:12, 288:8
**one's** [5] - 241:21, 248:22, 249:3, 249:4, 269:13
**open** [1] - 280:20
**opening** [2] - 225:25, 262:15
**opinion** [8] - 243:12, 262:4, 262:25, 263:13, 272:18, 273:7, 282:10, 282:12
**opinions** [2] - 272:17, 272:25
**opportunity** [4] - 220:17, 223:20, 271:3, 283:22
**orally** [1] - 280:20
**order** [4] - 234:9, 234:10, 281:25, 286:12
**ordered** [1] - 267:14
**ordinarily** [1] - 273:2
**ordinary** [1] - 272:6
**origin** [1] - 264:1
**otherwise** [2] - 280:19, 281:4
**ought** [1] - 262:5
**outcome** [2] - 271:6, 272:10
**outside** [3] - 238:10, 247:12, 267:22
**outweigh** [1] - 215:19
**overlook** [1] - 246:18
**overreaching** [1] - 252:11
**Overruled** [3] - 221:13, 256:20, 256:22
**overruled** [1] - 210:1
**overview** [1] - 229:5
**overzealous** [1] - 247:2
**own** [18] - 237:22, 241:13, 241:19, 245:5, 245:17, 248:5, 248:16, 250:10, 262:14, 266:7, 266:8, 267:19, 270:8, 270:21, 273:8, 282:9, 290:8, 290:11
**owned** [4] - 222:4, 240:5, 247:15, 259:10
**owner** [1] - 259:11

**ownership** [2] - 259:10, 278:13
**Ownership** [1] - 259:10

# P

**p.m** [5] - 217:17, 229:9, 287:2
**pads** [1] - 280:25
**PAGE** [1] - 292:6
**page** [1] - 220:4
**paid** [1] - 248:22
**pants** [1] - 251:2
**paper** [5] - 222:19, 247:18, 247:20, 259:9
**paramedic** [1] - 243:7
**parked** [3] - 232:11, 249:11, 252:20
**part** [11] - 214:12, 233:12, 235:12, 237:11, 240:17, 240:19, 242:24, 246:24, 246:25, 271:12, 280:8
**participating** [2] - 236:15, 279:19
**particular** [1] - 288:2
**particularly** [1] - 224:13
**parties** [4] - 262:22, 264:18, 268:1, 277:3
**partisans** [1] - 282:15
**party** [5] - 210:23, 263:18, 264:16, 269:24, 270:10
**pass** [1] - 262:9
**Pass** [2] - 211:3, 211:25
**passed** [2] - 275:14, 285:24
**passing** [2] - 230:23, 230:24
**past** [2] - 239:7, 239:10
**patrol** [1] - 239:11
**patterned** [1] - 283:25
**Paul** [1] - 285:1
**pavement** [2] - 244:9, 250:3
**pay** [1] - 261:9
**pen** [4] - 253:19, 253:20, 255:25
**Pennsylvania** [2] - 223:5, 246:3
**people** [26] - 229:14, 229:17, 235:20, 236:10, 236:18, 237:6, 238:19, 239:16, 241:3, 248:7, 248:8, 252:17, 252:24, 254:17, 254:19, 254:20, 255:5, 257:19, 257:20, 258:7, 259:3, 259:4, 259:21, 264:2, 275:21, 276:1
**perceived** [1] - 238:2
**perform** [2] - 263:17, 263:19
**perhaps** [4] - 220:3, 247:1, 250:22, 252:12
**period** [1] - 286:9
**permission** [1] - 286:19
**permit** [2] - 213:23, 215:24
**permitted** [5] - 269:1, 272:16, 272:18, 279:15, 285:13
**person** [24] - 224:13, 232:22, 234:20, 235:8, 235:16, 242:12, 242:16, 242:20, 243:7, 243:11, 243:18, 243:23, 244:8, 246:22, 250:19, 250:21, 251:11, 260:19, 270:19, 274:24, 275:23, 278:7, 278:9, 281:3

**person's** [2] - 269:10, 277:23
**personal** [3] - 263:25, 270:8, 272:10
**personnel** [1] - 215:12
**persons** [3] - 224:20, 275:9, 275:12
**persuaded** [1] - 270:10
**persuasive** [1] - 258:11
**perusing** [1] - 219:12
**phase** [1] - 228:4
**phone** [1] - 284:9
**photograph** [3] - 220:21, 220:23, 220:24
**physical** [1] - 278:4
**physically** [2] - 247:25, 277:24
**pick** [1] - 226:13
**picked** [2] - 239:23, 241:23
**picture** [3] - 235:13, 241:14, 254:8
**pictures** [3] - 229:11, 229:22, 249:16
**piece** [1] - 244:6
**pistol** [1] - 275:6
**place** [7] - 224:23, 235:9, 251:8, 254:5, 254:6, 269:22, 281:13
**placed** [5] - 230:21, 231:9, 233:16, 240:5, 253:22
**planning** [1] - 285:15
**plausible** [1] - 248:3
**played** [1] - 286:21
**plea** [2] - 210:17, 265:3
**pleased** [1] - 280:7
**pled** [2] - 213:10, 265:1
**PM** [2] - 204:9
**pocket** [2] - 242:12, 251:2
**Point** [3] - 234:7, 275:5
**point** [23] - 211:16, 227:12, 232:2, 233:24, 245:2, 254:25, 255:8, 255:21, 256:7, 256:17, 257:8, 258:5, 258:7, 258:21, 259:14, 259:15, 259:17, 259:18, 261:21, 288:2, 289:22
**pointed** [2] - 228:21, 239:3
**pointing** [3] - 221:1, 230:17, 235:23
**points** [6] - 231:6, 231:11, 255:11, 255:20, 257:16, 259:8
**Police** [6] - 218:19, 218:21, 224:3, 227:18, 241:25, 245:22
**police** [21] - 221:6, 221:9, 221:15, 221:23, 222:9, 223:17, 229:9, 230:3, 230:4, 230:6, 239:2, 241:2, 247:2, 248:5, 248:19, 248:20, 248:25, 249:5, 251:16, 253:24, 257:23
**policy** [2] - 275:17, 285:3
**poor** [5] - 238:24, 239:4, 239:8, 240:11
**populated** [1] - 223:14
**portray** [1] - 220:23
**pose** [1] - 248:3
**position** [4] - 218:12, 250:7, 250:12
**possess** [4] - 235:20, 246:6, 275:5, 277:22
**possessed** [18] - 233:8, 233:19, 233:22, 235:17, 242:23, 246:10, 246:11, 248:1, 251:7, 274:24, 276:11, 276:20,

277:2, 277:17, 278:12, 278:16, 278:17
**possesses** [2] - 278:1, 278:7
**possessing** [6] - 251:9, 275:21, 276:1, 276:16, 278:24, 279:14
**possession** [21] - 232:22, 233:9, 233:24, 234:3, 234:19, 236:16, 236:20, 247:23, 251:14, 260:18, 275:11, 276:12, 277:13, 277:25, 278:2, 278:4, 278:5, 278:6, 278:8, 278:10, 279:2
**possible** [3] - 261:10, 278:8, 279:22
**posts** [1] - 241:14
**powder** [4] - 241:21, 245:6, 252:15, 256:3
**power** [3] - 278:3, 278:9, 278:11
**practice** [1] - 285:22
**practices** [1] - 224:4
**pre** [1] - 210:17
**preference** [1] - 288:14
**prejudice** [3] - 215:22, 263:8, 263:18
**prejudicial** [1] - 215:20
**preliminary** [1] - 273:24
**prepared** [1] - 281:9
**presence** [6] - 211:23, 211:24, 212:2, 212:5, 238:10, 247:22
**present** [4] - 204:18, 247:24, 271:16, 279:20
**presented** [10] - 236:6, 242:10, 246:12, 247:9, 247:15, 247:17, 247:19, 258:15, 268:25, 272:20
**presentence** [1] - 214:24
**preserve** [1] - 211:16
**preside** [1] - 280:12
**presiding** [1] - 205:4
**presumed** [2] - 260:22, 265:11, 270:18
**presumes** [1] - 265:9
**presumption** [3] - 264:2, 265:16, 265:22
**pretended** [1] - 240:19
**pretending** [1] - 243:14
**pretty** [2] - 234:9, 290:12
**prevalence** [1] - 275:10
**previous** [2] - 225:14, 271:10
**previously** [2] - 279:11, 287:25
**prime** [1] - 264:11
**printout** [2] - 219:13, 219:15
**prints** [5] - 241:22, 241:23, 241:24, 242:1, 245:5
**prison** [1] - 215:4
**prize** [3] - 235:14, 235:16, 241:14
**Probation** [1] - 210:18
**probation** [2] - 214:12, 214:16
**probative** [1] - 215:19
**problem** [4] - 215:7, 215:9, 247:5, 275:13
**problems** [3] - 236:10, 236:12
**procedure** [1] - 280:9
**PROCEEDINGS** [2] - 205:1, 292:18
**Proceedings** [1] - 291:11

**proceedings** [1] - 291:16
**PROCEEDINGS**........................... [1] - 292:6
**process** [4] - 248:11, 264:7, 268:18, 291:1
**processing** [1] - 249:16
**producing** [1] - 265:8
**professional** [1] - 272:10
**prohibit** [1] - 275:21
**prohibited** [4] - 232:22, 234:20, 260:18, 276:1
**project** [2] - 233:14, 233:18
**projectile** [1] - 277:21
**proof** [8] - 228:10, 260:16, 263:25, 264:3, 266:11, 269:12, 270:16, 273:15
**Proof** [1] - 278:13
**properly** [2] - 263:4, 283:19
**proposed** [7] - 209:21, 212:14, 212:16, 283:5, 283:12, 283:14, 284:1
**prosecution** [3] - 264:14, 265:4, 271:18
**prosecution's** [1] - 271:16
**protect** [2] - 243:1, 246:21
**prove** [19] - 233:10, 233:23, 242:22, 247:25, 265:4, 266:11, 271:17, 271:20, 273:19, 276:4, 276:10, 276:14, 277:15, 278:20, 278:22, 279:1, 279:7, 279:8, 279:10
**proved** [9] - 228:6, 260:22, 265:13, 266:1, 268:13, 273:23, 274:6, 288:7, 289:10
**proven** [5] - 234:15, 234:18, 260:17, 269:2, 278:5
**proves** [1] - 228:25
**provide** [3] - 243:2, 245:10, 247:7
**provided** [2] - 246:8, 259:15
**proving** [4] - 237:8, 267:2, 276:6, 279:4
**provisions** [1] - 275:20
**public** [1] - 245:23
**Public** [5] - 204:16, 204:17, 218:10, 218:14, 224:3
**Publish** [1] - 286:1
**pull** [1] - 254:2
**pulled** [1] - 230:4
**pulling** [2] - 241:11, 241:13
**pulls** [2] - 249:23, 249:24
**punishable** [6] - 232:25, 275:3, 276:3, 276:7, 276:17, 276:24
**punishment** [6] - 209:21, 210:10, 212:6, 279:22, 280:4
**purchase** [1] - 248:13
**purchased** [4] - 219:21, 219:24, 247:10, 259:12
**purpose** [5] - 242:25, 274:13, 274:14, 277:10, 282:13
**purposely** [1] - 278:17
**purposes** [1] - 285:14
**put** [15] - 224:23, 228:20, 232:13, 232:15, 235:14, 242:9, 249:11, 257:23, 258:13, 259:4, 259:7, 259:13, 260:6, 260:13, 283:14

**puts** [1] - 213:18

## Q

**qualifications** [1] - 272:25
**qualifying** [1] - 215:23
**Quarles** [2] - 204:11, 205:4
**questionnaire** [2] - 281:10, 285:20
**questions** [10] - 216:17, 224:25, 225:2, 225:4, 237:18, 242:24, 243:1, 262:16, 262:20, 263:7
**Questions** [1] - 267:5
**quite** [5] - 211:16, 237:17, 241:6, 272:7, 287:12

## R

**race** [1] - 264:1
**raise** [2] - 242:25, 284:23
**raised** [2] - 242:24, 255:20
**Rarely** [1] - 269:12
**reach** [1] - 251:19
**reached** [4] - 280:7, 281:4, 281:15, 285:16
**reaching** [4] - 263:24, 272:22, 274:5, 282:4
**read** [3] - 210:21, 216:22, 284:12
**readily** [3] - 244:21, 245:21, 277:20
**reading** [1] - 261:13
**reads** [1] - 274:25
**Ready** [1] - 217:20
**ready** [6] - 205:6, 205:7, 205:8, 250:7, 250:12
**real** [1] - 246:4
**realizes** [1] - 260:8
**really** [5] - 250:9, 250:12, 252:14, 287:19
**Realtime** [1] - 291:15
**rear** [1] - 232:12
**reason** [7] - 209:1, 246:6, 265:6, 266:12, 268:6, 273:8
**reasonable** [35] - 211:15, 229:1, 234:16, 234:19, 237:9, 242:22, 255:18, 260:17, 260:23, 262:11, 265:5, 265:14, 265:18, 266:1, 266:19, 267:19, 269:2, 269:7, 269:23, 271:17, 273:23, 274:6, 276:5, 276:11, 276:15, 277:16, 278:23, 280:2, 285:18, 287:7, 287:15, 288:8, 288:23, 289:8, 289:10
**reasoned** [2] - 268:10, 269:5
**reasons** [1] - 272:25
**Rebuttal** [1] - 226:4
**rebuttal** [4] - 225:23, 226:24, 283:4, 283:7
**REBUTTAL** [1] - 292:14
**recalled** [1] - 259:22
**received** [7] - 205:11, 262:21, 267:7, 267:10, 267:11, 288:4, 288:22

**receiving** [1] - 275:22
**recent** [1] - 205:10
**recess** [6] - 216:24, 217:16, 286:25, 287:1, 290:21, 291:9
**Recess** [2] - 217:17, 287:2
**recognize** [5] - 219:10, 220:21, 236:25, 244:3, 289:3
**recognizes** [1] - 278:6
**recollection** [5] - 229:12, 229:13, 253:2, 253:11, 262:14
**recollections** [1] - 255:7
**record** [8] - 207:11, 211:15, 211:17, 267:1, 281:15, 284:2, 284:25, 291:16
**recover** [1] - 239:22
**recovered** [5] - 230:22, 233:12, 234:18, 253:17, 260:12
**REDD** [2] - 204:7, 292:2
**Redd** [67] - 205:6, 207:8, 216:18, 219:2, 222:2, 227:4, 228:19, 228:25, 229:21, 229:25, 230:6, 235:8, 235:15, 235:16, 235:20, 236:2, 236:11, 236:22, 237:13, 237:21, 238:7, 238:9, 238:11, 238:12, 239:1, 239:7, 239:13, 239:14, 239:15, 240:1, 240:9, 240:16, 240:18, 240:19, 241:5, 241:9, 241:12, 242:4, 242:11, 242:18, 242:23, 242:25, 243:5, 243:13, 244:11, 245:25, 246:5, 247:1, 247:4, 247:14, 247:21, 248:4, 248:18, 249:9, 249:12, 250:1, 250:16, 250:20, 251:7, 251:17, 251:20, 251:25, 252:17, 257:11, 275:2, 281:11
**Redd's** [4] - 242:6, 242:14, 247:22, 251:19
**reexamine** [1] - 282:9
**refer** [1] - 215:11
**reference** [4] - 215:12, 284:11, 284:12, 284:14
**referred** [1] - 243:9
**referring** [6] - 215:1, 215:8, 220:20, 222:1, 229:15, 238:17
**regard** [2] - 268:1, 279:12
**regarding** [2] - 259:9
**Regardless** [2] - 239:19, 262:4
**Registered** [1] - 291:14
**registry** [1] - 247:11
**Reisterstown** [1] - 223:13
**relating** [1] - 280:8
**release** [3] - 213:3, 213:19, 214:10
**released** [3] - 213:11, 213:20, 214:14
**relevant** [1] - 259:14
**religion** [1] - 264:1
**rely** [2] - 262:13, 266:3
**remaining** [1] - 255:21
**remains** [2] - 265:23, 271:18
**remedy** [1] - 283:11
**Remember** [2] - 251:1, 285:12
**remember** [16] - 235:25, 238:21, 240:18, 240:20, 254:5, 254:13, 255:1, 255:2, 255:3, 255:4, 264:25, 282:14, 285:11

**remembered** [1] - 231:8
**remind** [2] - 269:4, 274:1
**reminders** [1] - 285:12
**renew** [2] - 282:25, 287:23
**renewing** [1] - 225:13
**repeat** [1] - 264:8
**replace** [1] - 256:10
**report** [4] - 210:17, 214:24, 237:22, 244:25
**Reported** [1] - 204:22
**REPORTER** [1] - 291:9
**Reporter** [2] - 291:14, 291:15
**reports** [1] - 243:6
**represent** [1] - 281:24
**representing** [1] - 242:25
**Request** [1] - 287:24
**request** [8] - 209:20, 210:14, 211:17, 227:4, 263:6, 282:25, 283:6, 287:24
**requested** [7] - 210:10, 210:11, 210:12, 210:19, 211:14, 211:20, 244:23
**required** [6] - 268:21, 270:17, 271:20, 278:14, 278:20, 279:16
**requirement** [2] - 273:18, 283:21
**requires** [4] - 266:18, 274:20, 275:23, 288:12
**reserve** [1] - 207:15
**reserving** [1] - 207:9
**residue** [8] - 242:13, 242:16, 242:18, 251:11, 257:9, 257:14
**resolve** [1] - 207:16
**resources** [1] - 244:15
**respect** [1] - 283:20
**response** [1] - 287:19
**responsibility** [1] - 243:3
**rest** [1] - 290:5
**restated** [1] - 283:2
**rested** [2] - 218:1, 225:13
**resting** [1] - 225:17
**restored** [4] - 233:2, 276:9, 276:18, 277:4
**rests** [3] - 225:9, 273:9, 279:25
**result** [2] - 222:16, 265:3
**results** [1] - 244:17
**resume** [1] - 289:21
**resumes** [2] - 217:19, 287:4
**retire** [2] - 262:2, 280:10
**retrieve** [1] - 243:21
**return** [6] - 234:21, 251:5, 274:15, 281:18, 281:25, 286:19
**returning** [1] - 282:13
**reunion** [3] - 254:9, 254:10, 254:17
**reunions** [1] - 254:13
**reveal** [1] - 281:3
**reversible** [1] - 211:19
**review** [4] - 284:9, 284:15, 284:16
**reviewing** [1] - 272:12
**revised** [1] - 207:5
**rid** [2] - 230:9, 251:4
**riddled** [1] - 237:15

**ridiculous** [1] - 245:16
**rights** [4] - 233:2, 276:9, 276:19, 277:4
**rise** [5] - 205:2, 217:15, 217:18, 287:3, 290:20
**RMR** [2] - 204:23, 291:20
**Road** [1] - 223:13
**role** [3] - 275:16, 286:22, 289:5
**roll** [1] - 281:19
**Ron** [5] - 217:22, 284:7, 284:17, 286:1, 291:2
**Room** [1] - 204:23
**room** [6] - 238:18, 262:3, 271:25, 280:10, 280:25, 289:7
**row** [2] - 286:4, 286:5
**rule** [2] - 262:4, 266:16
**ruling** [1] - 263:11
**rulings** [2] - 263:6, 263:12
**run** [3] - 230:10, 253:16
**running** [8] - 239:23, 240:14, 243:23, 249:7, 249:22, 250:5, 250:11, 250:15

## S

**Sacca** [1] - 285:1
**safety** [2] - 246:8, 250:10
**salts** [1] - 231:1
**Sands** [1] - 283:14
**satisfied** [3] - 265:13, 266:19, 269:6
**satisfy** [1] - 278:15
**Saw** [1] - 260:13
**saw** [55] - 212:17, 228:18, 228:20, 229:20, 229:25, 231:12, 231:22, 232:14, 232:15, 233:9, 234:17, 236:2, 236:3, 237:13, 238:20, 239:4, 240:7, 240:12, 240:16, 240:17, 240:22, 244:8, 248:7, 248:15, 249:6, 252:2, 253:3, 253:4, 253:6, 253:8, 253:9, 253:11, 253:15, 253:16, 253:20, 253:21, 254:21, 256:1, 256:5, 257:1, 257:4, 257:6, 257:11, 259:4, 259:7, 259:23, 260:3, 260:13, 266:5
**scattered** [1] - 239:17
**scene** [4] - 243:8, 243:16, 244:24, 249:25
**score** [1] - 251:9
**screaming** [2] - 231:25, 259:20
**search** [1] - 239:15
**seated** [4] - 205:5, 217:25, 287:5, 288:22
**second** [4] - 233:7, 233:20, 276:10, 277:15
**seconds** [5] - 232:7, 243:10, 255:16, 260:12, 260:15
**secured** [1] - 250:13
**security** [1] - 285:1
**see** [37] - 209:1, 217:23, 231:20, 231:21, 231:22, 232:12, 236:24, 240:10, 241:4, 241:12, 242:3, 242:15, 244:5, 244:17, 245:4, 245:6, 249:1,

**250:9, 250:21, 251:25, 253:8, 253:9,**
253:12, 253:19, 255:25, 256:4, 256:6, 271:3, 283:22, 285:4, 285:23, 285:24
**See** [1] - 290:17
**seeing** [6] - 220:1, 230:6, 230:21, 239:13, 255:14, 255:15
**Seeing** [1] - 230:10
**seem** [2] - 237:17, 237:23
**sees** [11] - 230:12, 239:21, 241:11, 241:12, 248:17, 249:21, 255:13, 258:3, 260:1, 260:8, 266:8
**Segreti** [7] - 218:4, 218:9, 219:1, 220:17, 222:13, 223:4, 224:24
**SEGRETI** [2] - 218:5, 292:10
**seizure** [1] - 243:15
**select** [1] - 280:10
**semi** [1] - 275:6
**semi-automatic** [1] - 275:6
**send** [1] - 280:14
**sending** [2] - 285:21, 291:1
**sending-out** [1] - 291:1
**sense** [22] - 236:7, 241:19, 253:1, 253:12, 253:22, 257:15, 258:21, 266:12, 267:19, 268:7, 268:24, 270:8, 270:21, 273:8, 279:23, 280:6, 288:5, 289:6, 289:9, 289:16, 290:15
**senses** [1] - 266:8
**sensical** [1] - 234:10
**sentence** [3] - 214:12, 216:2, 279:25
**sentences** [1] - 210:12
**SEPTEMBER** [2] - 205:1, 292:3
**September** [1] - 204:9
**series** [2] - 269:18, 275:14
**serious** [1] - 264:13
**Serious** [1] - 223:19
**serve** [2] - 222:13, 286:13
**service** [1] - 285:7
**services** [1] - 285:6
**serving** [2] - 214:12, 216:2
**session** [3] - 205:3, 217:19, 287:4
**set** [4] - 207:5, 248:11, 268:14, 277:16
**sets** [2] - 285:19
**settle** [1] - 243:16
**Seventeen** [1] - 208:18
**sex** [1] - 264:1
**shadows** [11] - 236:4, 238:3, 239:6, 248:18, 248:19, 248:23, 248:24, 249:1, 249:3, 249:7, 249:23
**shifts** [2] - 265:5, 271:19
**shipped** [3] - 274:24, 275:22, 276:2
**shoot** [5] - 250:5, 250:7, 257:11
**short** [1] - 281:10
**shortcut** [1] - 251:18
**shot** [2] - 250:8, 250:10
**should've** [1] - 246:9
**shouting** [2] - 231:25, 241:10
**show** [9] - 233:23, 234:1, 234:2, 235:12, 235:14, 244:14, 246:11, 251:6, 263:8
**showed** [1] - 232:15

**shown** [2] - 228:24, 269:17
**side** [11] - 210:25, 220:25, 252:3, 252:25, 255:2, 260:4, 263:2, 263:3, 270:1, 270:12
**signature** [1] - 281:13
**signed** [4] - 280:15, 280:17, 284:17, 288:25
**significance** [1] - 271:21
**significant** [3] - 223:25, 255:11, 275:10
**similarity** [1] - 274:20
**simple** [1] - 265:6
**simplest** [1] - 245:20
**simply** [8] - 236:17, 241:12, 250:21, 251:7, 260:25, 266:18, 267:3, 283:12
**single** [2] - 255:9, 261:25
**sit** [1] - 244:14
**sitting** [7] - 229:21, 230:2, 230:3, 230:21, 247:4, 248:18, 248:23
**Sixteen** [1] - 208:14
**skill** [1] - 272:19
**skip** [1] - 247:3
**skipped** [1] - 247:2
**slash** [1] - 214:25
**slate** [1] - 265:16
**sleep** [1] - 290:5
**slightly** [2] - 255:6
**slowly** [1] - 261:9
**small** [1] - 285:6
**smelling** [1] - 231:1
**sneezed** [2] - 256:6, 257:3
**society** [1] - 236:12
**soften** [1] - 252:6
**sold** [2] - 247:13, 247:14
**sole** [6] - 262:8, 262:24, 263:14, 270:20, 278:6, 278:8
**solely** [4] - 273:10, 274:13, 280:2, 282:12
**solo** [1] - 286:23
**someone** [10] - 224:14, 224:18, 244:7, 247:16, 247:17, 249:15, 257:6, 272:21, 289:10
**Sometimes** [1] - 224:20, 224:21
**somewhat** [1] - 258:11
**Somewhat** [2] - 224:6, 224:7
**somewhere** [5] - 230:9, 239:11, 240:6, 247:19, 257:23
**sorry** [1] - 282:21
**sort** [7] - 229:12, 229:19, 230:23, 231:18, 256:8, 287:18, 289:13
**source** [1] - 239:2
**south** [1] - 220:25
**Special** [1] - 204:19
**special** [2] - 272:19, 289:16
**specialized** [1] - 289:13
**specific** [3] - 273:13, 273:19, 274:19
**Specifically** [1] - 221:9
**speculate** [1] - 277:10
**speculation** [2] - 246:9, 268:19
**spend** [1] - 233:3

**split** [1] - 239:18
**spokesperson** [1] - 280:12
**Squad** [8] - 235:10, 235:11, 237:10, 237:12, 241:15, 243:14, 246:14, 248:6
**stand** [6] - 229:7, 235:24, 264:19, 271:2, 271:23, 281:3
**standing** [7] - 229:22, 229:24, 241:4, 254:19, 258:14, 258:17, 260:10
**stands** [4] - 217:16, 287:1, 290:21, 291:9
**start** [4] - 228:9, 230:23, 261:11, 290:25
**started** [2] - 260:19, 260:21
**starting** [1] - 291:8
**starts** [2] - 230:10, 230:22
**stash** [7] - 224:8, 224:11, 224:18, 257:20, 257:21, 258:1, 258:2
**Stashes** [1] - 224:12
**State** [7] - 233:1, 275:12, 275:15, 276:8, 276:18, 277:3, 284:25
**state** [14] - 234:3, 234:8, 234:9, 234:13, 243:12, 247:11, 247:12, 262:4, 269:9, 269:12, 279:6, 279:7, 279:13, 279:14
**statement** [3] - 266:24, 266:25, 267:1
**statements** [3] - 262:15, 267:16, 271:10
**STATES** [3] - 204:1, 204:4, 292:2
**States** [5] - 205:2, 219:2, 246:20, 264:15, 275:11
**states** [1] - 210:22
**stating** [1] - 262:1
**statistics** [1] - 245:17
**Step** [1] - 228:1
**step** [6] - 225:5, 239:1, 239:13, 248:18, 249:2, 249:3
**steps** [16] - 229:21, 229:23, 229:24, 230:3, 238:8, 238:11, 238:12, 239:7, 240:9, 249:8, 249:12, 250:6, 253:15, 254:22, 260:1, 260:11
**Steven** [1] - 204:14
**still** [3] - 287:7, 287:11, 288:24
**stipulated** [3] - 233:5, 276:23, 277:3
**stipulation** [3] - 215:23, 267:25
**stipulations** [2] - 262:22, 267:8
**stole** [1] - 247:17
**stop** [3] - 243:23, 243:25, 290:1
**stopped** [3] - 229:12, 250:13, 250:15
**stories** [1] - 253:24
**story** [5] - 239:20, 251:15, 254:19, 254:24, 255:10
**straight** [1] - 255:1
**street** [22] - 220:25, 229:23, 230:7, 231:15, 232:11, 235:19, 236:9, 236:13, 236:19, 238:22, 239:21, 240:10, 240:13, 240:14, 241:1, 243:20, 243:22, 249:14, 251:16, 252:22, 252:25
**Street** [10] - 204:24, 220:10, 220:18, 220:25, 223:5, 229:10, 234:12, 247:22, 248:8
**streets** [3] - 246:2, 246:13, 246:15
**stretch** [1] - 252:21

**stricken** [1] - 267:14
**strip** [2] - 223:12, 223:13
**stuck** [1] - 226:13
**stuff** [1] - 250:25
**subject** [3] - 210:15, 274:17, 280:18
**submit** [16] - 236:4, 237:16, 241:20, 242:5, 242:16, 244:10, 245:15, 245:18, 247:19, 248:1, 248:16, 249:6, 250:8, 250:24, 251:6, 255:7
**submitted** [1] - 209:20
**subpoena** [1] - 222:14
**subsequently** [1] - 222:25
**substantial** [1] - 274:20
**substitute** [1] - 273:8
**sudden** [1] - 254:10
**suddenly** [2] - 230:22, 231:2
**Suddenly** [1] - 231:2
**Suffice** [1] - 231:6
**sufficient** [4] - 233:25, 234:2, 265:16, 279:3
**suggest** [1] - 289:18
**suggested** [3] - 252:10, 252:13, 256:7
**suggesting** [1] - 252:11
**Suiter** [18] - 229:17, 231:7, 231:13, 231:14, 239:10, 239:12, 240:2, 240:4, 240:6, 240:8, 240:10, 240:12, 240:15, 240:22, 252:12, 253:4, 255:13, 260:14
**Super** [2] - 241:25, 245:21
**supplied** [1] - 219:13
**support** [2] - 236:5, 275:14
**supported** [1] - 271:7
**supposedly** [5] - 236:1, 240:9, 241:22, 244:6, 245:7
**Supposedly** [1] - 244:7
**suppressing** [2] - 235:13, 235:14
**surprised** [3] - 217:23, 222:8, 285:4
**surrender** [1] - 282:11
**surrounding** [1] - 269:21
**surroundings** [1] - 258:8
**suspect** [3] - 231:9, 239:24, 260:3
**suspected** [4] - 240:1, 242:19, 250:20, 251:13
**suspicion** [1] - 268:9
**sustain** [2] - 265:20, 276:5
**Sustained** [4] - 221:21, 222:6, 222:11, 222:21
**swab** [1] - 244:20
**swabbing** [1] - 244:23
**swabs** [1] - 244:22
**swayed** [1] - 246:1
**swear** [1] - 284:22
**SWORN** [1] - 218:6
**sworn** [3] - 238:6, 267:6, 284:24
**Sworn**............................................... [1] - 292:10
**sympathy** [1] - 263:18

# T

**tackle** [1] - 250:1
**tag** [1] - 246:17
**tale** [2] - 237:4, 237:10
**technical** [3] - 289:16, 289:17, 290:14
**technique** [1] - 273:19
**techniques** [4] - 244:18, 256:9, 273:13, 273:20
**technology** [2] - 244:16, 244:18
**television** [1] - 244:13
**TELL** [1] - 218:6
**temperature** [1] - 280:25
**tempt** [1] - 211:18
**Ten** [2] - 216:7, 216:8
**ten** [5] - 213:19, 218:20, 249:8, 250:6, 284:9
**ten-year** [1] - 213:19
**tend** [1] - 254:13
**tendered** [4] - 211:8, 212:1, 212:20, 212:22
**tends** [1] - 266:10
**term** [5] - 233:1, 275:4, 276:8, 276:18, 276:25
**terms** [5] - 231:8, 233:10, 252:13, 289:14, 289:17
**terrifying** [2] - 245:23, 245:25
**test** [4] - 233:17, 242:2, 242:3, 242:17
**tested** [2] - 242:5, 252:14
**testified** [6] - 229:8, 229:20, 238:10, 240:2, 244:21, 270:25
**testifies** [5] - 239:9, 240:24, 266:5, 266:6, 270:19
**testify** [13] - 207:3, 216:14, 216:15, 227:5, 227:9, 238:7, 245:12, 271:14, 271:15, 271:22, 272:18, 273:7
**testifying** [4] - 207:9, 216:13, 271:2, 273:1
**testimony** [49] - 211:1, 229:3, 229:6, 235:23, 237:3, 237:15, 237:24, 238:4, 238:6, 238:13, 240:21, 249:5, 252:3, 253:24, 254:1, 254:3, 256:10, 257:17, 259:1, 259:22, 261:17, 262:19, 263:3, 267:7, 267:13, 270:3, 270:20, 270:23, 271:3, 271:7, 271:9, 271:12, 271:13, 272:1, 272:4, 272:9, 272:13, 272:14, 272:20, 272:24, 273:3, 273:4, 273:6, 273:11, 274:22, 283:17, 283:18, 283:23
**testing** [2] - 245:4, 257:10
**tests** [1] - 257:9
**THE** [187] - 204:1, 204:1, 205:2, 205:5, 205:7, 205:9, 205:15, 205:18, 205:21, 205:23, 205:25, 206:2, 206:4, 206:6, 206:8, 206:10, 206:12, 206:14, 206:16, 206:18, 206:20, 206:22, 206:24, 207:1, 207:7, 207:12, 207:15, 207:18, 207:21, 207:23, 207:25, 208:2, 208:4, 208:6, 208:8, 208:10,

208:12, 208:14, 208:16, 208:18,
208:20, 208:23, 208:25, 209:4, 209:6,
209:8, 209:10, 209:12, 209:14,
209:16, 209:18, 209:23, 210:1, 210:4,
210:6, 210:15, 210:21, 211:3, 211:5,
211:9, 211:12, 211:18, 211:22,
211:24, 212:2, 212:5, 212:9, 212:12,
212:16, 212:19, 213:1, 213:7, 213:9,
213:13, 213:15, 213:18, 213:22,
214:3, 214:6, 214:8, 214:10, 214:17,
214:21, 215:3, 215:7, 215:10, 215:14,
215:18, 216:5, 216:8, 216:11, 216:20,
216:24, 217:4, 217:7, 217:10, 217:12,
217:14, 217:15, 217:18, 217:20,
217:22, 217:25, 218:6, 220:14,
221:11, 221:13, 221:21, 222:6,
222:11, 222:21, 225:1, 225:5, 225:6,
225:8, 225:10, 225:13, 225:16,
225:19, 225:22, 225:25, 226:2, 226:4,
226:6, 226:10, 226:12, 226:16,
226:18, 226:20, 226:22, 226:24,
227:2, 227:5, 227:7, 227:11, 227:20,
227:22, 227:24, 228:1, 228:3, 234:24,
249:19, 251:22, 256:20, 258:22,
261:3, 261:6, 282:20, 282:22, 282:24,
283:2, 283:8, 283:11, 283:19, 284:4,
284:7, 284:19, 284:22, 284:23,
284:25, 285:2, 285:10, 286:15,
286:20, 286:23, 286:25, 287:1, 287:3,
287:5, 287:16, 287:21, 288:3, 288:16,
288:19, 288:22, 290:20, 290:22,
290:24, 291:5, 291:7, 291:9, 292:9,
292:12, 292:13, 292:14, 292:15,
292:17
**THEN** [1] - 218:6
**theory** [1] - 272:20
**therefore** [2] - 239:12, 265:10
**thinks** [3] - 230:11, 236:2, 248:15
**third** [4] - 233:21, 234:14, 276:12,
278:22
**thoughts** [2] - 287:10, 287:11
**three** [9] - 229:9, 232:24, 235:10, 237:4,
237:11, 254:17, 254:24, 255:5, 289:23
**Three** [1] - 234:15
**threw** [3] - 244:7, 249:13, 250:12
**throughout** [2] - 265:11, 271:18
**throw** [2] - 236:2, 250:25
**thrown** [3] - 239:21, 243:22, 244:11
**timely** [1] - 213:13
**title** [1] - 219:17
**TO** [2] - 218:6, 292:15
**today** [7] - 222:23, 235:17, 235:18,
237:7, 248:4, 285:5, 286:19
**together** [6] - 252:18, 252:19, 252:23,
289:22, 289:25, 290:4
**token** [4] - 211:1, 264:17, 270:2, 285:6
**Tomorrow** [1] - 291:7
**tomorrow** [7] - 285:17, 289:20, 290:6,
290:17, 290:21, 291:1, 291:10
**tonight** [1] - 290:5

**took** [3] - 233:15, 235:13, 269:22
**top** [1] - 240:25
**toss** [7] - 230:13, 252:1, 252:2, 253:4,
253:16, 253:20, 256:1
**tossed** [1] - 255:16
**tosses** [2] - 258:3, 260:11
**totality** [1] - 237:24
**touch** [2] - 286:2, 291:2
**touched** [1] - 257:4
**touches** [1] - 266:8
**touching** [2] - 280:19, 280:23
**toward** [1] - 253:16
**towards** [4] - 248:24, 249:22, 250:6,
250:11
**trail** [4] - 247:18, 247:20, 259:9
**trained** [1] - 243:12
**training** [1] - 272:20
**transcript** [1] - 291:16
**transmit** [1] - 281:7
**transported** [1] - 279:9
**travel** [1] - 234:13
**traveled** [4] - 233:25, 279:3, 279:11,
279:16
**treatise** [1] - 283:13
**treatment** [1] - 240:20
**tree** [1] - 240:2
**TRIAL** [1] - 292:3
**trial** [11] - 204:10, 217:2, 258:18,
260:20, 262:17, 263:22, 265:15,
265:23, 268:3, 271:19, 273:11
**tried** [5] - 250:22, 252:6, 258:1, 286:16
**tries** [1] - 230:14
**true** [8] - 249:12, 266:24, 266:25, 267:2,
267:3, 268:1, 268:2, 270:6
**trust** [1] - 290:11
**trusted** [1] - 289:15
**TRUTH** [1] - 218:6
**truth** [4] - 247:8, 252:21, 267:1, 271:5
**truthful** [2] - 252:11, 252:12
**try** [4] - 244:19, 261:15, 272:8, 290:9
**trying** [10] - 235:20, 236:15, 246:23,
247:23, 250:23, 250:25, 251:9,
251:15, 261:11, 283:9
**turn** [2] - 205:9, 273:25
**turned** [3] - 229:10, 232:10, 250:18
**turns** [2] - 231:19, 232:9
**Twenty** [3] - 209:1, 209:14, 209:18
**Twenty-one** [1] - 209:14
**Twenty-two** [1] - 209:18
**Two** [2] - 226:16, 226:20
**two** [19] - 209:18, 215:19, 215:21, 226:6,
229:19, 231:4, 239:6, 239:17, 243:4,
243:13, 248:20, 254:7, 254:16, 255:5,
255:9, 266:2, 283:5, 283:12, 289:23
**type** [5] - 223:15, 240:17, 249:9, 256:25,
266:4
**types** [3] - 256:12, 266:2, 283:18

# U

**U.S** [3] - 204:14, 204:14, 204:23
**ultimately** [1] - 240:13
**unanimous** [2] - 281:4, 282:2
**unanimously** [1] - 265:17
**unarmed** [2] - 239:23, 243:23
**unclearness** [1] - 207:10
**unconsciousness** [1] - 243:15
**under** [13] - 222:9, 228:20, 232:5, 232:6,
232:8, 244:9, 255:16, 258:2, 258:3,
260:13, 270:24, 278:12
**Under** [2] - 271:14, 280:3
**underhanded** [1] - 244:7
**underneath** [2] - 228:22, 232:12
**understatement** [1] - 287:16
**undisputed** [1] - 243:6
**unfair** [1] - 246:8
**unfavorably** [1] - 287:14
**unfortunately** [3] - 235:15, 247:3, 247:4
**uniform** [1] - 230:4
**Unit** [1] - 218:25
**unit** [1] - 249:16
**United** [5] - 205:2, 219:2, 246:20,
264:15, 275:11
**UNITED** [3] - 204:1, 204:4, 292:2
**unlawfully** [1] - 275:4
**unless** [3] - 216:25, 265:17, 265:25
**unsure** [2] - 238:23, 241:9
**unusual** [1] - 289:12
**up** [24] - 211:3, 211:25, 226:14, 229:11,
230:4, 230:21, 239:23, 240:12,
240:14, 240:24, 240:25, 241:20,
241:23, 243:20, 248:7, 248:11,
248:12, 249:14, 252:6, 254:11, 255:9,
255:15, 260:7, 289:21
**users** [2] - 239:24, 248:12
**uses** [1] - 242:1
**uttered** [1] - 269:19

# V

**value** [2] - 215:19, 266:15
**Vargas** [8] - 229:14, 237:6, 240:25,
243:20, 243:22, 244:1, 250:14, 256:16
**variances** [3] - 253:24, 254:6, 255:17
**varied** [1] - 256:8
**various** [1] - 272:1
**vehicle** [2] - 224:21, 241:7
**Vehicle** [1] - 219:13
**verdict** [24] - 212:12, 234:21, 234:22,
251:5, 260:25, 262:6, 263:1, 263:21,
264:8, 264:21, 274:15, 280:5, 281:5,
281:9, 281:15, 281:17, 281:20,
281:22, 281:24, 281:25, 282:1,
282:13, 284:16, 285:16
**verdicts** [1] - 256:21
**version** [2] - 237:10, 241:20

**versions** [2] - 239:18, 243:4
**versus** [1] - 219:2
**vicinity** [2] - 224:19, 247:24
**view** [2] - 275:8, 282:4
**views** [1] - 282:9
**violated** [1] - 214:16
**violation** [2] - 214:13, 275:18
**violence** [3] - 236:8, 246:16, 275:16
**violent** [1] - 275:10
**virtue** [1] - 266:7
**voir** [1] - 244:2
**Volume** [1] - 204:6
**VOLUME** [1] - 292:3
**voluntarily** [1] - 278:17
**vulnerable** [1] - 246:22

# W

**walk** [8] - 230:14, 231:5, 239:12, 248:24, 249:2, 249:3, 250:22, 289:25
**walked** [9] - 229:15, 229:16, 229:18, 230:5, 232:1, 239:7, 239:10, 240:8, 248:20
**walking** [8] - 230:16, 240:10, 240:12, 240:13, 240:14, 249:7, 249:22, 250:15
**wall** [2] - 235:14, 241:14
**wants** [5] - 256:11, 256:13, 256:23, 286:2, 286:5
**warm** [1] - 250:18
**warning** [3] - 226:7, 226:16, 226:18
**WAS** [1] - 218:6
**watch** [2] - 228:13, 235:1
**WDQ-07-0470** [1] - 204:6
**weapon** [11] - 230:17, 241:13, 243:24, 244:5, 249:24, 251:12, 274:24, 277:2, 277:19, 278:18
**week** [1] - 244:24
**weigh** [2] - 279:25, 286:3
**weighing** [1] - 272:24
**weight** [8] - 262:9, 263:14, 263:16, 272:5, 272:14, 273:4, 282:11, 283:18
**West** [1] - 204:24
**whatsoever** [1] - 247:10
**whole** [1] - 262:2
**willfulness** [2] - 269:9, 269:20
**William** [2] - 204:11, 205:4
**willing** [7] - 252:16, 252:17, 252:18, 252:20, 252:21, 252:22, 252:23
**window** [1] - 213:19
**wipe** [1] - 245:3
**wiped** [2] - 245:8, 245:12
**wisdom** [4] - 262:4, 275:17, 290:12, 290:14
**wish** [4] - 214:17, 214:19, 243:2, 247:7
**witness** [29] - 211:2, 211:10, 216:9, 217:23, 235:24, 244:3, 265:7, 266:5, 266:6, 266:25, 270:3, 270:4, 270:19, 270:22, 270:24, 271:5, 271:10, 271:11, 271:13, 271:23, 272:2, 272:6,
272:9, 272:14, 272:18, 273:7, 283:20
**WITNESS** [1] - 225:6
**Witness** [3] - 219:12, 225:7, 292:11
**witness'** [9] - 271:1, 271:2, 271:4, 271:6, 271:7, 271:9, 272:25, 273:3, 283:22
**WITNESSES** [1] - 292:8
**witnesses** [18] - 210:23, 210:25, 216:3, 236:1, 262:10, 262:20, 263:16, 267:7, 269:24, 270:2, 270:5, 270:10, 270:11, 270:12, 270:14, 270:17, 272:16, 273:12
**witnesses'** [1] - 267:15
**word** [2] - 268:4, 278:19
**words** [8] - 227:9, 266:6, 269:14, 269:18, 282:1, 289:12
**world** [1] - 248:23
**worth** [1] - 283:15
**would've** [1] - 246:9
**Wright** [1] - 205:11
**writing** [2] - 280:17, 280:19
**wrote** [1] - 237:21

# X

**xerox** [1] - 261:15

# Y

**year** [7] - 213:19, 233:1, 275:4, 276:3, 276:8, 276:18, 276:25
**years** [7] - 218:20, 218:23, 218:24, 254:7, 254:16, 255:5, 255:10
**yelling** [2] - 231:18, 241:10
**yesterday** [4] - 222:17, 229:4, 232:23, 237:7
**yourself** [2] - 254:8, 282:6