IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |
|---|---|
| GARFIELD REDD, | * |
| Petitioner, | * |
| v. | *    CIVIL NO.:    WDQ-11-3445 |
|  | *    CRIMINAL NO.: WDQ-07-0470 |
| UNITED STATES OF AMERICA, | * |
| Respondent. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Garfield Redd was convicted by a jury of being a felon in possession of a firearm and was sentenced to 240 months in prison. Pending are Redd's *pro se* motions to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 and to appoint counsel. No hearing is necessary. *See* Rule 8 of the *Rules Governing § 2255 Proceedings*. For the following reasons, the motions will be denied.

I.  Background[1]

Around 10:00 p.m. on October 22, 2006, a large crowd was gathered around Pennsylvania Avenue and Gold Street in Baltimore, Maryland. Trial Tr. 40:6-41:22. Detectives Vargas,[2] James Glanville, Kenneth Ivery, and Sean Suiter approached the

---

[1] The facts are drawn from the trial and sentencing transcripts, ECF Nos. 59-62, and Redd's Presentence Report. Redd does not dispute facts in the record but misquotes and mischaracterizes the transcript. *See infra* Part II.A.1.

[2] The record does not indicate Vargas's first name.

crowd. *See id.* at 42:1. Redd was sitting on some steps, and approached Glanville with a gun. *Id.* at 44:6-18. As Glanville drew his service weapon, Redd discarded the gun under a nearby vehicle. *Id.* at 44:20-22. Redd retreated, and then went to the ground on Glanville's order. *Id.* at 46:7. At Glanville's direction, Suiter approached Redd from behind and handcuffed him. *Id.* at 97:10-15. Ivery recovered the gun. *Id.* at 123:1.

Redd was charged with being a felon in possession of a firearm and proceeded to trial on September 9, 2008. Because Redd has a hearing impairment, he was provided with a listening device. *See id.* at 5:3-5. The only time that Redd indicated any problems with the device was at the beginning of trial.[3] The

---

[3]
    THE COURT:  Mr. Redd, are you able to hear me?
    THE DEFENDANT:  I can hear. I hear something.
    MR. DRAPER:  Can you hear the Judge?
    THE COURT:  Mr. Redd, can you hear me?
    THE DEFENDANT:  I can't hear. It's --
    THE CLERK:  There is a volume control on --
    THE DEFENDANT:  It's going in and out.
    MR. DRAPER:  Going in and out? Okay. Let's try this headpiece. Which ear is better?
    THE COURT:  Mr. Redd, can you hear me?
    THE DEFENDANT:  Yeah. I can hear you. Yes.
    THE COURT:  Okay.
    MR. DRAPER:  Can you hear him?
    THE COURT:  Are you okay?
    THE DEFENDANT:  Yeah. I can hear you.
    THE COURT:  Testing 1, 2, 3. Can you hear?
    THE DEFENDANT:  Yeah.
    THE COURT:  If at any time during the trial you cannot hear me or one of the lawyers, one of the witnesses, please let us know. We'll make every effort to make sure you hear every word that's said during the trial, okay?
    THE DEFENDANT:  Okay.

hearing device enabled Redd to hear the proceedings, even when the courtroom husher was activated. *See id.* at 11:12-16. The court reporter provided Redd real time transcription. *See id.* at 12:21-13:5, 35:20-21. No interpreter was provided because Redd does not sign. *Id.* at 12:14.

At trial, Glanville testified that when the incident began, Redd ran toward him. *Id.* at 43:17-18, 44:17-18. Suiter testified that Redd walked, and did not run, toward Glanville. *Id.* at 100:10-11. The government's witnesses used a daytime photograph of the scene to explain their and Redd's positions.

---

    **THE CLERK:** Should we try it with the bench conference, Judge to --
    **THE COURT:** We'll get a chance to do that.
    . . .
    **THE COURT:** . . . The speaker seems to be squealing.
    **THE DEFENDANT:** It's going in and out.
    . . .
    **THE COURT:** Okay. Is that getting feedback from the microphone, or from one of the other electronic devices, folks?
    **MR. DRAPER:** I think it connects to this device up here, so I want to make sure it was a clear --
    **THE COURT:** Line of sight?
    **MR. DRAPER:** I can still hear the feedback here. Mr. Redd tells me the sound is going in and out on the head -- on the --
    **THE DEFENDANT:** It's going in and out.
    **THE COURT:** Okay.
    **THE DEFENDANT:** Like the frequency --
    **THE COURT:** Okay. Well, sadly, that's the best we're able to do.
    **THE DEFENDANT:** A lot better.

Trial Tr. 5:6-6:5, 6:18-19, 8:7-21. Lines 6:6 to 6:17 and 6:20 to 8:6, which concern the jury and witnesses, have been omitted.

The jury, which included two African-American members, found Redd guilty, and he was sentenced to 240 months imprisonment under the Armed Career Criminal Act ("ACCA").[4] *See* ECF No. 51. The predicate offenses for the ACCA listed in the Presentence Report ("PSR") and relied upon by the Court were possession with intent to distribute cocaine when Redd was 16, to which he pled guilty on March 3, 1988; assault at age 17, to which he also pled guilty on March 3, 1988;[5] first degree assault at age 26, to which he pled guilty on May 12, 1998; and first degree assault at age 28, to which he pled guilty on October 27, 2000. *See* PSR at 5-8; Sentencing Tr. at 10:15-23.

The Fourth Circuit rejected his arguments that the Court improperly considered the predicate offenses and affirmed Redd's sentence. *United States v. Redd*, 372 F. App'x 413, 414-16 (4th Cir. 2010). On November 29, 2010, the Supreme Court denied certiorari. *Redd v. United States*, 131 S. Ct. 640 (2010).

On November 29, 2011,[6] Redd moved to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, alleging violations

---

[4] 18 U.S.C. § 924(e); U.S.S.G. § 4B1.4.

[5] Although Redd pled guilty to the offenses on the same day, he was arrested on June 18, 1987, for the possession charge and on September 10, 1987, for the assault. PSR at 5.

[6] Redd signed and deposited in the prison mailbox the motion on November 22, 2011. *See* ECF No. 69 at 16.

4

of Title II of the Americans with Disabilities Act ("ADA")[7] and the Due Process Clause,[8] ineffective assistance of counsel, improper consideration of his predicate offenses, a jury not composed of his peers, and selective prosecution. ECF No. 69. On February 7, 2012, he moved for the appointment of counsel. ECF No. 73. On March 6, 2012, the government opposed the § 2255 motion, ECF No. 75, and on May 10, 2012, Redd replied, ECF No. 78.

II. Analysis

    A.   Motion to Vacate, Set Aside, or Correct Sentence

Redd requests that the Court vacate, set aside, or correct his sentence on the grounds that (1) the Court violated the ADA and Due Process, (2) his counsel was ineffective, (3) the Court erred in relying on the PSR for the predicate offenses under the ACCA, (4) the Court erred in relying on Redd's juvenile offenses as predicate offenses, (5) the jury was not one of his peers, and (6) the government engaged in selective prosecution.

        1.   ADA and Due Process Violations

Redd asserts that the Court violated Title II of the ADA, 42 U.S.C. § 12131 *et seq.*, and the Due Process Clause, U.S. Const. amend. V., by failing to provide him with adequate listening devices. ECF No. 69 at 7-8. The government argues

---

[7] 42 U.S.C. § 12131 *et seq.*

[8] U.S. Const. amend. V.

that Redd's allegations are contradicted by the record. ECF No. 75 at 9.

In support of his allegations, Redd misquotes the transcript, combining two different excerpts and taking the exchanges out of context. Redd's version of the exchange is:

> **THE COURT:** Mr. Redd, can you hear me?
> **THE DEFENDANT:** I can't hear.
> **THE COURT:** Okay. Well, sadly, that's the best were (*sic*) able to do.

ECF No. 69 at 8. Redd has omitted 83 lines of transcript[9] between his comment "I can't hear" and the Court's comment "Okay. Well, sadly, that's the best we're able to do." *See* Trial Tr. 5:10-8:20. He has also omitted his comment: "A lot better." *Id.* at 8:21. A few minutes later, the Court successfully tested the audio device when the courtroom husher was engaged. *Id.* at 11:12-16. There are no other discussions in the transcript about the hearing device. Contrary to Redd's allegations, the record reveals that he was provided with functioning devices that permitted him to understand and participate in the trial. Those devices were augmented by a real time transcription of the trial.

Redd contends that his statement of "A lot better" meant that "he was informing the court that the devices need to be a lot better." ECF No. 78 at 2-3. The record does not state this

---

[9] Many of the omitted lines concern witnesses and not the hearing device. *E.g.*, Trial Tr. 6:24-8:6.

and Redd made no further complaint about the device. Redd's mischaracterization of the record provides no basis for his assertion that the ADA or his Due Process rights were violated.

2. Ineffective Assistance of Counsel

Redd argues that his counsel was ineffective, because he failed to (1) provide him with necessary listening devices or an interpreter, (2) object to the government's use of a daytime photo, (3) cross-examine the arresting officer with his inconsistent statements, and (4) use a diagram to explain DNA and fingerprint identifications. ECF No. 69 at 7, 9-11.

a. Legal Standard

The Sixth Amendment guarantees the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prove ineffective assistance, Redd must show: (1) counsel's performance was deficient and (2) the deficiency prejudiced his defense. *Id.* at 687. To show deficient performance, Redd must establish that counsel made errors so serious that the "representation fell below an objective standard of reasonableness." *Id.* at 688.

To show prejudice, he must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. If a defendant cannot prove prejudice, "a reviewing court need not consider the performance prong." *Fields v. Attorney Gen. of*

7

*Md.*, 956 F.2d 1290, 1297 (4th Cir. 1992) (*citing Strickland*, 446 U.S. at 697).

        b.    Listening Devices and Interpreter

Redd argues that his counsel was ineffective for failing to provide him with listening devices and therefore could not understand the proceedings because of his hearing impairment. ECF No. 69 at 7. The government argues that the record belies Redd's contentions. ECF No. 75 at 4-5.

As discussed above, *see supra* Part II.A.1, Redd was provided with a hearing device and real time transcription. There is no evidence that Redd's counsel was deficient or that Redd suffered any prejudice. *See Strickland*, 466 U.S. at 667-68.

        c.    Failure to Object to Daytime Photograph

Redd next argues that because he was arrested at night, his counsel was ineffective by failing to object to the government's use of daytime photographs of the scene. He asserts that "the disputed photo[s] were likely to distort the jury's deliberation." ECF No. 69 at 9. The government argues that Redd has not shown any prejudice. ECF No. 75 at 6. In his reply, Redd asserts without elaboration that the result of the proceeding would have been different. ECF No. 78 at 4.

The testimony established that Redd was arrested in the dark of night.[10] Redd has not stated how the photograph distorted the jury's deliberations. The jury's common sense would have informed them that the scene would have looked different at night. Therefore, Redd has not shown a reasonable probability that the verdict would have been different if the photograph had not been shown. See *Strickland*, 466 U.S. at 694. His claim fails.

d. Failure to Impeach the Arresting Officer with his Inconsistent Statements

Redd asserts that his counsel was ineffective because he did not cross-examine the arresting officer about the inconsistencies between his probable cause statement, incident reports, and trial testimony. ECF No. 69 at 10. He contends that if his counsel had attempted to impeach the officer, the jury may have found him not guilty. *Id*. The government argues that counsel did cross-examine the officer. ECF No. 75 at 7.

Redd's argument depends on his characterization of reports which are not in the record, that the officers approached Redd. ECF No. 69 at 10. At trial Officer Glanville testified that Redd ran toward him, Trial Tr. 43:17-18, 44:17-18, and Suiter testified on cross-examination that Redd was walking. *Id*. at 100:10-11. In closing argument, defense counsel pointed out

---

[10] *See, e.g.*, Trial Tr. 15:16, 49:22.

9

inconsistencies in the officers' testimony, about the location of the car and whether Redd was walking or running. *See id.* at 249:6-14.

The probable cause statement and incident report are not in the record. Given defense counsel's use of inconsistencies in the officers' testimony, *see, e.g.*, Trial Tr. 249:6-14, Redd cannot show a reasonable probability that the result would have been different if his counsel had cross-examined as Redd wanted. *See Strickland*, 466 U.S. at 694. Redd has not shown that his counsel was ineffective.

e.   Failure to Use Diagrams

Redd asserts that his counsel's failure "to use diagrams to explain the DNA/Finger print identifications . . . process" was ineffective assistance, claiming "[a] diagram could have proved and been helpful to the jury because what the jurors see is often as important as to what they hear." ECF No. 69 at 11. The government argues that Redd has not shown prejudice. ECF No. 75 at 8.

Redd has not shown a "reasonable probability that, but for counsel's [failure to use diagrams], the result of the proceeding would have been different." *Strickland*, 446 U.S. at 694.

3. Unattributed Assertions in the PSR

Redd asserts that the Court erred in relying on unattributed assertions in the PSR to sentence him under the ACCA. ECF No. 69 at 11-12. The government argues that this claim was raised and rejected on appeal. ECF No. 75 at 10.

"Absent a change in the law, a prisoner cannot relitigate in collateral proceedings an issue rejected on direct appeal." *United States v. Walker*, 299 F. App'x 273, 276 (4th Cir. 2008). Redd challenged the predicate offenses for the ACCA on the ground that the government had not met its burden of proving the offenses; the Fourth Circuit rejected this argument. *Redd*, 372 F. App'x at 415-16. Redd alleges a change in the law based upon *United States v. Boykin*, 669 F.3d 467 (4th Cir. 2012). ECF No. 78 at 6. *Boykin*, a case in which the district court committed plain error, did not change the law. *See Boykin*, 669 F.3d at 470-72. As the law has not changed, Redd cannot relitigate this issue. *See Walker*, 299 F. App'x at 276.

4. Juvenile Convictions as Predicate Offenses

Redd also contends that the Court erred in considering his March 3, 1988 possession with intent to distribute cocaine and March 3, 1988 assault convictions as ACCA predicates because there is no record that these were adult adjudications. ECF No. 69 at 13. The government argues that the Fourth Circuit rejected this argument. ECF No. 75 at 10.

11

The Fourth Circuit rejected Redd's arguments that these offenses were not predicate offenses and affirmed his sentence. *Redd*, 372 F. App'x at 414-15. As the law has not changed, Redd cannot relitigate this issue. *See Walker*, 299 F. App'x at 276.

5. Impartial Jury of His Peers

Redd asserts that only two jurors were African-American and that "[a]ll the other jurors were either politically or economically distinct and d[id] not share the same social compact as defendant" which deprived him of a jury of his peers. ECF No. 69 at 13-14. Redd has not explained what he means by "the other jurors . . . [did] not share the same social compact," other than arguing that the jury should have come from Baltimore City. ECF No. 69 at 14. He has not argued that the jury did not represent a fair cross section of the community.[11] Further, he did not object to the jury at trial or on direct appeal.

The government argues that has Redd provided no support for this allegation and--absent an objection at trial--he must show prejudice or a miscarriage of justice to obtain collateral relief. ECF No. 75 at 10-12. *See United States v. Mikalajunas*,

---

[11] *Cf.* ECF No. 69 at 14; *see also Taylor v. Lousiana*, 419 US. 522, 527 (1975) ("[T]he American concept of the jury trial contemplates a jury drawn from a fair cross section of the community."). Redd has briefly referred to the jury's composition inflicting cruel and unusual punishment. ECF No. 69 at 14. He has not developed this argument.

186 F.3d 490, 492-93 (4th Cir. 1999). Redd has not met this standard; accordingly he has not stated a basis for relief.

      6.   Selective Prosecution

Redd argues that the "[p]rosecutor was politically motivated in [bringing] firearm cases only [against] persons from the Baltimore City area," and persons charged with "[f]irearm possession in other parts of Maryland with the same priors as defendant get differential treatment." ECF No. 69 at 14. Redd has neither presented statistics nor identified a similarly situated individual who was not prosecuted.[12]

The government argues that Redd has provided no factual support for this argument and did not object at trial or on direct or appeal; thus collateral review is precluded. ECF No. 75 at 11-12; see Mikalajunas, 186 F.3d at 492-93. Redd may not litigate this claim here.

    B.   Motion to Appoint Counsel

Redd sought appointment of counsel for his § 2255 motion. ECF No. 73. The Court will appoint counsel to a *pro se* litigant seeking § 2255 relief when it serves the interests of justice. *See* 18 U.S.C. § 3006A(a)(2)(B). Redd has clearly stated the grounds on which he seeks relief and neither discovery nor a hearing is necessary. Accordingly, the interests of justice do

---

[12] *See United States v. Olvis*, 97 F.3d 739, 743-44 (4th Cir. 1996) (requiring identification of similarly situated individuals to support selective prosecution claim).

13

not require appointment of counsel. *See* Rules 6, 8 *Rules Governing § 2255 Proceedings for the U.S. District Courts* (2010) (court should appoint counsel when a hearing or discovery will be required). Redd's motion will be denied.

### C. Certificate of Appealability

A certificate of appealability ("COA") must issue before a petitioner may appeal the court's decision in a 28 U.S.C. § 2255 case. *See* 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b). A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (internal quotation marks omitted). Denial of a COA does not prevent the petitioner from seeking permission to file a successive petition or pursuing his claims upon receipt of such permission.

Because Redd has not made a substantial showing of the denial of his constitutional rights, the Court will not issue a COA.

III. Conclusion

For the reasons stated above, Redd's motions to vacate, set aside or correct sentence and to appoint counsel will be denied.

_____11/2/12_____  
Date

_____[signature]_____  
William D. Quarles, Jr.  
United States District Judge