IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES** | : | |
| | : | |
| **v.** | : | Case No.  RDB-07-0470 |
| | : | |
| **GARFIELD REDD** | : | |
| | : | |
| **Defendant** | : | |

### EMERGENCY MOTION AND MEMORANDUM
### FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)

Garfield Redd, through undersigned counsel, respectfully moves this Court to grant his motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) based on the "extraordinary and compelling reasons" presented by his vulnerability to COVID-19.  Mr. Redd is 49 years old and suffers from both diabetes and hypertension.  These multiple risk factors place him among those most likely to develop severe, life-threatening complications from COVID-19.  Mr. Redd is presently housed at FCI Schuylkill.  Presently there are no confirmed cases of the corona virus in this prison, but given the speed by which this pandemic is spreading, it is only a matter of time before it reaches Mr. Redd's facility.  Each additional day of incarceration increases the likelihood that Mr. Redd will be exposed to this deadly virus, and his particular vulnerability to COVID-19 constitutes "extraordinary and compelling reasons" for relief.

Moreover, in light of the grave threat that COVID-19 poses to Mr. Redd's health, continued incarceration would not serve the goals of sentencing pursuant to 18 U.S.C. § 3553(a).  In light of Mr. Redd's serious medical vulnerabilities, this Court should issue an order reducing Mr. Redd's sentence to time served or allow him to serve the remainder of his sentence on home confinement.

1

**STATEMENT OF FACTS**

Garfield Redd was charged by federal indictment on October 16, 2007, with being a Felon in Possession of a Handgun in violation of 18 U.S.C. § 922(g).  ECF No. 1.  He had his initial appearance on March 24, 2008.  ECF No. 12.  Mr. Redd has been detained on this case since that date.  On May 2, 2008, Mr. Redd entered a not guilty plea to the only count in the indictment.  ECF No. 16.  On September 2, 2008, a jury trial in this matter commenced.  ECF No. 38.  On September 8, 2008, Mr. Redd was found guilty of the one count in the indictment.  On November 21, 2008, His Honor Judge William Quarles sentenced Mr. Redd to a twenty-year prison sentence.  ECF No. 51.  Mr. Redd's expected release date from the Bureau of Prisons is September 23, 2025.

Mr. Redd suffers from both hypertension and Type 2 diabetes.  *Exhibit #1.*  Mr. Redd also suffers from severe hearing loss in both ears.  *Id.*  The combination of these health problems puts Mr. Redd in a category of person who are extremely vulnerable to the most serious consequences of COVID-19.

On April 19, 2020, Mr. Redd filed a petition with the warden at FCI Schuylkill requesting a reduction of his sentence and compassionate release in light of the threat that COVID-19 poses to his health.  *Exhibit #2.*  As more than thirty days has elapsed since Mr. Redd's request was made, pursuant to 18 U.S.C. § 3582(c)(1)(A), this motion is ripe for the Court's consideration.

Counsel for the defendant and the Government have consulted and the Government will respond to this motion within fourteen days of its filing.

**BACKGROUND**

Congress first enacted 18 U.S.C. § 3582(c)(1) as part of the Comprehensive Crime Control Act of 1984 to serve as a "safety valve" for judges to assess whether a sentence reduction was warranted by factors that previously would have been addressed through the abolished parole system. S. Rep. No. 98-225, at 121 (1983).  "This legislative history demonstrates that Congress,

in passing the Comprehensive Crime Control Act of 1984, intended to give district courts an equitable power to employ on an individualized basis to correct sentences when 'extraordinary and compelling reasons' indicate that the sentence initially imposed on an individual no longer served legislative objectives." *United States v. Millan*, No. 91-CR-685 (LAP), 2020 WL 1674058, at * 5 (S.D.N.Y. Apr. 6, 2020).

The compassionate release statute empowered courts to reduce a defendant's sentence whenever "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Congress delegated to the U.S. Sentencing Commission the responsibility of defining what were "extraordinary and compelling reasons." *See* 28 U.S.C. § 994(t) ("The Commission . . . shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."). However, it was not until 2007, more than two decades after the statute was enacted, that the Commission responded. It issued a guideline stating that "extraordinary and compelling reasons" include medical conditions, age, family circumstances, and "other reasons." U.S.S.G. § 1B1.13, app. n.1(A)-(D).

Relevant to Mr. Redd's request, Application Note 1(A)(ii) to Guidelines Section 1B1.13 states extraordinary and compelling reasons include when

> The defendant is—
> (I)   suffering from a serious physical or medical condition;
> (II)  suffering from a serious functional or cognitive impairment; or
> (III) experiencing deteriorating physical or mental health because of the aging process,
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 app. n. 1(A)(ii). Although the defendant has not served 75 percent of his sentence, it is worth noting that Application Note 1(B) identifies extraordinary and compelling

3

reasons to include when "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less."  Furthermore, Application Note 1(D) created a catch-all provision, for when the Director of the BOP determined "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."

As originally enacted, the statute left sole discretion for filing compassionate release motions with the Director of the BOP, who adopted a program statement governing compassionate release that in many ways narrowed the criteria established by the Commission.  *See* BOP Program Statement 5050.49.  During the span of more than three decades, the BOP rarely filed motions on behalf of inmates who met the eligibility criteria.  The Office of the Inspector General for the Department of Justice concluded in 2013 that "[t]he BOP does not properly manage the compassionate release program, resulting in inmates who may be eligible candidates for release not being considered."  Dep't of Justice, Office of the Inspector General, *The Federal Bureau of Prisons' Compassionate Release Program* (April 2013), at 11, available at https://oig.justice.gov/reports/2013/ e1306.pdf; *see also* Dep't of Justice, Office of the Inspector General, *The Impact of an Aging Inmate Population on the Federal Bureau of Prisons* (May 2015), at 51, available at https://oig.justice.gov/ reports/2015/e1505.pdf#page=1 ("Although the BOP has revised its compassionate release policy to expand consideration for early release to aging inmates, which could help mitigate the effects of a growing aging inmate population, few aging inmates have been released under it."); U.S.S.G. § 1B1.13, app. n.4 (admonishing BOP for its past failure to pursue relief on behalf of eligible inmates).  Heeding this criticism, Congress acted.

The title of Section 603(b) of the First Step Act- "Increasing the Use and Transparency of Compassionate Release"—leaves no doubt as to Congress' intent in modifying 18 U.S.C. §

4

3582(c)(1)(A). Through the First Step Act, enacted December 21, 2018, Congress sought to resuscitate compassionate release by, *inter alia*, allowing defendants to directly petition courts for relief, rather than leaving that power solely in the hands of the BOP. *See* 18 U.S.C. § 3582(c)(1)(A). "[U]nder the amended statute, a court may conduct such a review also 'upon motion of the defendant,' if the defendant has exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if 30 days has lapsed 'from the receipt of such a request by the warden of the defendant's facility,' whichever is earlier." *United States v. Decator*, No. CCB-95-0202, 2020 WL 1676219 (D. Md. Apr. 6, 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i); Pub. L. 115-391, Title VI, § 603(b), Dec. 21, 2018, 132 Stat. 5239). In other words, "a prisoner must exhaust the administrative appeal process, or wait 30 days, before his claim may be considered" by the court. *United States v. Underwood*, No. TDC-18-0201, 2020 WL 1820092, at *2 (D. Md. Apr. 10, 2020) (citing cases).

## ARGUMENT

Judges in the District of Maryland and around the country have found that a defendant's vulnerability to COVID-19 constitutes "extraordinary and compelling reasons" for relief. Mr. Redd's underlying medical conditions make him especially vulnerable to COVID-19. Mr. Redd's release does not pose a danger to the community, and a balancing of the § 3553(a) factors with the risks to the client posed by COVID-19 warrants relief.

**A. The Court Has Authority to Determine Mr. Redd's Vulnerability to COVID-19 and this Constitutes an "Extraordinary and Compelling Reason" for a Sentence Reduction.**

There is no question that Section 603(b) of the First Step Act fundamentally changed the role of courts in the compassionate release process. As Your Honor has aptly noted, "the Sentencing Commission and the Bureau of Prisons are no longer exclusive arbiters of what constitutes 'extraordinary and compelling reasons' for compassionate release." *United States v.*

5

*Gutman*, RDB-19-0069, ECF No. 82 at 4 (D. Md. May 13, 2020). Courts may "exercise their 'independent discretion to determine whether there are "extraordinary and compelling reasons" to reduce a sentence.'" *Id.* (quoting *United States v. Bryant*, CCB-95-0202, 2020 WL 208541, at *2 (D. Md. Apr. 30, 2020)). "Accordingly, several courts"—including Your Honor and Judge Chuang—"have recently held that medical conditions which render a person uniquely vulnerable to COVID-19 may justify release under § 3582(c)(1)(A)(i)." *Id.*; *see also United States v. Winston*, RDB-13-0639, ECF No. 294 at 5 (D. Md. Apr. 28, 2020); *United States v. Mel*, Crim. No. TDC-18-0571, 2020 WL 2041674, at *2 (D. Md. Apr. 28, 2020). This pandemic, as applied to Mr. Redd, is an extraordinary and compelling circumstance.

**B. Mr. Redd's Situation Presents an "Extraordinary and Compelling" Reason Warranting a Reduced Sentence.**

Although information about the true scope of the threat and impact of COVID-19 is still emerging, the Centers for Disease Control (CDC) has already identified several factors that put individuals at higher risk for severe illness. Generally, the CDC has advised that "**older adults and people of any age who have serious underlying medical conditions** might be at higher risk for severe illness from COVID-19." CDC, *People Who Are at Higher Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (emphasis in original). More specific risk factors include, diabetes of which Mr. Redd suffers. *Id.*

According to a recent study published in the Journal of the American Medical Association (JAMA), the most common underlying medical conditions for New York City patients hospitalized for COVID-19 were hypertension (56.6 percent), obesity (41.7 percent) and diabetes (33.8 percent).[1] Similarly, as Judge Chuang noted in a recent opinion ordering the release of a defendant

---

[1] Safiya Richardson et al., *Presenting Characteristics, Comorbidities, and Outcomes Among 5700 Patients Hospitalized with COVID-19 in the New York City Area,* JAMA, available at https://jamanetwork.com/journals/jama/fullarticle/2765184.

6

from the Central Treatment Facility in Washington, D.C., "as of March 2020, three-fourths of individuals who died from COVID-19 in Italy had hypertension." *United States v. Keaton*, No. TDC-18-0215, ECF No. 84 at *5 (D. Md. Apr. 23, 2020) (citing *Coreas v. Bounds*, No. TDC-20-0780, 2020 WL 1663133, at * 1(D. Md. Apr. 3, 2020).

Undoubtedly, Mr. Redd is extremely vulnerable to this deadly pandemic, constituting an extraordinary and compelling reason for relief given the spread of the virus within the Bureau of Prisons. While the Bureau of Prisons has made efforts to reduce the spread of the virus throughout the federal prison system, the rate of infection is far higher within the Bureau of Prisons than within the community at large, and continues to spread at an alarming rate, as the below graphics demonstrate.





Amid this rapidly-unfolding crisis, the universally-recommended antidote is simple: reduce the prison population by releasing those whose continued incarceration is not necessary to protect the public so that correctional institutions can better protect those who need to stay incarcerated.[2]

Mr. Redd is exactly the type of individual deserving of compassionate release: He is at risk of severe illness and, as will be discussed in the next section, his release does not pose a danger to the community and balancing the 3553(a) factors warrants the requested relief.

---

[2] For example, on March 27, 2020, more than 400 former DOJ leaders, attorneys, and federal judges sent an open letter to the President, asking that he take immediate action to reduce the population in correctional facilities to prevent the catastrophic spread of COVID-19, in particular by commuting the sentences of elderly and medically vulnerable inmates who have already served a majority of their sentence. *See https://fairandjustprosecution.org/wp-content/uploads/2020/03/Letter-to-Trump-from-DOJ-and-Judges-FINAL.pdf*. The same day, dozens of public health experts made a similar request, asking the President to commute the sentences of elderly inmates, noting they are at the highest risk of dying from the disease and pose the smallest risks to public safety. *See https://thejusticecollaborative.com/wp-content/uploads/2020/03/Public-Health-Expert-Letter-to-Trump.pdf*.

**C. The Relevant § 3553(a) Sentencing Factors Warrant Reducing Mr. Redd's Sentence to Time Served or Modifying Mr. Redd's Sentence to Allow Him to Serve the Remainder of His Term on Home Confinement.**

Under the compassionate release statute, when a defendant establishes the existence of extraordinary and compelling circumstances justifying relief, courts must consider the relevant sentencing factors of 18 U.S.C. § 3553(a) to determine whether a sentencing reduction or modification is warranted. 18 U.S.C. § 3582(c)(1)(A)(i). Here, Mr. Redd's compromised physical health, and the unique danger he faces of contracting COVID-19 and becoming severely ill, when combined with the other Section 3553(a) sentencing factors, clearly warrant relief.

*First*, although Mr. Redd does have a number of convictions for violent crimes in the past, in this case Mr. Redd was convicted of unlawfully possessing a firearm. As officers approached him in the 500 block of Gold Street in the City of Baltimore, Mr. Redd walked away from law enforcement, and then tossed a pistol under a parked vehicle. The firearm was immediately recovered. While Mr. Redd's offense conduct was certainly serious, there was no allegation that Mr. Redd used or brandished the gun in anyway. The Court imposed a lengthy 240-month sentence. In addition, as Judge Chuang has noted, being incarcerated during this outbreak "sufficiently increased the severity of the sentence beyond what was originally anticipated." *Mel*, 2020 WL 2041674, at *3.

*Second*, throughout his incarceration, Mr. Redd has continually strived to better himself, and has enrolled in more than thirty education classes. His course load has included Basic Typing, Introduction to Economics, and Digital Media 4 Business. *Exhibit #3, pp.1-2.* He also took a parenting class as well as a number of classes designed to facilitate the transition from prison back to civil society. *Id.* Mr. Redd has also has impressed others as someone who looks out for his fellow inmates. As Pastor Ronald Friedrich writes, Mr Redd "has earned a reputation among fellow inmates as being responsible, considerate, and helpful, genuinely concerned about the needs

9

of others. … I am confident that he will do well on the outside through positive means and make the world a better place." *Exhibit #4*.

*Third*, Mr. Redd has a detailed re-entry plan. If released, Mr. Redd would reside with his sister, Beatrice Tetterton, in Baltimore, Md. Ms. Tetterton resides in a three-bedroom home with her daughter and grandson. Mr. Redd would have the entire basement, with an adjacent bathroom, as his sole living quarters. Mr. Redd will immediately self-quarantine himself for as long as necessary to ensure the health and safety of himself and others.

In this case, a reduction or modification of Mr. Redd's sentence would not diminish the seriousness of the offense, nor would it place the public in any danger. The extraordinary and compelling circumstances presented by the uncontrolled spread of COVID-19—compounded by the heightened risks faced by Mr. Redd whose ability to engage in basic self-protective measures is restricted—warrant relief. Mr. Redd has already been incarcerated for over twelve years and one month, or thirteen years and eleven months accounting for good time credit, a sentence that is "sufficient but not greater than necessary" to satisfy the goals of sentencing pursuant to 18 U.S.C. § 3553(a). In light of the above, Mr. Redd seeks an order reducing his sentence to time served. Alternatively, the defendant requests that he be allowed to serve the rest of his term of incarceration in home confinement.

## CONCLUSION

Mr. Redd has demonstrated extraordinary and compelling reasons for compassionate release and asks this Court to reduce his sentence to time served or allow him to serve the remainder of his sentence on home confinement.

Respectfully submitted,

JAMES WYDA
Federal Public Defender

_____/s/_____
DAVID WALSH-LITTLE, #23586
Assistant Federal Public Defender
Tower II- 9th Floor
l00 South Charles Street
Baltimore, Maryland 21201
Tel: (410) 962-3962
Fax: (410) 962-0872
Email: david_walsh-little@fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Motion was sent via CM/ECF to Ellen Nazmy, Assistant United States Attorney.

_____/s/_____
DAVID WALSH-LITTLE, #23586
Assistant Federal Public Defender